**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF WYOMING**

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

2018 NOV 27  AM 8: 57

STEPHAN HARRIS, CLERK
CHEYENNE

| | | |
|---|---|---|
| SHERYL L. ELLIS, Pro Se | ) | |
| JULIE JACOBSEN, Pro Se | ) | |
| BOBBY FOWLER, Pro Se | ) | MOTION FOR |
| Plaintiffs | ) | |
| | ) | PRELIMINARY |
| v. | ) | |
| | ) | INJUNCTION |
| FOR THE STATE OF WYOMING | ) | |
| DEPARTMENT OF CORRECTIONS, et. al, | ) | 18-CV-198-J |
| WYOMING WOMEN'S CENTER, et. al, | ) | |
| Defendants | ) | |

---

## PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

---

### INTRODUCTION/BACKGROUND

A pro se party's complaint/motion must be given a liberal construction Haines v. Kerner, 404 U.S. 519-20. The Wyoming Department of Corrections, Wyoming Women's Center, is so unconstitutionally overcrowded that it now has to transfer female prisoners to other county facilities in the State of Wyoming as well as to the Wyoming Medium [Men's] Correction Institution (WMCI) in Torrington, WY.

On January 31, 2018 WWC's Associate Warden Molden wrote a memorandum stating the prisoner's at WWC would be transferred to other facilities due to overcrowding:

(See Exhibit 1):

> "Be advised that some of you women will be going to the county jail for a minimum of six months due to lack of housing here. WWC is currently full so we will be housing inmates at various county jails throughout the state. This is just a courtesy to give you a heads up that it is possible. Do not come and ask if you are going. We will not give you that information. Do not ask where you will be going, you will not get that information. Do not ask when you will be going, you will not get that information. Inmates will rotate after their six months is up and you will receive a stipend every month that you are in the county. Again I am doing this as a heads up and no other information will be given. When you are told to pack up is when you will know you are leaving. There is no way around this as the facility is unable to hold the number of women continuing to come to prison."

From approximately January 2017 through approximately June 2017 prisoner, Ms. Ellis she was involuntarily transferred to WWC, in Lusk, WY.

From approximately June 2017 through October 2017 she was involuntarily transferred to the Platte County Detention Center (PCDC) in Wheatland, WY.

From approximately October 2017 through December 2017 she was involuntarily transferred to the Niobrara County Detention Center (NDCD) in Lusk, WY.

From approximately December 2017 through approximately August 2018 she was involuntarily transferred at WDOC/WWC in Lusk, WY.

From approximately August 2018, through October 2018 she was involuntarily transferred to the Wyoming Medium [Men's] Correctional Institution (WMCI) in Torrington, WY.

From October 2018 through the date of this filing, she was involuntarily transferred to WWC in Lusk, WY.

There are two main concerns that have led to the filing of this Motion for Preliminary Injunction. One is unconstitutional overcrowding at WDOC/WWC in Lusk, WY, and the other is unconstitutional health and safety conditions at WDOC/WWC in Lusk, WY.

WWC simply does not have the necessary housing to accommodate the number of female prisoners sent to WWC. The fact is there is no other place in the State of Wyoming that houses female prisoners. Couple that with WWC's staff leaving their employment at an astonishing rate and there exists an atmosphere of unconstitutional conditions including but not limited to, prisoner violence that presently exists in unprecedented occurrences, and dangerous, and unsafe health and safety conditions. These unconstitutional trespasses cannot go unnoticed any longer.

WDOC/WWC is well aware of the overcrowding and the shift in WWC's employee to prisoner ratio putting all prisoners at risk, as well as substandard health and safety conditions outlined in this brief. WDOC/WWC have exhibited "deliberate indifference" by turning a blind eye to all of the circumstances surrounding the complaints contained in this filing as well as the mass exodus of state employees leaving their employment at WWC.

There are four groups of persons intimately familiar with the conditions outlined in this brief. Ms. Ellis who is housed at WWC and have been sent to various counties or the men's prison due to overcrowding; the staff that work there, the administrators operating the institution, and the agency WDOC who are ultimately responsible for WWC's operations.

Winter is upon us and as such Ms. Ellis submits this Rule 65 motion in an effort to promptly abate the most egregious conditions at WDOC/WWC until such time as this Court, post-trial, has an opportunity to review the full scope of Ms. Ellis's requests for relief. The conditions outlined in this brief are so dangerous and hazardous to Ms. Ellis at WWC that their

continued existence must not be tolerated any longer. These conditions are (1) overcrowding, (2) inadequate HVAC system (3) and sanitation and mold growth as result of a severely leaky roof. These conditions have gone unanswered for ten (10) years and perhaps longer. The Ninth Circuit has repeatedly affirmed the issuance of preliminary injunctions in prisoner cases such as the one that Ms. Ellis is now bringing forth. See Mayweathers v. Newland, 258 F.3d 930 (9th Cir. 2001); Toussaint v. Yockey, 722 F.2d 1490 (9th Cir. 1984); Wright v. Enomoto, 462 F. Supp. 397 (N.D. Cal. 1976) (three-judge court), affirmed, 434 U.S. 1052 (1978). See also Martino v. Carey, 563 F. Supp. 984, 987 (Granting prisoners of a county jail preliminary relief to immediately improve unconstitutional health conditions including inadequate HVAC systems and inadequate recreation.)

Ms. Ellis has attempted to addresses her concerns utilizing WDOC's grievance system in order to resolve these exigent issues to no avail. WDOC/WWC has elected to placate Ms. Ellis with minimal remedies in response to her grievances, have ignored her complaints altogether, or had mail room worker Ms. Skibicki summarily dismiss valid complaints regarding unconstitutional conditions of confinement thereby denying Ms. Ellis' right to Due Process under the Fourteenth Amendment which in and of itself is a violation of the Eighth Amendment under the Constitution of the United States. The Fourteenth Amendment is the only avenue available to Ms. Ellis in which to contest unconstitutional conditions of confinement. If WDOC/WWC's does respond to Ms. Ellis's grievances, they address the bare minimum of relief requested. Further, they attempt to place the burden back on Ms. Ellis to determine how WDOC/WWC can become constitutionally compliant. Their responses are the equivalent of placing a band-aid on an amputated limb. As a result of filing grievances, WDOC/WWC has retaliated against Ms. Ellis by issuing unconstitutional, base-less "write-up's" and subsequent disciplinary lock-downs as well as involuntary frequent changes in housing either within WWC, or involuntary transfer to other counties or the Wyoming Medium [Men's] Correctional Institute in Torrington, WY. Ms. Ellis has exhausted all administrative available to her prior to the filing of this request for Preliminary Injunction with the exception of housing and involuntary transfers to places outside of WWC in Lusk, WY.  WDOC/WWC will not address involuntary transfers or housing deficiencies and/or violations by way of the grievance system. Accordingly, Ms. Ellis has no reasonable alternative but to seek preliminary injunctive relief in an effort to protect her, Ms. Jacobsen, and Ms. Fowler's life.

## THE PRELIMINARY INJUNCTION STANDARD

Ms. Ellis seeks this preliminary injunctive relief pursuant to Rule 65 of the Federal Rules

of Civil Procedure.  The standard is best summarized by Judge Lodge in <u>Balla v. Idaho Board of

Correction,</u> 2006 UL 1793555 (D. Idaho 2006):

> "A Rule 65 preliminary injunction may be granted if the moving
> party satisfies one of two tests, designated as the "traditional
> standard" or the "alternative standard" of law.   <u>International
> Jensen, Inc. v. Metrosound U.S.A. Inc.,</u> 4 F.3d 819, 822 (9th Cir.
> 1993).  The traditional standard requires a demonstration of the
> following elements:   (1) that the moving party will suffer
> irreparable injury if the relief is denied; (2) that the moving party
> will probably prevail on the merits; (3) that the balance of potential
> harm favors the moving party; and (4) that the public interest
> favors granting relief.  <u>Cassim v. Bowen,</u> 824 F.2d 791, 795 (9th
> Cir. 1987).  Under the alternative standard, the moving party may
> meet its burden by demonstrating either:   (1) a combination of
> probable success of the merits and the possibility of irreparable
> injury, or (2) that serious questions are raised and the balance of
> hardships tips sharply in the movant's favor.   <u>Benda v. Grand
> Lodge International Association of Machinists & Aerospace
> Workers,</u> 584 F.2d 308, 315 (9th Cir. 1978), cert. dismissed, 441
> U.S. 937 (1979)."

<u>Balla,</u> 2006 WL 1793555.  See also, <u>Guzman v. Shewry,</u> 552 F.3d 941, 948 (9th Cir.

2009) (discussing the same two tests); <u>Goodrick v. Townsend,</u> 2006 WL 694644 (D. Idaho 2006)

(same).

The Prison Litigation Reform Act of 1996 (PLRA), 18 U.S.C. § 3626, applies to this case

because Ms. Ellis is a prisoner.  Under the PLRA, a preliminary injunction "must be narrowly

drawn, extend no further than necessary to correct the harm the court finds requires preliminary

relief, and be the least intrusive means necessary to correct the harm."  18 U.S.C. § 3626(a)(2).

This standard, as the Ninth Circuit notes, restates the standard that pre-existed the PLRA.  See

<u>Armstrong v. Davis,</u> 275 F.3d 849, 872 (9th Cir. 2001).

As it relates to this filing and under the PLRA, a preliminary injunction expires at the end

of a 90 day period, see 18 U.S.C. § 3626(a)(2).  However, this Court can issue a new 90-day

injunction if the conditions that precipitated the first injunction have not been abated.  See

<u>Mayweathers v. Newland,</u> 258 F.3d 930, 936 (9th Cir. 2001) (holding "[n]othing in the statute

limits the number of times a court may enter preliminary relief" if there continues to show a need

for it).

As the court explained in <u>Balla:</u>  "Affidavits submitted on a preliminary injunction

motion are not subjected to the same strict standards (personal knowledge and competency to

testify) as those submitted on a summary judgment motion, and they may contain heresay. 11A

Charles Alan Wright, Federal Practice and Procedure 2949 (2d ed. 1995); see also Flynt

Distributing Co. v. Harvey, 734 F.2d 1389, 1394 (9th Cir. 1984). Balla, 2006 WL 1793555.

Relative to this motion, Ms. Ellis relied on responses to grievances submitted by her from [the]

responding institution. Ms. Ellis requests this Court give whatever weight to the submissions she

submits by way of the grievances that she filed and the responses thereto as the Court deems

appropriate, but at this stage Defendants may not seek to strike them based merely on their

informality or because they contain what the Court will consider hearsay. See Balla, 2006 WL

1793555.

## THE EIGHTH AMENDMENT PROTECTION

The Eighth Amendment strictly prohibits the intentional infliction of "cruel and unusual

punishments." U.S. Constitutional Amendment VIII. This Amendment is of prime importance

because it is the only thing that gives Ms. Ellis, a prisoner at WDOC/WWC a safety net of

protection. "[I]t is now settled that the 'the treatment of a prisoner receives in prison and the

conditions under which [s]he is confined are subject to scrutiny under the Eighth Amendment.'"

Farmer v. Brennan, 511 U.S. 825, 832 (1994), quoting Helling v. McKinney, 509 U.S. 25, 31

(1993).    Further, when prison/jail officials disregard the Eighth Amendment, "judicial

intervention is *indispensable.*" Rhodes v. Chapman, 452 U.S. 337, 354 (1981). The Eighth

Amendment forces prison/jail officials to "provide humane conditions of confinement; prison

officials must ensure that inmates receive adequate food, clothing, shelter, and medical care and

must 'take reasonable measures to guarantee the safety of the inmates.'" Farmer, 511 U.S. at 832,

quoting Hudson v. Palmer, 468 U.S. 517, 526-27 (1984).

The Eighth Amendment has two test components, one objective and the other subjective.

First, Ms. Ellis is required to show that she is "incarcerated under conditions posing a substantial

risk of serious harm." Farmer, at 834. Second, Ms. Ellis must show that WDOC/WWC officials

had a sufficiently culpable state of mind.

1.    **The objective component.**

Under this component Ms. Ellis is alleging a violation of the Eighth Amendment and is

required to show, based on objective facts, that a condition of confinement creates "a substantial

risk of serious harm." Farmer, at 834. Pursuant to this objective component, Ms. Ellis is not

required to show that harm has already occurred, although it has; only that it is substantially

likely to occur.  Unsafe and/or unhealthy conditions that "pose an unreasonable risk of serious damage to [Ms. Ellis'] future health" satisfy the objective prong.  Helling v. McKinney, U.S. 25, 33 (1993).

Moreover, Ms. Ellis is not required to wait until injury actually occurs, although it already has, before filing suit.  A "remedy for unsafe conditions need not await a tragic event," prison/jail administrators are simply not free to "ignore a condition of confinement that is sure or very likely to cause serious injury and needless suffering" merely because no harm has yet occurred.  Helling, 509 U.S. at 33; according Farmer, U.S. at 845.

Courts are permitted to consider prison/jail conditions in their entirety when determining whether any one condition constitutes violations under the Eighth Amendment.  Conditions that have "a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise" violate the Eighth Amendment when viewed in combination.  Wilson v. Seiter, 501 U.S. 294, 304 (1991).  Additionally, Ms. Ellis requests this Court consider the length of time that she has been subject to unsafe and/or unhealthy conditions at WDOC/WWC.  See Hutto v. Finney, 437 U.S. 678, 686-87 (1978) (noting that unconstitutional confinement conditions may be tolerable "for a few days and intolerably cruel for weeks or months.")  Such is the case relative to WDOC/WWC and PCDC.

2.    **The subjective component.**

In addition to proving an objective risk of serious harm, Farmer also requires the Eighth Amendment plaintiff Ms. Ellis prove the defendant officials(s) had a culpable state of mind known as "deliberate indifference."  Deliberate indifference is referenced as a standard middle ground that lies "somewhere between the poles of negligence at one end and purpose or knowledge at the other." Farmer, at 836.  The Farmer Court likened this standard to criminal recklessness, which make prison/jail administrators liable when they "consciously disregard a substantial risk of serious harm." Farmer, 837-38.  Proving deliberate indifference is an issue of fact that is demonstrated in the usual ways "including inference from circumstantial evidence and a fact-finder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." Farmer, 842 (emphasis added).  Such constructive knowledge can be demonstrated by showing that a dangerous or unhealthy condition(s) "was 'longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the

circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk.'"

It stands to reason that once a prison/jail administrator is "exposed to information concerning the risk," he or she may not turn a blind eye to it. On the contrary, either the risk must be abated or if the administrator is uncertain as to its depth or degree, an investigation must ensue. While Ms. Ellis's grievances have been somewhat overbroad and vague, WDOC/WWC's responses demonstrate that dangerous conditions have been known to exist throughout the entire prison and those conditions should have been abated on WDOC/WWC's own motion years ago. The fact is, unconstitutional conditions at WDOC/WWC has existed for ten (10) years, and possibly longer; defendant-officials have known of the unconstitutional conditions of confinement and have only addressed Ms. Ellis's complaints, by providing the bare minimum in terms of relief. WDOC/WWC repeatedly placed the burden of constitutional compliance back on Ms. Ellis by only addressing situational minimal relief. An administrator "would not escape liability if the evidence showed that he merely refused to verify underlying facts that he strongly suspected to be true, or declined to confirm inferences that he strongly suspected to exist." Id., at 842.

As a matter of discussion relative to an Eighth Amendment subjective component test, Ms. Ellis only need show that the *risk* of injury is obvious. She need not show that the defendant(s) wanted her or any other prisoner to be injured by the unconstitutional condition. "[A] prison official [may not] escape liability for deliberate indifference by showing that, while they were aware of an obvious, substantial risk to inmate safety, he did not know that the complainant was especially likely to be" harmed. Farmer, at 843.

Ms. Ellis states that she is not asking this Court to adopt a "totality of conditions" approach where individual conditions of confinement are *not* unconstitutional but that their combined effect is perceived as violating the Eighth Amendment. This approach was condemned in Wright v. Rushen, 642 F.2d 1129, 1132-33 (9th Cir. 1981). For the purposes of this brief, Ms. Ellis demonstrates here that each of these three (3) conditions addressed in this brief-overcrowding, inadequate HVAC defects/deficiencies, and sanitization concerns as a direct result of a roof in extreme disrepair, independently violate the Constitution. But as the Ninth Circuit explained in Wright v. Rushen, in a prison/jail "each condition of confinement does not exist in isolation," and it is fitting to consider them in totality "especially when the ill effects of

particular conditions are exacerbated by other related conditions." Wright, 642 F.2d at 1133. It is vitally important to state that in this instance, as more fully explained below, the WDOC/WWC's inadequate HVAC system and the severe leaks in the roof have exacerbated the prison's sanitation by making it virtually impossible to prevent the growth of mold due to the resulting humid conditions (i.e. the buckets that have to be placed under vast areas where the roof leaks at WDOC/WWC). As part of the issue at stake here, it must be stated that there is limited air flow at WDOC/WWC, if it exists at all, and those conditions have also increased the likelihood of other airborne problems. In short, WDOC/WWC's leaky roof, and lack of proper ventilation makes it virtually impossible to prevent the growth of mold due to the resulting humid conditions and limited or virtually non-existent air flow. This Court must take judicial notice that the fact that WDOC/WWC's roof is in such disrepair that ceiling tiles have been removed to allow the excessive flow of water and buckets must be placed throughout WWC in order to capture all of the moisture that is a direct result of this unconstitutionally punitive condition of confinement; a condition that has existed for ten (10) years and possibly longer.

The fact is, the dangerous and unhealthy conditions at issue here are violations of the Eighth Amendment and it is inherent that they also violate the Fourteenth Amendment as it is the only avenue by which Ms. Ellis has to contest unconstitutional conditions of confinement. See Jones v. Blanas, 393 F.3d 918, 931 (9th Cir. 2004); Redman v. County of San Diego, 942 F.2d 1435, 1441 (9th Cir. 1991).

## UNCONSTITUTIONAL CONDITION #1: OVERCROWDING

1. In Rhodes v. Chapman, 452 U.S. 337 (1981), the Supreme Court held that putting more prisoners in a cell (in this case WDOC/WWC) than it was designed to hold is not necessarily unconstitutional *per se*. However, such overcrowding *becomes* unconstitutional when it (a) results in an increase of violence or the threat of violence, (b) results in preventing Ms. Ellis from receiving necessary services such as adequate clothing, bedding, and recreation, or (c) exacerbates already unconstitutionally punitive conditions of confinements most notability the overcrowding, the defective and deficient HVAC system as well as the severely leaky roof which has lead to serious sanitation issues. See Toussaint v. Yockey, 722 F.2d 1490, 1492 (9th Cir. 1984); Hoptowit v. Ray, 682 F.2d 1237, 1249 (9th Cir. 1982); Balla v. Board of Corrections, 656 F. Supp. 1108.

2.      The increase in the threat of violence is exactly what the Supreme Court addressed in <u>Rhodes</u> and is part of the basis relative to this request for preliminary injunctive relief.  Couple that with the fact that WDOC/WWC is overcrowded and this has become a volatile situation which has put Ms. Ellis at risk thus increasing the already volatile and physically dangerous environment that pervades WWC and its prisoners.

3.      The prison population at WDOC/WWC is above what is reasonably acceptable such that WDOC/WWC has adopted a permanent solution in sending female prisoners to various counties within the boundaries of the State of Wyoming.  Ms. Ellis has been involuntarily transferred to the Platte County Detention Center (PCDC), Niobrara County Detention Center (NCDC) and the Wyoming Medium [Men's] Correctional Institution (WMCI) in Torrington, WY, to accommodate the overcrowding issue at WWC.  As a result she was exposed to the most deplorable unconstitutionally punitive conditions of confinement and gender based discrimination imaginable.  Ms. Ellis wrote several letters to WWC's Warden Catron and his designee's regarding these serious and damaging Eighth Amendment violations.  Warden Catron and his designee's were deliberately indifferent to her pleas for help.

4.      As a direct result of WDOC/WWC's over-crowding crisis, Ms. Ellis was involuntarily transferred to the Wyoming Medium [Men's] Correctional Institution in Torrington, WY.  This is, in and of itself, unconstitutionally punitive and an Eighth Amendment violation as well as a violation of the Civil Rights Act of 1964 because Ms. Ellis is in complete segregation and had no access to the same rehabilitative and/or religious programs as the men have. WDOC/WWC is deliberately indifferent and will not address grievances with regard to housing and/or over-crowding issue(s).

5.      While Ms. Ellis was in PCDC custody, she was forced to witness a romantic, sexual relationship between two other inmates.  The behavior was condoned at PCDC in violation of the Prison Rape Elimination Act (PREA), Prisons and Jail Standards, United States Department of Justice Final Rule, 28 C.F.R. Part 115.  Ms. Ellis had no information available to her in terms of contacting the PREA help line and there was no secured, private line with which to report the incidents.   Additionally, when Ms. Ellis filed complaints contesting the unconstitutional, deplorable conditions of confinement, Lt. Cain, and Sgt. McDonald, with Sheriff's Clyde Harris's approval, was placed in the "suicide" pod (she was not suicidal) where she was forced to remove her clothing, expose her buttocks, genitals, and breasts on camera in

front of only male deputies.  Additionally, she was forced to use the commode in her cell to perform bodily functions in front of only male deputies.  Voyeurism by a staff member(s) is an invasion of privacy and strictly prohibited by PREA, 28 C.F.R. Part § 115.6.  Ms. Ellis wrote to WWC's Warden Catron to report these unconstitutional conditions of confinement and violations of PREA Standards and was met with deliberate indifference.  The fact of the matter is WDOC/WWC does not monitor the contract(s) between the county's it uses to address the overcrowding crisis for constitutional compliance.

6.      WWC's Warden Catron and Associate Warden Molden have gone on record as stating that if [any] prisoner becomes what they consider to be a "problem" by way of objecting to unconstitutional conditions of confinement at WWC, they will be immediately sent to "county" as a punitive measure specifically designed to quash such complaints and grievances. Inherent here is Warden Catron and Associate Warden Molden are expressly aware of the unconstitutional, deplorable conditions of being confined at any county in the State of Wyoming, and have only acted in a retaliatory, and criminally reckless deliberate indifference manner. Prisoner Jacobsen and likely other prisoners will testify to this statement in fact.

### UNCONSTITUTIONAL CONDITION #2: HVAC SYSTEM

1.      WDOC/WWC's HVAC system has been severely deficient period for ten (10) years and perhaps longer.   The entire HVAC system failed during the coldest months of the 2017/2018 calendar year and in response to this life threatening crisis, WDOC/WWC forced prisoners to sleep on the floor in their day rooms in an attempt to "huddle" together in order to stay warm.  Ms. Ellis is a life-long rancher in the State of Wyoming and this scenario is much the same as when [her] livestock huddle together during severe inclement weather in order to stay warm.  It goes beyond the scope of Ms. Ellis's imagination that the situation with regard to the HVAC system has deteriorated so severely so as to substantiate this emergency action in response to this unconstitutional condition of confinement to save human lives.

On May 26, 2018, Ms. Ellis filed her grievance regarding this issue and requested a backup emergency plan to include the use of portable heaters and portable air conditioners.  She also wanted to know when the system would be one hundred percent (100%) functional.  (See Exhibit 2)  On June 7, 2018 Captain Kirkikis told her that WDOC/WWC was in the project analysis phase and that the contract had not yet been awarded.  Captain Kirkikis stated that

"Upon award of contract, we estimate at this time a minimum of 180 days [before implementation]." (See Exhibit 3)

On June 12, 2018, Warden Catron stated that short term solutions were underway and would be functional "very soon", and went on to say that "a new system is now going through engineering and contractual development. This constitutes our long range plans." but denied her request for portable heaters and portable air conditioners as back-up emergency generator's when the system fails again or when there is a power outage. Warden Catron did not provide any time line as to when the HVAC system would be fully functional. (See Exhibit 4)

On July 2, 2018, WDOC's Director Lampert responded the issue by stating that "Warden Catron's response detailed a two-fold plan that is consistent with protocol and policy that provides a long term and short term solution." Mr. Lampert goes on to say that he will do nothing further to address this life threatening, unconstitutional condition of confinement and considered the "grievance to be resolved." (See Exhibit 5) The grievance is not resolved. Ms. Ellis's request for emergency back-up portable heaters and portable air conditions is not unreasonable considering there is no other emergency back-up plan in existence including emergency generators to keep the HVAC system operable during power outages. While Ms. Ellis is pleased to know that this issue will be addressed, it is unfortunately too little too late. The 2018/2019 winter is upon us and promises to be as brutal as it was during the 2017/2018 winter, maybe more so. Ms. Ellis urges this Court recognize the dire emergency in granting her motion for Preliminary Injunction so that no other prisoner has to endure the criminal reckless deliberate indifference that has been accepted as the usual business practice at WDOC/WWC.

On or about May 2018, WDOC/WWC instituted a new policy which prohibits covering oneself up with a blanket during the day in order to stay warm. On June 5, 2018, Ms. Ellis filed a grievance stating that the HVAC system was faulty and not allowing her and other prisoners to cover up with a blanket when she was cold was unconstitutionally punitive and violated a minimum measure of civility; an Eighth Amendment violation. (See Exhibit 6) WDOC/WWC's policy goes on to prohibit covering up with a blanket(s) "unless medical staff members specifically indicated that the inmate must rest under the sheets and blankets." WDOC/WWC's medical provider Corizon Foundation, Inc., is not qualified to determine when Ms. Ellis is either too hot or too cold. WDOC Director Lampert stated that "In summary the use of blankets to cover oneself during the day will not be allowed due to security concerns and in order to

encourage inmates to not stay in bed all day." and goes on to suggest that "wear long johns and additional clothing to address your feeling cold." (See Exhibit 7)  In a follow-up letter issued on April 20, 2016, WDOC Director Lampert states pertaining to using a blanket to cover up when she is cold, "WWC has a legitimate penological interest and will continue." (See Exhibit 8)  The fact is WDOC/WWC does not want its prisoners to be warm enough to sleep during the day and has stated as such.   WDOC/WWC has been, and continues to be, criminally recklessly deliberately indifferent to the severely deficient HVAC system and will not acknowledge harm that its failure has already caused.   Further, it will not authorize the issuance of additional blankets or use of blankets during the day to address being cold.

2.       During this HVAC crisis, all hot water boilers failed and as a result Ms. Ellis could not bath/shower, or wash dishes in hot soapy water.  Again due to the mass exodus of state employee's leaving their employment at WDOC/WWC, there were no maintenance workers available to fix this dire emergency situation and members of security were charged with addressing this unconstitutional condition of confinement which entailed assuming job duties of which they were not qualified.

3.       "Inadequate ventilation and air flow violates the Eighth Amendment if it undermines the health of inmates and the sanitation of the penitentiary.  Hoptowit v. Spellman, 753 F.2d 779, 784 (9th Cir. 1985)."  Keenan v. Hall, 83 F.3d 1083, 1090 (9th Cir. 1996).  The WDOC/WWC's ventilation system is virtually non-existent which is evidenced by the fact that the system cannot move enough air through the prison to promote and sustain healthy environments for all prisoners and staff at WWC.  As a result, the likelihood of mold and other airborne problems are a serious concern and there have been numerous complaints of respiratory and allergic reactions from WWC staff and its prisoners.

4.       The Supreme Court has made it clear that Ms. Ellis, a prisoner at WDOC/WWC, is complaining about unhealthy conditions, including but not limited to those previously stated, need not demonstrate a current infirmity from the offensive conditions.  As such, Ms. Ellis need only show that these inadequate conditions create a significant risk to health and safety.  See Helling v. McKinney, 509 U.S. 25 (1993) (holding that prisoners subjected to second-hand cigarette smoke do not need to show current illness to obtain relief under the Eighth Amendment).  This principle applies to claims of inadequate ventilation as a direct result of the deficient and defunct HVAC system as Helling illustrates.

Inadequate ventilation exposes Ms. Ellis to communicable diseases and identifiable health threats thus implicates constitutional guarantees. Wilson v. Lynaugh, 878 F.2d 846, 849 (5th Cir. 1989). See also Toussaint v. McCarthy, 597 F. Supp. 1388, 1396, 1409 (N.D. Cal. 1984), reversed on other grounds, 801 F.2d 1080 (9th Cir. 1986) (noting that inadequate air flow "fosters the spread of communicable disease among the inmates"). Poor ventilation also exacerbates other sanitation deficiencies which raises additional constitutional concerns. See Hoptowit v. Spellman, 753 F.2d at 784; Ramos v. Lamm, 639 F.2d 559, 569 (10th Cir. 1980), 450 U.S. 1041 (1981).

WDOC/WWC's virtually non-existent ventilation results in a build-up of stale and foul air which increases the risk of spreading airborne diseases, and it stands to reason that it exacerbates the problem the mold (the occurrence of which is a direct result of the severely leaky roof). The unhealthy ventilation at WDOC/WWC violates the Eighth Amendment. See Toussaint v. McCarthy, 597 F. Supp. at 1396 (finding unconstitutional ventilation deficiencies similar to those here); Hoptowit v. Spellman, 753 F.2d at 784; Keenan v. Hall, 83 F.3d at 1090; Martino v. Carey, 563 F. Supp. 984, 999 (D. Ore. 1983). WDOC/WWC has long been aware of the HVAC problems but has made no effort to correct them. Further, the entire roof at WWC has leaked for at least ten (10) years, perhaps longer, and WDOC/WWC have done nothing to correct the problem(s). They repeatedly use the unconstitutional excuse of budget constraints as the reason for their criminally reckless deliberate indifference.

During the summer of 2018, WDOC/WWC HVAC system again failed and it became necessary to open doors to all sleeping quarters within WDOC/WWC to promote air flow-a major security risk in and of itself. It was necessary to utilize industrial sized fans but when Ms. Ellis filed a grievance requesting relief in terms of portable air coolers, she was denied relief and advised to purchase a desk top fan. (See Exhibit 4)

Based on similar combinations of unhealthy and dangerous conditions as those present here, the Ninth Circuit in Toussaint v. Yockey affirmed a district court's grant of preliminary injunctive relief. See Toussaint, 722 F.2d at 1492. See also Hoptowit v. Ray, 682 F.2d 1237, 1249 (9th Cir. 1982); Balla; v. Board of Corrections, 656 F. Supp. 1108. The same relief should issue in the instant case.

## UNCONSTITUTIONAL CONDITION #3: SANITATION AS A RESULT OF SEVERE LEAKS IN THE ROOF

1.      Sanitation is one of the "[t]he discrete basic human needs that prison officials must satisfy." Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986).  See also Hoptowit v. Spellman, 753 F.2d 779, 784 (9th Cir. 1985); Ramos v. Lamm, 639 F.2d at 568-70; Carty v. Farrelly, 957 F. Supp. 727, 736 ("Generally, sanitation is one of the most basic human needs.")

2.      Courts have enforced the Eighth Amendment guarantee of a sanitary environment in many different contexts relevant to this case.  For example Courts have held that (1) jails/prisons must provide adequate cleaning supplies to Ms. Ellis on a daily basis and supervise to ensure cleanliness of living and high traffic areas.  See Hoptowit v. Spellman, 753 F.2d 779, 784 (9th Cir. 1985); Ramos v. Lamm, 639 F.2d at 569-70; Dawson v. Kendrick, 527 F.Supp. 1252, 1264, 1289; (2) jails/prisons must act aggressively to eliminate mold in housing and high traffic areas and ensure that adequate ventilation preventing the buildup of mold is in place.  See Benjamin v. Fraser, 161 F.Supp.2d 151, 180), affirmed in part and vacated in part, remanded on other grounds 343, F.3d 35 (2d Cir. 2003).

3.      The only action that WDOC/WWC has taken to remediate these issues is to provide cleaning supplies which indirectly places blame on Ms. Ellis for failing to keep the areas clean where there are severe leaks.  WDOC/WWC provides buckets and carts in all areas where there are leaks and mops when the buckets and carts overflow.

On June 10, 2018, Ms. Ellis filed a grievance stating mold was likely growing anywhere there are water leaks (which is throughout the entire institution).  She wanted to know what type of mold it was and when it would be remediated.  (See Exhibit 9)  On June 27, 2018, Lt. Coon acting on behalf of Captain Kirkikis stated that "You were unable to point out the [exact] location of any mold throughout the facility as claimed.  Since there has been no mold found, then no testing will occur." (See Exhibit 10)  All due respect this response was disingenuous and Lt. Coon knows it.  That is the same as stating that Wyoming wind does not damage anything because you cannot see it.  The leaks at WDOC/WWC have existed for ten (10) years and likely longer and it stands to reason that mold is growing behind walls and in places not plainly visible. WDOC/WWC did nothing to remediate this dangerous and unhealthy condition of confinement. On July 2, 2018, Warden Catron addressed this issue and stated "There is no indication of any mold(s) that possess a safety concern in the facility."  (See Exhibit 11)  WWC's secretary Ms.

Carpenter brought a maintenance worker who took pictures of the exact area of concern which represents approximately two percent (2%) of the entire facility as an example of the concern. On July 27, 2018, WDOC Director Lampert stated they "hired a contractor that specializes in mold testing and abatement to come to the facility. The location was tested and it was found that no significant health risk was present. As a precaution, personal protective equipment (PPE) was used when cleaning up the area." (See Exhibit 12) Ms. Ellis poses this question: If there was no mold found and no significant health risk, why was it necessary to utilize personal protective equipment (PPE) to the persons charged with investigating this grievance/complaint? The fact is, Ms. Ellis has been, and continues to be, exposed to this unconstitutional condition of confinement and was never issued PPE suit as a precaution when utilizing the showers or bathroom facilities on Hall 6 at WWC, where she was housed. This scenario is the very bane of criminally reckless deliberate indifference and must not be tolerated any longer. Furthermore it reinforces Ms. Ellis' assertion that WDOC/WWC places the burden of constitutional compliance back on her because she had to physically point out one (1) small area of concern-a bathroom/shower area located in Hall 6 at WWC.

On May 10, 2018, Ms. Ellis filed a grievance outlining concern relative to all of the structural leaks throughout WWC and communicated the fact that she had already slipped and fallen twice causing debilitating, irreparable, and permanent physical damage to her left shoulder and knee. (See Exhibit 13) On May 14, 2018, Captain Kirkikis responded to the complaint by stating "When leaks are discovered there are wet floor signs placed in the area as well as either buckets or laundry carts to collect the water from the leaks. We ensure that the area is mopped up to keep from slips and falls occurring." He goes on to say, "If you could be more specific with the areas you are concerned about would be helpful in establishing if the leaks are unknown to staff." (See Exhibit 14) This unjustly places the burden back on Ms. Ellis in terms of constitutional compliance because WDOC/WWC have known about these leaks for ten (10) years and perhaps longer and have been criminally recklessly deliberately indifferent to them. On June 7, 2018, WWC's Warden Catron denied Ms. Ellis's request that the leaks be repaired immediately. (See Exhibit 15) On July 10, 2018, WDOC's Director Lampert responded to Ms. Ellis's complaint and once again placed the burden of constitutional compliance back to Ms. Ellis in terms of identifying exactly where the leaks were located. He states "WWC is aware of a couple areas in the facility near the industries/education area where the roof may leak during

inclement weather.  While it is only speculation on the 'areas' of facility you may be referring too, this is perhaps the area in question."  (See Exhibit 16)  Director Lampert advises that Ms. Ellis remain vigilant during inclement weather such that she does not slip and fall again.  He goes on to state that "Once the leaks were identified, a major maintenance request was formulated to remediate such leaks from occurring."  The fact is, the leaks have existed for ten (10) years and perhaps longer and WDOC/WWC has shown criminally reckless deliberate indifference in terms of failing to remediate the problem citing budget issues as the reason for constitutional compliance.  Furthermore, when Ms. Ellis reported her injuries she requested a bottom bunk restriction.  WDOC/WWC via their contracted medical provider, Corizon Health, Inc., summarily denied her request and as a direct result, Ms. Ellis fell from her top bunk assignment on Hall 6 at WWC, further exasperating and damaging her already existent physically, permanently, debilitating, and irreparable injuries including but not limited to the medical need of an entire left knee replacement and left shoulder replacement (medical professionals have advised that Ms. Ellis wait until she is approximately seventy (70) years old for shoulder replacement/repair as the repairs only last for "a few" years).  Should this matter go to trial, Ms. Ellis will subpoena various long-term staff members and other prisoners who will testify that they have complained repeatedly of unsafe conditions in terms of the leaks for a period of ten (10) years and perhaps longer; have become seriously ill as a result of the virtually non-existent ventilation, mold growth, and sanitation issues and independent medical professionals who will testify as to the serious physical, permanent, debilitating, and irreparable injuries she currently suffers from as a result of WDOC/WWC's criminal reckless deliberate indifference.

4.      WDOC/WWC needs more than just cosmetic and routine cleaning.  It needs to be completely deep cleaned/sanitized which should include power washing and painting the entire facility.  (In response to Ms. Ellis's grievance WDOC/WWC deep cleaned, sanitized, and painted only one small area in order to placate Ms. Ellis's complaint and as of the date of this filing, the bathroom remains sealed off as it has serious ventilation issues as well.  (See Exhibit 9))  Until the WDOC/WWC's ventilation system is operating like it should be, no amount of deep cleaning, sanitizing, and painting will remedy these unconstitutional conditions of confinement.    It is relevant to note that the chemicals that must be used to this end are toxic and create airborne contaminants which would necessitate WDOC/WWC female prisoners be housed in other

facilities.   Intrinsic here is the fact that the cleanliness of the prison must be the basic responsibility of WDOC/WWC administrator's and not its prisoners.

5.        WWC has allocated Pod's 8, 9, and 10 as "dry" cells which means that sleeping quarters and the commode/shower facilities are located in separate areas.   Warden Catron and Associate Warden Molden have denied the normal use of commodes and failed to allow prisoner's Jacobsen and Fowler to promptly dispose of their wastes, a life or death physical necessity, which is a violation of the Eighth Amendment.   Young v. Quinlan, 960 F.2d 351, 364-65 (3d Cir. 1992)

On June 7, 2018 and June 12, 2018 respectively Associate Warden Molden issued prisoner's Jacobsen and Fowler Conduct Violations-GN-9 Failure to Follow Rules-for leaving their sleeping quarters in order to promptly dispose of their wastes.  (See Exhibits 17 & 17.1) WWC's Warden Catron and Associate Warden Molden state prisoner's Jacobsen and Fowler violated WDOC/WWC Policy & Procedure #3.000-Inmate Count.   However, the referenced Policy & Procedure is unpublished, unwritten, and unknown to all prisoners at WWC.  It bears mentioning the trier of fact was Sgt. Eitel and it is necessary for the court to be advised that Associate Warden Molden outranks Sgt. Eitel and as such Ms. Jacobsen and Ms. Fowler's right to a fair and impartial hearing has been violated.

Retaliation is as persistent, pervasive, and severe to WWC's staff as well as its prisoners and as such, Sgt. Eitel is in no position to overturn a conduct violation issued by a senior ranking officer.    Associate Warden Molden is also the Administrator who reviews the Disciplinary Hearing Record (Sgt. Eitel's findings and conclusions) and as such is wholly prejudiced because she has "command influence" over Stg. Eitel. (See Exhibits 18 and 18.1)  Inherent here is the fact that WWC by and through its administrators has adopted the position that it is a privilege to be able to use the commode and using it without permission is punishable with both a base-less disciplinary "write-up", but also punitive monetary fines.   Both prisoners Jacobsen and Fowler were issued monetary fines, ten dollars ($10) to use the commode.  (See Exhibits 19 and 19.1)

WDOC/WWC has adopted the practice of assessing punitive monetary fines to minor, general, and major conduct violations.   In so doing Prisoner's Ellis, Jacobsen, and Fowler are unable to purchase basic hygiene products which is a violation of WDOC/WWC Policy & Procedures #3.101.IV.D.2.iii.b; 3.ii.b; and 4.ii.b state:

> "Note: This loss of privilege may include, but is not limited to,
> commissary, appliances (including but not limited to televisions,

radios, and electronic games), phone use, recreation, or hobby craft. *It cannot include legal calls, use of inmate law library, or basic bedding, clothing, or hygiene items.* Use of exercise area cannot be taken from segregation status inmates unless the violation was related to the use of the exercise area.

When prisoners Jacobsen and Fowler filed their appeal with Warden Catron, he again cited the unpublished, unwritten, and unknown Policy & Procedure that they are held hostage to and reaffirmed the findings and decision. It should be noted that Warden Catron's findings state that "the hearing was done fairly and equitably, enforcing all departmental and institutional rules and applying discipline in a impartial and consistent manner." All due respect, nothing could be farther from the truth. (See Exhibit 22)

Prisoner Jacobsen references the Standards for Adult Correctional Institutions 4th Edition, Adult Correctional Association (ACA) 4-4137 which states: (See Exhibit 20, page 2 of 3)

> *"Inmates have access to toilets and hand-washing facilities 24 hours per day and are able to use toilet facilities without staff assistance when they are confined in their cells/sleeping areas."*

Additionally, WDOC "Inmate Housing Areas" #2.200.IV.C.3.i which states: (See Exhibit 20 and 21)

> *"Inmates shall have access to inmate toilets and hand-washing facilities twenty-four (24) hours per day. Inmates shall be able to use these facilities without staff assistance when they are confined in their cells/sleeping area or medical housing unit/infirmary area."*

Both prisoners Jacobsen and Fowler pointed out these Policy and Procedures in their appeal to WWC Warden Catron. Their arguments and points in fact were met with deliberate indifference. It is necessary to state that disciplinary appeals stop at WWC's Warden Catron level; there is no level of appeal with WDOC's Director Lampert. For the record, the issuance of any Conduct Violation could result in loss of "good-time" which means, in this case, that prisoners Jacobsen and Fowler could be subject to further incarceration based solely on the fact that they had to use the commode to promptly dispose of their wastes-a life threatening physical need and violates the Eighth Amendment.

6.   The conditions described in this brief exceed the bounds of human decency, violates a minimum measure of civility in today's society, and constitutes cruel and unusual punishment in violation of the Eighth Amendment. See Toussaint v. McCarthy, 801 F.2d at 1107; Hoptowit v. Ray, 682 F.2d at 568-70; Balla, 656 F. Supp. at 1118-19; Dawson v. Kendrick, 527 F. Supp. at 1287; Jones v. City and County of San Francisco, 976 F. Supp. at 910;

<u>Tillery v. Owens,</u> 719 F. Supp. at 1271; <u>Inmates of Occoquan v. Barry,</u> 717 F. Supp. at 866-67;

<u>Martino v. Carey,</u> 563 F. Supp. at 991-92, 1000.

**PLAINTIFF MS. ELLIS MEET THE STANDARDS FOR THE ISSUANCE OF A PRELIMINARY INJUNCTION**

Ms. Ellis is seeking a preliminary injunction relative to three (3) urgent health and safety issues: overcrowding, inadequate HVAC, and sanitation as a result of the severely leaks in the roof at WDOC/WWC.   In order for Ms. Ellis to prevail she must prove:  (1) that she, Ms. Jacobsen, and Ms. Fowler will suffer irreparable injury if the relief is denied, (2) that she, Ms. Jacobsen, and Ms. Fowler will likely prevail on the merits contained in this brief; (3) that the balance of potential harm favor her; and (4) that the public interest favors granting relief.  See <u>Balla,</u> 2006 WL 1793555.  Ms. Ellis has satisfied all four criteria.

1.     **<u>Ms. Ellis, Ms. Jacobsen, and Ms. Fowler will suffer irreparable injury if the relief is denied.</u>**

Every court that has addressed the unsafe and unhealthy conditions at WDOC/WWC as outlined in this brief concluded that such conditions constitute cruel and unusual punishment in violation of the Eighth Amendment.   In many instances, courts issued preliminary injunctive relief prior to issuing permanent injunctive relief.  See <u>Toussaint v. Yockey,</u> 722 F2d 1490 (9th Cir. 1984) (affirming the issuance of preliminary injunctive relief to cure overcrowding, inadequate ventilation, and inadequate sanitation); <u>Wright v. Enomoto,</u> 462 F. Supp. 397 (N.D. Cal. 1976) (three-judge court), affirmed, 434 U.S. 1052 (1978); <u>Martino v. Carey,</u> 563 F. Supp. at 987 (noting that the court had previously issued interim relief to immediately halt inadequate ventilation).

Irreparable harm is harm that cannot be undone through monetary remedies.   When an alleged deprivation of a constitutional right is involved, no further showing of irreparable injury is necessary.  See <u>Elrod v. Burns,</u> 427 U.S. 347, 373 (1976); <u>Mayweathers v. Newland,</u> 258 F.3d 930 (9th Cir. 2001) (affirming the issuance of a preliminary injunction to protect the First Amendment rights of prisoners).  Additionally, "[o]ne does not have to await the consummation of threatened injury to obtain preventative relief."  <u>Farmer,</u> 511 U.S. at 845.  The deficiencies presented in this brief have the substantial likelihood of causing irreparable injury, and already has, as every court to consider the deficiencies addressed in this filing has recognized.

**2.**     **Substantial Likelihood of Success on the Merits**

Ms. Ellis, a prisoner at WWC, points out that the described unconstitutional conditions of confinement violate the Eighth Amendment and as such must satisfy the two Farmer tests discussed earlier in this brief.   First, she must show that the deprivation is "objectively, sufficiently serious."   Farmer, 511 U.S. at 834.   Second, she must show that defendants, WDOC/WWC has shown deliberate indifference to this harm.

WDOC/WWC is overcrowded, has a severely deficient HVAC system, and has a serious and ongoing sanitation problem due to severe leaks in the roof.   These issues have been pervasive and persistent for a long period of time and have not been addressed.   Every court to consider similar conditions of confinement has recognized the likelihood of injuries from such conditions is objectively serious.

Ms. Ellis has also satisfied the second prong of Farmer because Defendants have long known about the health and safety deficiencies and/or inadequacies but have been criminally recklessly deliberately indifferent to them.   The administrators at WDOC/WWC can hardly say that the facts contained in this filing come as a surprise.   See Jones v. City and County of San Francisco, 975 F. Supp. 896, 906 (N.D. Cal. 1997) (Holding that defendants "had actual and constructive knowledge of every significant deficiency").   WDOC/WWC has only addressed the issue(s) by placating Ms. Ellis with knee jerk situational remedies.     Hereto deliberate indifference is demonstrated by the fact that WDOC/WWC knew of the harm but "failed to act despite [their] knowledge of a substantial risk of serious harm."   See Farmer, 511 U.S. at 842.

Ms. Ellis anticipates that WDOC/WWC's response to this motion will be to advise the Court that they have undertaken some efforts in recent weeks/months to improve conditions at WDOC/WWC.   While these efforts are commendable, the fact remains that they have exhibited only criminally reckless deliberate indifference and without judicial intervention, will likely continue to violate the Eighth Amendment.   Every single one of these efforts could have-and should have commenced as much as ten (10) years ago and possibly longer.   See Armstrong v. Davis, 275 F.3d at 864 (noting historic patterns of violations in upholding systemic relief in prison litigation); LaDuke v. Nelson, 762 F.2d 1318 (9th Cir. 1985).   Regardless, WDOC/WWC efforts are too little and too late to avoid the need for preliminary injunctive relief to guarantee that, at long last, these three (3) unconstitutional conditions of confinement will be addressed and remedied immediately.

3.    **The Balance of Potential Harm Favors Ms. Ellis, Ms. Jacobsen, and Ms. Fowler**

Ms. Ellis is only seeking relief as it relates to requiring WDOC/WWC to comply with their obligations under the Constitution and no more than that. Without that order, Ms. Ellis will suffer, and already has, further irreparable injury and/or harm. WDOC/WWC should already be operating in a manner consistent with the Eighth Amendment. It stands to reason that ordering WDOC/WWC to perform tasks that they should already have been performing will cause them no cognizable harm.

It will likely cost Wyoming taxpayers (of which Ms. Ellis, Ms. Jacobsen, and Ms. Fowler are members) tens of thousands of dollars to bring WDOC/WWC into constitutional compliance, but this is a cost required by the constitution. "[C]osts cannot be permitted to stand in the way of eliminating conditions below Eighth Amendment standards." Wright v. Rushen, 642 F.2d 1129, 1134 (9th Cir. 1981) See also Spain v. Procunier, 600 F.2d 189, 200 (9th Cir. 1979); Alberti v. Sheriff of Harris County, Tex., 937 F.2d 984, 999 (5th Cir. 1991) ("[I]nadequate funding will not excuse the perpetuation of unconstitutional conditions of confinement.") emphasis added

In providing a remedy to these serious constitutional violations the Court can authorize WDOC/WWC options that are less expensive provided the results are effective, but they must not delay or ignore the issues merely because of budgetary confinements. Wright, 642 F.2d at 1134. Ms. Ellis can sympathize with WDOC/WWC financial concerns, but "[t]his Court rejects the notion that citizens of the greatest democracy in the world cannot 'afford' to construct a jail [prison] that complies with minimum requirements of the Eighth Amendment to the United States Constitution to prevent cruel and unusual punishment. See Battle v. Anderson, 594 F.2d 786, 792 (10th Cir. 1979). See also Miller v. Carson, 563 F.2d 741, 748 (5th Cir. 1977)." The State of Wyoming is ranked in the top ten wealthiest states in the union and as such budgetary limitations can no longer be used as an excuse to abdicate its responsibility in constitutional compliance. See also Hamilton v. Love, 358 F. Supp. 338, 343 (E.D. Ark. 1973) (holding that the lack of financial resources "can never be an adequate justification" for failing to provide recreation equipment for pretrial detainees).

4.    **The Public Interest Favors the Granting of Relief**

There is strong public interest in remedying these constitutional violations. See Toussaint v. Rushen, 553 F. Supp. 1364, 1378 (N.D. Cal. 1983), affirmed 722 F.2d F.2d 1490 (9th Cir. 1984) (Where the Court granted preliminary injunction relief in prisoner's rights case,

finding that the eradication of unconstitutional conditions of confinement is in the public interest). See also Cohen v. Coahoma County, Miss., 805 F. Supp. 398, 408 (N.D. Miss. 1992) (acknowledging the public interest "in the vindication of constitutional rights and the proper and lawful administration of the jail [prison]").  WDOC/WWC has *no* legitimate interest in operating its facility that violates constitutional minimums.  Accordingly, Ms. Ellis is entitled to a preliminary injunction on all three (3) constitutional issues.

## REMEDY AND CONCLUSION

Historically, once a constitutional violation has been identified, the Court's function is to fashion a remedy "'that does no more and no less than correct that particular constitutional violation.' Balla, 595 F. Supp. at 1563, quoting Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir. 1982)." See also, PLRA, 18 U.S.C. § 3626(a)(2) (requiring that preliminary injunctive relief "be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means to correct that harm.")

Given all three (3) constitutional violations addressed in this brief--overcrowding, inadequate HVAC, and inadequate sanitation as a direct result of the severely leaky roof--are the product of *systemic* failures in policies and practices, Ms. Ellis is entitled to systemic relief, the same type of relief granted in Balla and Loya.  See also Armstrong v. Davis, 275 F.3d 849, 870 (9th Cir. 2001), cert denied, 537 U.S. 852 (2002) ("System-wide relief is required if the injury is the result of violations of a statute or the constitution that are attributable to policies or practices pervading the whole system.") Hoptowit v. Ray, 682 F.2d 1287 (9th Cir. 1982).

The Supreme Court has stated that "'strong considerations of comity...require giving the States the first opportunity to correct the errors made in the internal administration of their prisons.' Preiser v. Rodriguez, 411 U.S. 475, 492 (1973)." Lewis v. Casey, 518 U.S. 343, 362 (1996). Ms. Ellis recommends that this Court do exactly what Magistrate Williams did in Loya: give the defendants deadlines by which to submit to the Court an effective, immediate remedial plan to cure each constitutional violation.  Respectfully, Ms. Ellis requests these remedies be implemented as soon as possible and prior to the coming winter of 2018/2019.  See Loya, 1992 WL 176131.

Clearly it is incumbent on the State to hire independent environmental and professional experts to inspect WDOC/WWC to offer remedies as to correcting its deficiencies in these three (3) areas, overcrowding, deficient HVAC, and inadequate sanitation as a direct result of leaky

roof. See <u>Loya,</u> 1992 WL 176131 (which gave Bannock County thirty days "in which to obtain electrical and plumbing inspecting and to provide a written report to the Court detailing the necessary repairs.") See also <u>Martino v. Carey,</u> 563 F. Supp. at 1006 (ordering county officials to submit "within thirty days of the date of this opinion, a plan for alleviating" unconstitutional conditions of confinement).

Defendants should be ordered to submit a remedial plan immediately which includes environmental and air quality studies as it pertains to the deficient HVAC system particularly the virtually nonexistent ventilation, and the sanitation issues as a result of the leaky roof. Other governmental entities outside the purview of the Wyoming Department of Corrections, and private companies should be utilized in review and remedy of deficient HVAC, and the sanitation due to the excessive leaks in the roof. Ms. Ellis would request the opportunity to comment on the plan's likely effectiveness, but the Court should give deference to any reasonable proposal submitted by Defendants and the professionals assigned to address the issue(s).

Relative to the overcrowding issue, this Court is aware there is only one (1) institution that houses female prisoners; the Wyoming Women's Center in Lusk, WY, while the men have four (4) different institutions available. Those are, the Wyoming Medium Correctional Institution, at Torrington, Wyoming; the Wyoming Honor Farm, at Riverton, Wyoming; the Wyoming Honor Conservation Camp and Boot Camp, at Newcastle, Wyoming; and the Wyoming State Penitentiary, at Rawlins, Wyoming. The Wyoming Department of Corrections should be ordered to construct similar facilities to house female inmates such that female prisoners are not sent to various counties either in state or out of state, or sent to the Wyoming Medium [Men's] Correctional Institution, to accommodate the overflow.

The contract between the Platte County Detention Center and the State of Wyoming should be *permanently* revoked and rescinded due to the unconstitutional conditions of confinement and the severe persistent and pervasive retaliation that occurs when Ms. Ellis filed grievances in protest to such conditions.

Associate Warden Molden went on record as stating that if a prisoner objects to unconstitutional conditions of confinement at WWC, or they are a "problem" they will be promptly sent to county. This threat is all encompassing and Ms. Molden makes the statement knowing full well that the county(s) are not constitutionally compliant. It goes without saying

that Warden Catron knows of these retaliatory threats and has exhibited only deliberate indifference to them. Should this matter proceed to trial Prisoner Jacobsen and other prisoner's will testify to this fact.

On March 3, 2018 the Casper Star Tribune reported that the number of incarcerated individuals is on the rise; so much so that the number of prisoners has quadrupled while crime rates are decreasing. The question is why. Surely this situation warrants an investigation defining not only the problem(s) contained in this brief but also the possible solutions. One thing is certain, short-term housing of female prisoners in the counties within this state or out-of-state or placing them at the men's prison is not the solution. This Court is within its purview to order a dedicated task force to look into the serious issue of overcrowding such that lawmakers will have no choice but to address and remedy this crisis.

Rehabilitative services must be at the fore front of society's and this Court's conscience when viewing this situation. At the county level, those services are non-existent and certainly do not lend toward curtailing recidivism in the State of Wyoming. Notwithstanding is the fact that many, if not all, county jails in the State of Wyoming are not constitutionally compliant where the Eighth Amendment is concerned, which opens the State of Wyoming up to further liability. Budgetary problems are at the heart of every unconstitutional violation, however, as previously noted in this brief it cannot be used as an excuse to continue unconstitutionally punitive conditions of confinement that violate a minimum measure of civility in today's society.

Winter in Wyoming is brutal and as of the date of this filing, it is right around the corner. It would be unconscionable to have prisoners at the Wyoming Women's Center, Lusk, WY forced to sleep huddled in their day rooms like livestock to be warm or to go without hot water, or to become ill as a result of no ventilation and/or sanitation by way of mold growth, or to be shipped to other counties or out of state and the men's prison to handle the prisoner over-flow where it is guaranteed that their constitutional rights will be violated as well as rights afforded under the Civil Rights Act of 1964 in terms of gender based discrimination. Ms. Ellis requests this Court order defendant WDOC/WWC purchase space heaters and portable air conditioners as emergency back-up's in the event the HVAC system fails [again] during the winter of 2018/2019 as well as emergency generators in case of power outages. It is a matter of liability, responsibility, and accountability that WDOC/WWC corrects these issues immediately.

As a result of the grievances she filed relative to objections to unconstitutional conditions of confinement, Ms. Ellis received baseless "write-up's" several times. Ms. Ellis was placed in disciplinary segregation lock-downs as a result of her complaints of unconstitutional conditions of confinements. Ms. Ellis requests this Court order WDOC/WWC expunge her record in its entirety removing all remove said write-up's from all official and unofficial records post haste.

While she was in retaliatory disciplinary segregation lock-down Ms. Molden and Captain Kirkikis denied Ms. Ellis access to this Court by way of not being able to physically go to the "law library" to conduct vital research in the filing of this Motion for Preliminary Injunction. Even though WDOC states that legal material can be brought to person(s) [Ms. Ellis] while in disciplinary segregation, there are hard bound reference materials that, according to WDOC/WWC policy, will not be physically removed from the "law library" under any circumstance. Ms. Ellis requests WDOC's Policy prohibiting physical access to the "law library" while in disciplinary segregation or lock-down of any kind be removed immediately. Ms. Ellis should have full access, which includes but is not limited to, the ability to physically go to the "law library" to access hard bound research material while in disciplinary segregation or lock-down of any kind such that she has continual access to the court's and judicial system when involved in matters of litigation especially when it involve violations of the conditions of confinement and trespasses of the United States Constitution. WDOC/WWC Policy and Procedure #3.101.IV.D.2.iii.b; 3.ii.b; and 4.ii.b state:

> "Note: This loss of privilege may include, but is not limited to, commissary, appliances (including but not limited to televisions, radios, and electronic games), phone use, recreation, or hobby craft. *It cannot include legal calls, use of inmate law library, or basic bedding, clothing, or hygiene items.* Use of exercise area cannot be taken from segregation status inmates unless the violation was related to the use of the exercise area.

WDOC/WWC violates its own Policies and Procedures, State Statues, ACA Standards and more importantly, constitutionally guaranteed rights by way of the Eighth Amendment, and the Fourteenth Amendment. The "I got your back" and the "good ole' boys club" is pervasive, persistent, and severe and is the basis for the retaliation that Ms. Ellis, Ms. Jacobsen, and Ms. Fowler have experienced. Further, if it please the court, Ms. Ellis can provide evidence that shows Captain Kirkikis filed a false conduct violation to cover for a staff member's mistake and Ms. Skibiski filed a retaliatory conduct violation in support of Captain Kirkikis's false conduct violation. Warden Catron and Associate Warden Molden both actively engage in this

unprofessional conduct, and condone it.  Ms. Ellis, Ms. Jacobsen, and Ms. Fowler request this Court direct WDOC/WWC stop this retaliation immediately.

Ms. Ellis requests that the Policy & Practice regarding not being able to cover-up with a blanket in order to stay warm at any time of the day or night be reversed and rescinded immediately.

Ms. Jacobsen and Ms. Fowler request that the conduct violations issued by Associate Warden Molden relative to using the commode be removed from all official and unofficial records and the monetary fines be reversed and refunded immediately.    Both prisoners are concerned that they will not be given proper medical care or mental health care in retaliation to the filing of this Preliminary Injunction.

Ms. Ellis, Ms. Jacobsen, and Ms. Fowler state that retaliation is persistent, pervasive, and severe when filing complaints against WDOC/WWC and as such seeks this Court's protection from, involuntary transfers to counties and/or other states, or WMCI-a male institution, any changes in housing, and base-less unwarranted "write-up's", disciplinary segregation, or being placed into "protective custody" or the "east wing a/k/a the hole" or any other punitive measure.

Additionally, pursuant to Wyo. Stat. § 7-18-102(a)(iii) and § 7-18-109(b)(iii) Ms. Ellis meets all criteria and qualifies for release to an Adult Community Correction Center (a/k/a Teaming Out) in approximately January 2019 and she fears that WDOC/WWC will bar her release in retaliation to the filing of this brief or will shed a negative light on Ms. Ellis's person during her parole hearing scheduled for May 2019.

Ms. Fowler meets all criteria and qualifies for release to an Adult Community Correction Center (a/k/a Teaming Out) pursuant to Wyo. Stat. § 7-18-102(a)(iii) and § 7-18-109(b)(iii) and she fears that in retaliation to the filing of this brief WDOC/WWC will bar her from said release or will shed a negative light on her during her parole hearing.  Additionally, Ms. Jacobsen is in dire need of being granted medical parole due to her life threatening and permanent medical issues and she fears that WDOC/WWC will prohibit her release which will save her life, by shedding a negative light on her person during her hearing.   Ms. Ellis, Ms. Jacobsen, and Ms. Fowler pray this Court will not allow this or any kind of retaliation.  (See Exhibit 23 for Ms. Jacobsen's more specific statement as to her concerns.)

Ms. Ellis has invested many hours of time, energy, and research in the drafting this request for Preliminary Injunction and has no interest in being recompensed for her time relative

to this brief.  However, Ms. Ellis requests that this Court order the Wyoming Department of Corrections, Wyoming Women's Center pay all filings fees necessary to bring this action forward post haste.

It should have never been this prisoner's job to bring the Wyoming Department of Corrections, Wyoming Women's Center, into constitutional compliance.

**WHEREFORE,** Ms. Ellis, Ms. Jacobsen, and Ms. Fowler **PRAY** this Court take WDOC/WWC to church.

**Humbly and Respectfully Submitted.**

Dated this 27th day of November, 2018.

Sheryl L. Ellis, Plaintiff
Wyoming Women's Center
1000 West Griffith
P.O. Box 300
Lusk, WY  82225

Julie Jacobsen, Plaintiff
Wyoming Women's Center
1000 West Griffith
P.O. Box 300
Lusk, WY  82225

Bobby Fowler, Plaintiff
Wyoming Women's Center
1000 West Griffith
P.O. Box 300
Lusk, WY  82225

## CERTIFICATE OF SERVICE

I, Sheryl L. Ellis, Julie Jacobsen, Bobby Fowler, do hereby certify that we sent a true and correct copy to the 10th Circuit District Court, of this Motion for Preliminary Injunction to:

<u>Dated</u> this 27th day of November, 2018.

Sheryl L. Ellis, Plaintiff
Wyoming Women's Center
1000 West Griffith
P.O. Box 300
Lusk, WY  82225

Julie Jacobsen, Plaintiff
Wyoming Women's Center
1000 West Griffith
P.O. Box 300
Lusk, WY  82225

Bobby Fowler, Plaintiff
Wyoming Women's Center
1000 West Griffith
P.O. Box 300
Lusk, WY  82225

Office of the Clerk of Court
United States District Court of Wyoming
2120 Capitol Avenue, Room 2131
Cheyenne, WY  82001

Wyoming Department of Corrections
Robert O. Lampert, Director
1934 Wyott Dr., Suite 100
Cheyenne, WY  82002

Wyoming Department of Corrections
Wyoming Women's Center
Rick Catron, Warden
1000 West Griffith
Lusk, WY  82225

Office of the Attorney General
Kendrick Building
2320 Capitol Avenue
Cheyenne, WY  82001

$EXB$ $1$

# WYOMING WOMEN'S CENTER
## MEMO

| TO: Inmate Population | DATE 1-31-2018 |
|---|---|
| FROM: AW Molden | |
| SUBJECT: Housing at the county jail | |

Be advised that some of you women will be going to the county jail for a minimum of six months due to lack of housing here. WWC is currently full so we will be housing inmates at various county jails throughout the state. This is just a courtesy to give you a heads up that it is possible. Do not come and ask if you are going. We will not give you that information. Do not ask where you will be going, you will not get that information. Do not ask when you will be going, you will not get that information. Inmates will be rotate after their six months is up and you will receive a stipend every month that you are in the county. Again I am doing this as a heads up and no other information will be given. When you are told to pack up is when you will know you are leaving. There is no way around this as the facility is unable to hold the number of women continuing to come to prison.

*Exh. 2*          *Response date 6-11-18*

| WYOMING DEPARTMENT OF CORRECTIONS | WDOC Form #321 | Page 1 of 2 |
|---|---|---|
| | Inmate Grievance Form | Last Revised: 12/2/16 |

## INMATE GRIEVANCE FORM

☐ Check here if this is an EMERGENCY Grievance

Inmate Name: Sherry Ellis     WDOC #: 2871
Institution: WW''                Unit/Cell: 21  A-7
Date: 5-26-18     Time: 4:35 am

**When completing this form, you may provide up to two (2) additional pages if necessary. The grievance filed shall meet criteria set forth in policy. You may refer to the back of this form for guidelines and instructions for filing a grievance.**

Summary of the incident or occurrence giving rise to the grievance or reason for the grievance:

THE HVAC SYSTEM IS IN NEED OF REPAIR. THERE IS NO CONSISTANCE IN TEMPERATURE. EITHER IT IS NOT ENOUGH TO CAUSE HEAT STROKE OR COLD ENOUGH TO CAUSE PNEUMONIA AND/OR CAUSE A COLD. WHEN COULD I REASONABLY EXPECT THE SYSTEM REPAIRED?

Summarize your attempts to informally resolve the issue (e.g. verbal discussions, submission of Inmate Communication Form, etc.)

#32D-5-18-18 RESPONSE TIMELY - DOES NOT ANSWER THE QUESTION AS TO WHEN THE HVAC SYSTEM WILL BE FULLY FUNCTIONAL.

I request the following grievance resolution or remedy:

I AM AWARE THAT THE SYSTEM IS BEING WORKED ON. THANK YOU. WHEN COULD I REASONABLY EXPECT THE HVAC SYSTEM TO BE FULLY FUNCTIONAL? Respectfully Submitted

Inmate Signature: _____

RECEIVED 5/29/18

| Administrative Use | |
|---|---|
| Grievance Number: | 18.0083 |

MATT MEAD
GOVERNOR

ROBERT O. LAMPERT
DIRECTOR

THE STATE OF WYOMING

RICK CATRON
WARDEN

NEICOLE MOLDEN
ASSOCIATE WARDEN

(307) 334-3693
FAX: (307) 334-2254

# DEPARTMENT OF CORRECTIONS
## Wyoming Women's Center

P. O. Box 300
LUSK, WYOMING 82225

June 7, 2018

**To:**        **Sherry Ellis #2871**
**From:**       **Grievance Manager**
**Regarding:**  **Grievance #18.0083**

Inmate Ellis, in reviewing your grievance #18.0083, and all pertinent information regarding it, I am considering this grievance resolved.

**Summary of Grievance:**  Inmate Ellis is requesting the HVAC system to be repaired.  There is no consistence in temperature.  It is either hot enough to cause heat stroke or cold enough to cause pneumonia and/or a cold.

Inmate Ellis would like to know when to expect the HVAC system to be functional.

We are currently in the project analysis phase.  Once actual technical requirements are established, the government bid process will begin.  Upon award of contract, we estimate at this time a minimum of 180 days.  However, this is merely an estimated time frame.

Sincerely,

Captain, Wyoming Women's Center

> **NOTE:**  If an inmate is dissatisfied with the decision at the 321 level, an appeal may be made to the Warden's office, using Grievance Form 322 (given with this response).  An appeal to the Warden must be made, in writing, within seven (7) calendar days following receipt of the 328 Grievance Response Form. The appeal must be submitted to the Warden by including the following items;
> - Copies or originals of 320 Form, with a response (if available)
> - 321 Form, with a response (if available)
> - Completed 322 Form
>
> These must be placed in a confidential envelope and dropped in designated grievance drop boxes.
>
> For further clarification and/or instruction please refer to Policy & Procedure #3.100, Inmate Grievance Policy.

Cc:   Sherry Ellis #2871 -  Master File
       WDOC Central Office

THE STATE            OF WYOMING

MATTHEW H. MEAD
GOVERNOR

ROBERT O. LAMPERT
DIRECTOR

RICK CATRON
WARDEN

NEICOLE MOLDEN
ASSOCIATE WARDEN

# DEPARTMENT OF CORRECTIONS
## Wyoming Women's Center

P. O. Box 300
LUSK, WYOMING 82225
Telephone (307) 334-3693
FAX: (307) 334-2254

June 12, 2018

Sheryl Ellis #2871
WWC

RE:  Grievance #18.0083

Ms. Ellis,

I have reviewed your grievance #18.0083 and all pertinent information regarding it.  Your grievance is regarding your assertion that the *"HVAC System is in need of repair. There is no consistence in temp. Either it is hot enough to cause heat stroke or cold enough to cause pneumonia and/or a cold."*  You ask *"what is being done right now to remedy the problem?"*

As a remedy, you are requesting *""extensive action be taken by way of portable air conditioners, or portable heaters be available for use when the temperatures are unacceptable".*

Our plan is a two-fold plan.  As discussed with you earlier, a new system is now going through engineering and contractual development.  This constitutes our long range plans.

In the short term, repairs to the existing system are underway and should be 100% functional very soon.  In the meantime, we have stocked the commissary with fans you may purchase and are available on special purchase.  We will monitor room temperatures on a nightly basis and will make adjustments when necessary.

Your request for portable air conditioners and portable heaters is denied.

Thank you for allowing me to address this issue.

Sincerely,

Rick Catron,
Warden

If you are dissatisfied with the decision at the formal institutional level, an appeal may be made to D.O.C. Director Robert O. Lampert, per instructions in the posted Inmate Communication and Grievance Procedure Policy #3.100.  It may be submitted to the W.W.C. Warden or Facility Grievance Manager, who will forward it to the Director.

Cc:  WWC Grievance Manager
Central Office



*Exh. 5*

**THE STATE**  **OF WYOMING**

# Department of Corrections

Matthew H. Mead
Governor

1934 Wyott Drive, Suite 100
Cheyenne, Wyoming 82002
Telephone: (307) 777-7208
FAX: (307) 777-7846

Robert O. Lampert
Director

July 2, 2018

Sheryl Ellis #2871
Wyoming Women's Center
P.O. Box 300
Lusk, Wyoming 82225

RE: Grievance Appeal #18-083 *Broken HVAC system*

Dear Ms. Ellis:

This letter is in response to your Grievance Appeal #18-083, received on June 14, 2018 regarding your concern over the broken HVAC system and the subsequent fluctuation of temperatures. You request that the system be fixed and in the interim portable heaters and air conditioners be provided.

Ms. Ellis, regarding this grievance appeal I must agree with Warden Catron's response to you on the matter of a broken HVAC system, which in your own words, has resulted in a climate that is "...Hot enough to cause heat stroke or cold enough to cause pneumonia and/or a cold." Warden Catron's response detailed a two-fold plan that is consistent with protocol and policy that provides a long term and short term solution. My staff has done a separate investigation into your issue and has found that nothing further to be done. Based on the aforementioned discussion, I consider your grievance to be resolved.

Sincerely,

R.O. Lampert
Director

ROL/CY/jy

cc:     Policy and Planning Manager Opdahl-CO
        Compliance Manager Young-CO
        Warden Catron-WWC
        Administrative Assistant Carpenter-WWC
        Inmate File

EXH. 6   RESPONSE DUE BY 6-19-18

| | WYOMING DEPARTMENT OF CORRECTIONS | WDOC Form #321 | Page 1 of 2 |
|---|---|---|---|
| | | Inmate Grievance Form | Last Revised: 12/2/16 |

## INMATE GRIEVANCE FORM

☐ Check here if this is an EMERGENCY Grievance

Inmate Name: _Sutton Ellis_  WDOC # _28-11_

Institution: _WMCI_  Unit/Cell: _A1 HT_

Date: _6-5-18_  Time: _840 pm_

**When completing this form, you may provide up to two (2) additional pages if necessary. The grievance filed shall meet criteria set forth in policy. You may refer to the back of this form for guidelines and instructions for filing a grievance.**

Summary of the incident or occurrence giving rise to the grievance or reason for the grievance:

THE HVAC SYSTEM IS FAULTY AND HAS BEEN FOR A LONG PERIOD OF TIME. THE POLICY THAT PROHIBITS COVERING UP WITH A BLANKET IS UNCONSTITUTIONALLY PUNITIVE AND VIOLATES A MINIMUM MEASURE OF CIVILITY. ICENICL IS NOT QUALIFIED TO DETERMINE WHAT IS "NOT" OR "COLD" TO ME.

Summarize your attempts to informally resolve the issue (e.g. verbal discussions, submission of Inmate Communication Form, etc.)

#32D-64-18 RESPONSE TIMELY - DOES NOT ADDRESS THE ISSUE.

I request the following grievance resolution or remedy:

THEREFORE, I RESPECTFULLY REQUEST TO BE ABLE TO COVER UP WITH A BLANKET ANY TIME OF THE DAY OR NIGHT WHEN I AM COLD.

Inmate Signature: _[signature]_  _6-5-18_

| | Administrative Use | |
|---|---|---|
| Grievance Number: | 18,088 |



**THE STATE** OF WYOMING

## Department of Corrections

Matthew H. Mead
Governor

1934 Wyott Drive, Suite 100
Cheyenne, Wyoming 82002
Telephone: (307) 777-7208
FAX: (307) 777-7846

Robert O. Lampert
Director

July 9, 2018

*Rec'vd 7-13-18*

Sheryl Ellis #2871
Wyoming Women's Center
P.O. Box 300
Lusk, Wyoming 82225

RE: Grievance Appeal #18-088 *Blanket Use during the Day*

Dear Ms. Ellis,

This letter is in response to your Grievance Appeal #18-088, received on June 28, 2018 regarding your concern over the inability to use a blanket to cover oneself during the day. You request to be able to do so.

Ms. Ellis in this grievance appeal I must concur with Warden Catron's response to you. Warden Catron answered your grievance with an in-depth and policy driven response. My staff has reviewed your documentation and found nothing further to add what Warden Catron has already explained to you.

In summary the use of blankets to cover oneself during the day will not be allowed due to security concerns and in order to encourage inmates to not stay in bed all day. I encourage you to wear long johns and additional clothing to address your feeling cold. As a result of the aforementioned discussion, I must deny your grievance.

Sincerely,

R O Lampert

R.O. Lampert
Director

ROL/CY/jy

cc:   Policy and Planning Manager Opdahl-CO
      Compliance Manager Young-CO
      Warden Catron-WWC
      Administrative Assistant Carpenter-WWC
      Inmate File




THE STATE OF WYOMING

# Department of Corrections

Matthew H. Mead
Governor

1934 Wyott Drive, Suite 100
Cheyenne, Wyoming 82002
Telephone: (307) 777-7208
FAX: (307) 777-7846

Robert O. Lampert
Director

April 20, 2016

Sherry Ellis #2871
Wyoming Women's Center
P.O. Box 300
Lusk, Wyoming 82225

RE: Grievance Appeal #18-073 *Inability to cover with a blanket during the day*

Dear Ms. Ellis:

This letter is in response to your Grievance Appeal #18-073, received on June 28, 2018 regarding your concern over your inability to cover yourself during the day when the HVAC system is not working properly. You request that you be allowed to cover yourself with a blanket during the day.

Ms. Ellis, I had Central Office investigate your issue and my response is based on their findings. Your issue is pertaining to practice at WWC which prohibits inmates from covering themselves with a blanket during the day. After consultation with Prison Division Administration it has been determined that this practice by WWC has a legitimate penological interest and will continue. Based on the aforementioned discussion, I must deny your grievance appeal request.

Sincerely,

R.O. Lampert
Director

ROL/CY/jy

cc:    Policy and Planning Manager Opdahl-CO
       Compliance Manager Young-CO
       Warden Catron-WWC
       Administrative Assistant Carpenter-WWC
       Inmate File

EXH, 91   RESPONSE DUE 6-22-18

| WYOMING DEPARTMENT OF CORRECTIONS | WDOC Form #321 | Page 1 of 2 |
|---|---|---|
| | Inmate Grievance Form | Last Revised: 12/2/16 |

## INMATE GRIEVANCE FORM

18.0094

☐ Check here if this is an EMERGENCY Grievance

Inmate Name: _Sherry Ellis_    WDOC # _2871_
Institution: _WWC_    Unit/Cell: _C, 1 UT_
Date: _6-10-18_    Time: _9 25 Am_

When completing this form, you may provide up to two (2) additional pages if necessary. The grievance filed shall meet criteria set forth in policy. You may refer to the back of this form for guidelines and instructions for filing a grievance.

**Summary of the incident or occurrence giving rise to the grievance or reason for the grievance:**

THERE IS MOLD GROWING ANYWHERE THERE ARE WATER LEAKS, (WHICH IS THROUGH OUT ALL OF WWC'S BUILDING(S)) WHAT TYPE OF MOLD IS IT, AND WHEN WILL WWC REMEDIATE THE PROBLEM?

**Summarize your attempts to informally resolve the issue (e.g. verbal discussions, submission of Inmate Communication Form, etc.)**

#320-6-5-18 RESPONSE TIMELY - ATTEMPTS TO RE-DIRECT, DOES NOT ANSWER THE QUESTIONS.

**I request the following grievance resolution or remedy:**

THEREFORE, I RESPECTFULLY REQUEST AN ANALYSIS OF ALL THE MOLD THROUGHOUT ALL OF WWC'S BUILDINGS, AND I REQUEST THE PROBLEM(S) BE REMEDIATED IMMEDIATELY! RESPECTFULLY SUBMITTED

Inmate Signature: _[signature]_

| Administrative Use | |
|---|---|
| Grievance Number: | |



MATT MEAD
GOVERNOR

ROBERT O. LAMPERT
DIRECTOR

THE STATE          OF WYOMING

RICK CATRON
WARDEN

NEICOLE MOLDEN
ASSOCIATE WARDEN

# DEPARTMENT OF CORRECTIONS
## Wyoming Women's Center

(307) 334-3693
FAX: (307) 334-2254

P. O. Box 300
LUSK, WYOMING 82225

June 27, 2018

**To:**       Sherry Ellis #2871
**From:**     Grievance Manager
**Regarding:** Grievance #18.0094

Inmate Ellis, in reviewing your grievance #18.0094, and all pertinent information regarding it, I am considering this grievance resolved.

**Summary of Grievance:** Inmate Ellis has claimed there is mold growing throughout the facility due to the many water leaks. You would like to know if there is mold what type of mold and when this issue will be remediated.

Environmental, Health, and Safety (EHS) inspections and other qualified personnel have not located any mold within the facility. You were unable to point out the location of any mold throughout the facility as claimed. Since there has been no mold found, then no testing will occur.

Sincerely,

Captain, Wyoming Women's Center

NOTE: If an inmate is dissatisfied with the decision at the 321 level, an appeal may be made to the Warden's office, using Grievance Form 322 (given with this response). An appeal to the Warden must be made, in writing, within seven (7) calendar days following receipt of the 328 Grievance Response Form. The appeal must be submitted to the Warden by including the following items;
- Copies or originals of 320 Form, with a response (if available)
- 321 Form, with a response (if available)
- Completed 322 Form

These must be placed in a confidential envelope and dropped in designated grievance drop boxes.

For further clarification and/or instruction please refer to Policy & Procedure #3.100, Inmate Grievance Policy.

Cc:   - Master File Sherry Ellis #2871
WDOC Central Office



THE STATE OF WYOMING

MATTHEW H. MEAD
GOVERNOR

ROBERT O. LAMPERT
DIRECTOR

RICK CATRON
WARDEN

NEICOLE MOLDEN
ASSOCIATE WARDEN

# DEPARTMENT OF CORRECTIONS
# Wyoming Women's Center

P. O. Box 300
LUSK, WYOMING 82225
Telephone (307) 334-3693
FAX: (307) 334-2254

July 2, 2018

Sheryl Ellis #2871
WWC

RE:  Grievance #18.0094

Ms. Ellis,

I have reviewed your grievance #18.0094 and all pertinent information regarding it.  Your grievance is regarding your assertion that *"there is mold growing anywhere there are water leaks, which is throughout all of WWC's building(s)"*.

As a remedy, you are requesting *"an analysis of all the mold throughout all of WWC and the problem(s) be remediated immediately"*.

WWC conducts weekly Internal Safety & Sanitation inspections along with monthly inspections conducted by agency EHS staff.

There is no indication of any mold(s) that possess a safety concern in the facility.

Again we ask, instead of making blanket statements, if you have specific knowledge of an issue with mold, please bring it to our attention.

Your request is denied.

Thank you for allowing me to address this issue.

Sincerely,

Rick Catron,
Warden

If you are dissatisfied with the decision at the formal institutional level, an appeal may be made to D.O.C. Director Robert O. Lampert, per instructions in the posted Inmate Communication and Grievance Procedure Policy #3.100.  It may be submitted to the W.W.C. Warden or Facility Grievance Manager, who will forward it to the Director.

Cc:  WWC Grievance Manager
Central Office

EXH. 12



THE STATE            OF WYOMING

# Department of Corrections

Matthew H. Mead
Governor

1934 Wyott Drive, Suite 100
Cheyenne, Wyoming 82002
Telephone: (307) 777-7208
FAX: (307) 777-7476

Robert O. Lampert
Director

July 27, 2018

Sherry Ellis #2871
Wyoming Women's Center
P.O. Box 300
Lusk, WY 82225

RE:    Grievance Appeal 18-0094

Dear Mrs. Ellis:

I have reviewed your grievance appeal concerning claims that mold is present everywhere at the Wyoming Women's Center. You state that anywhere there is water; mold is growing although you only provide an example location as the hall 6 shower area. Following my review, I assigned staff to investigate your claims.

Staff observed the location you provided and to ensure the safety of everyone at the facility, we hired a contractor that specializes in mold testing and abatement to come to the facility. The location was tested and it was found that no significant health risk was present. As a precaution, personal protective equipment (PPE) was used when cleaning up the area.

I would point out as did the Warden; you should be more specific in the beginning stages of the grievance procedure. It appears you only provided the shower location at the last stage of the appeal process. Had you done so earlier, the matter may have been resolved much quicker.

I hereby find that your grievance is resolved.

Sincerely,

R. O. Lampert
Director

ROL/SA/jy

Cc:    Warden Catron
       Grievance Manager
       Inmate File

EXH. 13



| WYOMING DEPARTMENT OF CORRECTIONS | WDOC Form #321 | Page 1 of 2 |
|---|---|---|
| | Inmate Grievance Form | Last Revised: 12/2/16 |

## INMATE GRIEVANCE FORM

☐ Check here if this is an EMERGENCY Grievance

Inmate Name: Sherry Ellis          WDOC # 2871
Institution: WWC               Unit/Cell: 91 A-T
Date: 5-10-18      Time: 1010 Am

**When completing this form, you may provide up to two (2) additional pages if necessary. The grievance filed shall meet criteria set forth in policy. You may refer to the back of this form for guidelines and instructions for filing a grievance.**

**Summary of the incident or occurrence giving rise to the grievance or reason for the grievance:**

I AM VERY CONCERNED ABOUT ALL OF THE STRUCTURAL LEAKS AT WWC. I WORRY THAT I WILL SLIP AND FALL WHERE THEIR ARE LEAKS IN THE CEILING - THESE LEAKS ARE PERVASIVE THROUGHT THE FACILITY

**Summarize your attempts to informally resolve the issue (e.g. verbal discussions, submission of Inmate Communication Form, etc.)**

#320-4-25-18, NO RESPONSE

**I request the following grievance resolution or remedy:**

I AM RESPECTFULLY REQUESTING WHEN THESE LEAKS WILL BE FIXED.

Inmate Signature:

Received

MAY 11 2018

| Administrative Use | |
|---|---|
| Grievance Number: | 18.0069 |

MATT MEAD
GOVERNOR

ROBERT O. LAMPERT
DIRECTOR

RICK CATRON
WARDEN

NEICOLE MOLDEN
ASSOCIATE WARDEN

THE STATE OF WYOMING

# DEPARTMENT OF CORRECTIONS
## Wyoming Women's Center

P. O. Box 300
LUSK, WYOMING 82225

(307) 334-3693
FAX: (307) 334-2254

May 14, 2018

**To:**  **Sheryl Ellis #2871**
**From:**  **Grievance Manager**
**Regarding:**  **Grievance #18.0069**

Inmate Ellis, in reviewing your grievance #18.0069, and all pertinent information regarding it, I am considering this grievance partially resolved.

**Summary of Grievance:** Inmate Ellis is concerned about all the structural leaks in WWC. She worries she may slip and fall due to the leaks. Inmate Ellis filed a 320 Communication Form, as of 5/11/18 no one has responded.

Inmate Ellis is requesting to know when these leaks will be fixed.

We understand your concern about the structural leaks throughout WWC. When leaks are discovered there are wet floor signs placed in the area as well as either buckets or laundry carts to collect the water from the leaks. We ensure that the area is mopped up to keep from slips and falls occurring. If you could be more specific with the areas you are concerned about would be helpful in establishing if the leaks are unknown to staff.

The timeframe when these areas will be fixed is undetermined at this time due to bidding, outside contractors, and budgetary issues.

Sincerely,

Captain, Wyoming Women's Center

**NOTE:** If an inmate is dissatisfied with the decision at the 321 level, an appeal may be made to the Warden's office, using Grievance Form 322 (given with this response). An appeal to the Warden must be made, in writing, within seven (7) calendar days following receipt of the 328 Grievance Response Form. The appeal must be submitted to the Warden by including the following items;
- Copies or originals of 320 Form, with a response (if available)
- 321 Form, with a response (if available)
- Completed 322 Form
These must be placed in a confidential envelope and dropped in designated grievance drop boxes.
For further clarification and/or instruction please refer to Policy & Procedure #3.100, Inmate Grievance Policy.

Cc:  Ellis, Sheryl #2871 -  Master File
WDOC Central Office

EXH. 15

THE STATE ~ OF WYOMING

MATTHEW H. MEAD
GOVERNOR

ROBERT O. LAMPERT
DIRECTOR

RICK CATRON
WARDEN

NEICOLE MOLDEN
ASSOCIATE WARDEN

# DEPARTMENT OF CORRECTIONS
## Wyoming Women's Center
P. O. Box 300
LUSK, WYOMING 82225
Telephone (307) 334-3693
FAX: (307) 334-2254

June 7, 2018

Sherry Ellis #2871
WWC

**RE:  Grievance #18.0069**

Ms. Ellis,

I have reviewed your grievance #18.0069 and all pertinent information regarding it.  Your grievance is regarding your *"concern about the leaks throughout the building (All of WWC) as of the date of your complaint you have fallen twice"*.

As a remedy, you are requesting *"the leaks be fixed immediately, this facility is not safe"*.

You state you have fallen twice and feel the facility is not safe.  Please provide us with Time/Dates/Locations for your falls so we may take corrective action to ensure your safety.

Secondly, please identify, specifically, the leaks that you are concerned about.  We are aware of leaks in the Industries corridor.  We monitor the fact these leaks are attended to appropriately and warning signs are posted.  Contract action is currently in progress to rectify this.

Your request *"the leaks be fixed immediately"* is denied

Thank you for allowing me to address this issue.

Sincerely,

Rick Catron,
Warden

If you are dissatisfied with the decision at the formal institutional level, an appeal may be made to D.O.C. Director Robert O. Lampert, per instructions in the posted Inmate Communication and Grievance Procedure Policy #3.100.  It may be submitted to the W.W.C. Warden or Facility Grievance Manager, who will forward it to the Director.

Cc:  WWC Grievance Manager
Central Office





*EXH. 16*

**THE STATE**     **OF WYOMING**

# Department of Corrections

Matthew H. Mead
Governor

1934 Wyott Drive, Suite 100
Cheyenne, Wyoming 82002
Telephone: (307) 777-7208
FAX: (307) 777-7476

Robert O. Lampert
Director

July 10, 2018

*Rec'd
11-13-18*

Sherry Ellis #2871
Wyoming Women's Center
P.O. Box 300
Lusk, WY 82225

RE:     Grievance Appeal *# 18 - 069*

Dear Mrs. Ellis:

I have reviewed your grievance appeal concerning allegations that the Wyoming Women's Center (WWC) has multiple water leaks and is unsafe. You allege there are structural leaks and you have fallen as a result of various leaks throughout the facility. Following my review, I assigned staff to investigate your claims.

Staff notes that Warden Catron specifically commented on your grievance response that your description of "water leaks" was vague and did not have substance enough to specifically identify areas of concern. An inmate grievance should be clearly articulated and provide exact information about the matter an inmate is raising. I would encourage you in the future to specifically identify your concerns in a manner that assists us with response. While your grievance is overly vague, staff continued to investigate your claims so I may respond.

The WWC staff is aware of a couple areas in the facility near the industries/education area where the roof may leak during inclement weather. While it is only speculation on the "areas" of the facility you may be referring too, this is perhaps the area in question. Once the leaks were identified, a major maintenance request was formulated to remediate such leaks from occurring.
As a matter of safety precaution, wet floor signs are posted as soon as water is discovered in any area.

I encourage you to remain vigilant during inclement weather in the event water may be present so as not to cause you to slip or fall. Further, please know medical is available to assist for any injuries you may have sustained as you note in your appeal you have fallen previously. In summary, the facility is working to correct the areas they are aware of in which the roof leaks. If this is not the area you are referring too, please specifically identify them to staff.

I hereby find that your grievance is resolved.

Sincerely,

R. O. Lampert
Director

Cc:     Warden Catron
        Grievance Manager
        Inmate File

EXH 17

| WYOMING DEPARTMENT OF CORRECTIONS | WDOC Form # 340 | Page 1 of 2 |
|---|---|---|
| | Conduct Violation Report | Last Revised: 07/15/09 |

COPY

## INMATE INFORMATION

| OFFENDER NAME Julie Jacobson | DOC NUMBER 2183 | HOUSING LOCATION Pod 9 | FACILITY WWC |
|---|---|---|---|

## VIOLATION INFORMATION

| CHARGING EMPLOYEE (NAME AND TITLE) CW Neicole Molden | DATE OF INCIDENT 6/7/2018 | TIME OF INCIDENT Approx 1625 |
|---|---|---|

| LOCATION OF INCIDENT Pod 9 day room | DATE CHARGES WRITTEN 6/8/2018 | EVIDENCE COLLECTED ☐ YES ☒ NO | EVIDENCE HELD BY na |
|---|---|---|---|

| CHARGES (LIST SEPERATELY) | #1: GN 9 Failure to follow rules | #2: | #3: | #4: |
|---|---|---|---|---|

## REPORT OF VIOLATION

INCLUDE UNUSUAL INMATE BEHAVIOR, STAFF WITNESSES, AND ANY IMMEDIATE ACTION TAKEN, INCLUDING USE OF FORCE. ATTACH ADDITIONAL DOCUMENTATION IF NECESSAIRY.

On the above date and time I was watching the pod 9 cameras at the 1600 count and observed inmate Julie Jacobson wait until the officers left the unit from doing count, and she came out of her house going to the restroom area. Policy states that inmates are to remain celled in until count clears. I have also held a pod meeting where this inmate was present informing them that there will be CVR's issued for violation of this. I am charging inmate Jacobson with GN 9 failure to follow rules.



| WYOMING DEPARTMENT OF CORRECTIONS | WDOC Form # 340 | Page 2 of 2 |
|---|---|---|
| | Conduct Violation Report | Last Revised: 07/15/09 |

### INMATE RIGHTS

FORMAL DISCIPLINARY CHARGES ARE BEING BROUGHT AGAINST YOU FOR THE VIOLATIONS CITED ABOVE. YOU WILL BE GRANTED A FORMAL DISCIPLINARY HEARING, WHICH MAY RESULT IN MINOR, GENERAL OR MAJOR SANCTIONS. IN REGARD TO YOUR FORMAL DISCIPLINARY HEARING, YOU HAVE THE FOLLOWING RIGHTS:

- To be present at all stages of the hearing unless you refuse to attend, become disruptive, your presence would jeopardize the safety of the witness, or there is a presentation of confidential information;
- To consult with private counsel at your own expense prior to the hearing in accordance with WDOC Policy & Procedure #3.102, *Inmate Disciplinary Procedures*. Private Counsel will not be allowed at any Disciplinary Hearing;
- To consult with and be represented by a staff representative if such is determined necessary. Staff representation will be limited to those situations in which the hearing is complex, the charged inmate has limited ability to understand, or where interpretation is needed because of language;
- To remain silent, if the violation involved possible criminal misconduct. The violation shall be read and you shall plead to the charge. Silence shall be considered as a plea of not guilty;
- To request from the Hearing Officer, in writing, to be granted a delay in the hearing, stating the reason for the request;
- To receive the written notice of charges and copies of any written information which the hearing officer or board will consider unless disclosure of such information would threaten facility security and order, or if it would endanger any individual;
- To make a statement and present evidence on your behalf;
- To call witnesses on your behalf. The hearing officer may limit witnesses and may take testimony of a witness telephonically. The hearing officer or board may stipulate to the testimony of a prospective witness in lieu of actual testimony;
- To have the case against you presented by the charging employee, if available, and/or through evidence documented in WDOC Form #340, *Conduct Violation Report*, and/or by other witnesses/evidence presented at the hearing;
- To question all adverse witnesses through the hearing officer or board unless the questioning would be unduly hazardous to facility security or the physical safety of an individual;
- To receive a written statement of the decision, and the facts supporting the decision, except where facility safety would be jeopardized;
- To appeal the decision. You have 15 calendar days after the hearing officer or board decision to submit the appeal to the Warden in writing. The Warden has 30 days to answer the appeal. The Warden's decision on appeals is final.

### NOTIFICATION OF FORMAL DISCIPLINARY HEARING

| DATE OF HEARING 6/11/18 | TIME 0800 + | LOCATION WNC |
|---|---|---|

### SIGNATURE OF CHARGING EMPLOYEE AND SUPERVISOR

| CHARGING EMPLOYEE SIGNATURE | SHIFT SUPERVISOR SIGNATURE (REVIEW AND APPROVAL) |
|---|---|

### INMATE ACKNOWLEDGEMENT AND SERVICE OF NOTICE

INMATE INITIALS:

_____ I HAVE RECEIVED THE CONDUCT VIOLATION REPORT AND AM AWARE OF THE CHARGE(S) BROUGHT AGAINST ME

_____ I AM AWARE OF THE DATE AND TIME OF MY DISCIPLINARY HEARING

_____ I HAVE BEEN INFORMED OF MY RIGHTS AFFORED ME REGARDING THE DISCIPLINARY HEARING PROCESS

_____ I WISH TO APPEAR FOR THE SCHEDULED DISCIPLINARY HEARING. I UNDERSTAND IT IS MY RESPONSIBILITY TO CONVEY, IN WRITTEN FORM, A REQUEST FOR A DELAY OF THE SCHEDULED HEARING, REQUEST FOR WITNESSES, OR ANY SPECIAL DOCUMENTATION WHICH I MAY WISH TO PRESENT. FAILURE TO SO REQUEST THROUGH THE HEARING OFFICER 24 HOURS PRIOR TO THE SCHEDULED HEARING WILL RESULT IN NEGATING THESE RIGHTS.

_____ I DO **NOT** WISH TO APPEAR FOR THE SCHEDULED DISCIPLINARY HEARING AND HEREBY WAIVE THAT OPTION. I UNDERSTAND THAT BY WAIVING THIS OPTION, I AM ADMITTING GUILT TO THE AFOREMENTIONED CHARGE(S). I FURTHER UNDERSTAND THAT I CANNOT WAIVE A DISCIPLINARY HEARING FOR A MAJOR VIOLATION CHARGE.

INMATE SIGNATURE_____ DATE_____

☐ INMATE REFUSED TO SIGN. COMMENTS: _____

### COMPLETED BY TRACKING OFFICER

| DATE OF SERVICE | TIME | PRINTED NAME OF TRACKING OFFICER, INCLUDING TITLE | SIGNATURE |
|---|---|---|---|

DISTRIBUTION:
ORIGINAL TO DISCIPLINARY COMMITTEE CHAIR, COPY TO INMATE, COPY TO CHARGING EMPLOYEE/INMATE UNIT FILE



| WYOMING DEPARTMENT OF CORRECTIONS | WDOC Form # 340 | Page 1 of 2 |
|---|---|---|
| | Conduct Violation Report | Last Revised: 07/15/09 |

| INMATE INFORMATION | | | |
|---|---|---|---|
| OFFENDER NAME Bobbi Fowler | DOC NUMBER 2964 | HOUSING LOCATION Pod 8 | FACILITY WWC |

| VIOLATION INFORMATION | | |
|---|---|---|
| CHARGING EMPLOYEE (NAME AND TITLE) AW Neicole Molden | DATE OF INCIDENT 6/12/2018 | TIME OF INCIDENT 115 approx |

| LOCATION OF INCIDENT pod 9 | DATE CHARGES WRITTEN 6/11/2018 | EVIDENCE COLLECTED ☐ YES ☐ NO | EVIDENCE HELD BY |
|---|---|---|---|

| CHARGES (LIST SEPERATELY) | #1: GN 9 Failure to follow rules | #2: | #3: | #4: |
|---|---|---|---|---|

**REPORT OF VIOLATION**
INCLUDE UNUSUAL INMATE BEHAVIOR, STAFF WITNESSES, AND ANY IMMEDIATE ACTION TAKEN, INCLUDING USE OF FORCE. ATTACH ADDITIONAL DOCUMENTATION IF NECESSARY.

On the above date and time I was watching the pod 8 cameras at the 1100 count and observed inmate Bobbi Fowler 2964 leave her cell during count time without permission. Policy states that inmates are to remain celled in until count clears. I am charging inmate Fowler 2964 with a GN 9 failure to follow rules.

Policy and Procedure #2.200    Revised 1/18

25-1-104
25-1-105
3. i

A seperate toilet fixture and sink that are available for use without staff assistance twenty-four (24) hours a day. Inmates shall be able to use these facilities without staff assistance when they are confined in their cells/sleeping area or medical housing unit/infirmary area.

Peterson called out-time at about 11:56 Am, before out-time was announced over the all call.

She would have allowed restroom access after 11:20 am

181061013



| WYOMING DEPARTMENT OF CORRECTIONS | WDOC Form # 340 | Page 2 of 2 |
|---|---|---|
| | Conduct Violation Report | Last Revised: 07/15/09 |

## INMATE RIGHTS

FORMAL DISCIPLINARY CHARGES ARE BEING BROUGHT AGAINST YOU FOR THE VIOLATIONS CITED ABOVE. YOU WILL BE GRANTED A FORMAL DISCIPLINARY HEARING, WHICH MAY RESULT IN MINOR, GENERAL OR MAJOR SANCTIONS.
IN REGARD TO YOUR FORMAL DISCIPLINARY HEARING, YOU HAVE THE FOLLOWING RIGHTS:

- To be present at all stages of the hearing unless you refuse to attend, become disruptive, your presence would jeopardize the safety of the witness, or there is a presentation of confidential information;
- To consult with private counsel at your own expense prior to the hearing in accordance with WDOC Policy & Procedure #3.102, *Inmate Disciplinary Procedures*. Private Counsel will not be allowed at any Disciplinary Hearing;
- To consult with and be represented by a staff representative if such is determined necessary. Staff representation will be limited to those situations in which the hearing is complex, the charged inmate has limited ability to understand, or where interpretation is needed because of language;
- To remain silent, if the violation involved possible criminal misconduct. The violation shall be read and you shall plead to the charge. Silence shall be considered as a plea of not guilty.
- To request from the Hearing Officer, in writing, to be granted a delay in the hearing, stating the reason for the request;
- To receive the written notice of charges and copies of any written information which the hearing officer or board will consider unless disclosure of such information would threaten facility security and order, or if it would endanger any individual;
- To make a statement and present evidence on your behalf;
- To call witnesses on your behalf. The hearing officer may limit witnesses and may take testimony of a witness telephonically. The hearing officer or board may stipulate to the testimony of a prospective witness in lieu of actual testimony;
- To have the case against you presented by the charging employee, if available, and/or through evidence documented in WDOC Form #340, *Conduct Violation Report*, and/or by other witnesses/evidence presented at the hearing;
- To question all adverse witnesses through the hearing officer or board unless the questioning would be unduly hazardous to facility security or the physical safety of an individual;
- To receive a written statement of the decision, and the facts supporting the decision, except where facility safety would be jeopardized;
- To appeal the decision. You have 15 calendar days after the hearing officer or board decision to submit the appeal to the Warden in writing. The Warden has 30 days to answer the appeal. The Warden's decision on appeals is final.

## NOTIFICATION OF FORMAL DISCIPLINARY HEARING

| DATE OF HEARING 6/17/18 | TIME 0800+ | LOCATION WWC |
|---|---|---|

### SIGNATURE OF CHARGING EMPLOYEE AND SUPERVISOR

| CHARGING EMPLOYEE SIGNATURE | SHIFT SUPERVISOR SIGNATURE (REVIEW AND APPROVAL) |
|---|---|

## INMATE ACKNOWLEDGEMENT AND SERVICE OF NOTICE

INMATE INITIALS:

I HAVE RECEIVED THE CONDUCT VIOLATION REPORT AND AM AWARE OF THE CHARGE(S) BROUGHT AGAINST ME

I AM AWARE OF THE DATE AND TIME OF MY DISCIPLINARY HEARING

I HAVE BEEN INFORMED OF MY RIGHTS AFFORED ME REGARDING THE DISCIPLINARY HEARING PROCESS

I WISH TO APPEAR FOR THE SCHEDULED DISCIPLINARY HEARING. I UNDERSTAND IT IS MY RESPONSIBILITY TO CONVEY, IN WRITTEN FORM, A REQUEST FOR A DELAY OF THE SCHEDULED HEARING, REQUEST FOR WITNESSES, OR ANY SPECIAL DOCUMENTATION WHICH I MAY WISH TO PRESENT. FAILURE TO SO REQUEST THROUGH THE HEARING OFFICER 24 HOURS PRIOR TO THE SCHEDULED HEARING WILL RESULT IN NEGATING THESE RIGHTS.

I DO NOT WISH TO APPEAR FOR THE SCHEDULED HEARING AND HEREBY WAIVE THAT OPTION. I UNDERSTAND THAT BY WAIVING THIS OPTION, I AM ADMITTING GUILT TO THE AFOREMENTIONED CHARGE(S). I FURTHER UNDERSTAND THAT I CANNOT WAIVE A DISCIPLINARY HEARING FOR A MAJOR VIOLATION CHARGE.

INMATE SIGNATURE _____ DATE _____

☐ INMATE REFUSED TO SIGN.   COMMENTS: _____

## COMPLETED BY TRACKING OFFICER

| DATE OF SERVICE 6/13/18 | TIME 1345 | PRINTED NAME OF TRACKING OFFICER, INCLUDING TITLE CM J Bleming | SIGNATURE |
|---|---|---|---|

## DISTRIBUTION:

ORIGINAL TO DISCIPLINARY COMMITTEE CHAIR, COPY TO INMATE, COPY TO CHARGING EMPLOYEE/INMATE UNIT FILE

*Exh. 18*     " #XXXXXX "

| WYOMING DEPARTMENT OF CORRECTIONS | WDOC Form # 341 | Page 1 of 2 |
|---|---|---|
| | Disciplinary Hearing Record | Last Revised: 06/11/09 |

| OFFENDER NAME Julie Jacobson | DOC NUMBER 2183 | HOUSING LOCATION 9 | TRACKING NO. 18.06.010 |
|---|---|---|---|

| CHARGE(S) GN9 | DATE OF INCIDENT 6/07/18 | TIME OF INCIDENT 1625 | |
|---|---|---|---|

| LOCATION OF INCIDENT Pod 9 Dayroom | EVIDENCE COLLECTED ☒ YES ☐ NO | DATE CHARGES WRITTEN 6/8/18 | DATE OF SERVICE 6/08/18 |
|---|---|---|---|

| CHARGING EMPLOYEE NAME AW Molden | ☐ OFFENDER PLEAD GUILTY/WAIVED RIGHT TO HEARING    INMATE SIGNATURE:_____ | HEARING DATE 6/18/18 | HEARING TIME 1923 |
|---|---|---|---|

| INMATE DEFENDANT PRESENT ☒ YES ☐ NO/REMOVED - INDICATE REASON: | REASON FOR HEARING DELAY OR POSTPONEMENT (IF APPLICABLE) Inmate at Hospital 6/12/18 to 6/16/18 | ☐ DEFENDANT'S RIGHTS WERE READ ☒ PROCEDING RECORDED ☐ CONFIDENTIAL INFORMATION USED (REFER TO WDOC FORM #103) |
|---|---|---|

| CHARGING EMPLOYEE TESTIMONY ☐ YES ☒ NO | ☐ STAFF REPRESENTATIVE ASSIGNED    STAFF REPRESENTATIVE NAME: N/A |
|---|---|

| INMATE'S REQUESTED WITNESSES N/A | ADDITIONAL WITNESSES N/A | EXCLUDED WITNESSES/STIPULATED TESTIMONY (INCLUDE REASON) N/A |
|---|---|---|

**INMATE STATEMENT**
Plead not guilty. Was at the Pod meeting and was informed could use restroom if it was an Emergency. She stated that she was on new medication and it made her use the restroom more often. She showed a Medical statement about the new meds. She waited until the Officers counted and did not ask them to use the restroom.

| CHARGES AND PLEAS | | | | EVIDENCE RELIED UPON |
|---|---|---|---|---|
| CHARGE | GUILTY | NOT GUILTY | NEGOTIATION REQUESTED | ☒ DISCIPLINARY REPORT   ☐ VIDEO ☐ INVESTIGATION REPORT ☐ CONFIDENTIAL INFORMATION ☐ INMATE PLEAD GUILTY ☐ TESTIMONY OF REPORTING STAFF ☒ OTHER: DVR |
| #1:  GN9 | ☐ | ☒ | ☐ | |
| #2: | ☐ | ☐ | ☐ | |
| #3: | ☐ | ☐ | ☐ | |
| #4: | ☐ | ☐ | ☐ | |

**SUMMARY AND FINDINGS** – *Provide a brief statement on basis for the disciplinary decision:*
GN9- Failure to Follow Rules. Found guilty. Did not ask permission to use the restroom. Was given a WDOC Form 242 Appeal paperwork.

*Exh. 18   Pg. 2 of 2*



| WYOMING DEPARTMENT OF CORRECTIONS | WDOC Form # 341 | Page 2 of 2 |
|---|---|---|
| | Disciplinary Hearing Record | Last Revised: 06/11/09 |

| CHARGE | REDUCED TO | GUILTY | NOT GUILTY | DISMISS | SANCTION |
|---|---|---|---|---|---|
| #1: GN9 | | ☒ | ☐ | ☐ | Fine $10. |
| #2: | | ☐ | ☐ | ☐ | |
| #3: | | ☐ | ☐ | ☐ | |
| #4: | | ☐ | ☐ | ☐ | |

*RECOMMENDATIONS*

☐ REFERRAL TO POST DISCIPLINARY CLASSIFICATION

| HEARING STAFF SIGNATURE | | DATE |
|---|---|---|
| HEARING STAFF SIGNATURE | | DATE 6-18-18 |
| HEARING STAFF SIGNATURE | | DATE |

ADMINISTRATIVE REVIEW: ☒ AFFIRM  ☐ DISMISS  ☐ MODIFY (EXPLAIN): | DATE

DEPUTY WARDEN SIGNATURE: _____   DATE: 6-19-18

DISTRIBUTION: ORIGINAL TO DISCIPLINARY RECORD, COPY TO OFFENDER, COPY TO BASE FILE (IF APPLICABLE)

EXH. 18.1 PG. 1 OF 2



| WYOMING DEPARTMENT OF CORRECTIONS | WDOC Form # 341 | Page 1 of 2 |
|---|---|---|
| | Disciplinary Hearing Record | Last Revised: 06/11/09 |

| OFFENDER NAME | | | |
|---|---|---|---|
| Bobbi Fowler | DOC NUMBER 2964 | HOUSING LOCATION 81Mb | TRACKING NO. 18.06.013 |

**CHARGE(S)**
GN9

| DATE OF INCIDENT | TIME OF INCIDENT |
|---|---|
| 6/13/18 | 1115 |

| LOCATION OF INCIDENT | EVIDENCE COLLECTED | DATE CHARGES WRITTEN | DATE OF SERVICE |
|---|---|---|---|
| Pod 8 Dayroom | ☒ YES  ☐ NO | 6/13/18 | 6/13/18 |

| CHARGING EMPLOYEE NAME | ☐ OFFENDER PLEAD GUILTY/WAIVED RIGHT TO HEARING | HEARING DATE | HEARING TIME |
|---|---|---|---|
| AW Molden | INMATE SIGNATURE:_____ | 6/18/18 | 1505 |

| INMATE DEFENDANT PRESENT ☒ YES ☐ NO/REMOVED - INDICATE REASON: | REASON FOR HEARING DELAY OR POSTPONEMENT (IF APPLICABLE) | ☐ DEFENDANT'S RIGHTS WERE READ ☒ PROCEDING RECORDED ☐ CONFIDENTIAL INFORMATION USED (REFER TO WDOC FORM #103) |
|---|---|---|

| CHARGING EMPLOYEE TESTIMONY ☐ YES ☒ NO | ☐ STAFF REPRESENTATIVE ASSIGNED STAFF REPRESENTATIVE NAME: N/A |
|---|---|

| INMATE'S REQUESTED WITNESSES N/A | ADDITIONAL WITNESSES N/A | EXCLUDED WITNESSES/STIPULATED TESTIMONY (INCLUDE REASON) N/A |
|---|---|---|

**INMATE STATEMENT**
Plead not guilty. Stated that she knows that she did not leave the cell, she wasn't out. Has been back to Pod 8 for about one month. Did not attend a Pod meeting about staying celled in during count.

| CHARGES AND PLEAS | | | | EVIDENCE RELIED UPON |
|---|---|---|---|---|
| CHARGE | GUILTY | NOT GUILTY | NEGOTIATION REQUESTED | ☒ DISCIPLINARY REPORT  ☐ VIDEO |
| #1: GN9 | ☐ | ☒ | ☐ | ☐ INVESTIGATION REPORT |
| #2: | ☐ | ☐ | ☐ | ☐ CONFIDENTIAL INFORMATION ☐ INMATE PLEAD GUILTY |
| #3: | ☐ | ☐ | ☐ | ☐ TESTIMONY OF REPORTING STAFF ☒ OTHER: DVR |
| #4: | ☐ | ☐ | ☐ | |

**SUMMARY AND FINDINGS** – *Provide a brief statement on basis for the disciplinary decision:*
GN9- Failure to Follow Rules. Found guilty. Did not ask permission to use the restroom. Was given a WDOC Form 242 Appeal paperwork.

EXH. 18, 1 PG 2 OF 2

| WYOMING DEPARTMENT OF CORRECTIONS | WDOC Form # 341 | Page 2 of 2 |
|---|---|---|
| | Disciplinary Hearing Record | Last Revised: 06/11/09 |

| RECOMMENDATIONS | | | | | |
|---|---|---|---|---|---|
| CHARGE | REDUCED TO | GUILTY | NOT GUILTY | DISMISS | SANCTION |
| #1: GN9 | | ☒ | ☐ | ☐ | Fine $10. |
| #2: | | ☐ | ☐ | ☐ | |
| #3: | | ☐ | ☐ | ☐ | |
| #4: | | ☐ | ☐ | ☐ | |

☐ REFERRAL TO POST DISCIPLINARY CLASSIFICATION

HEARING STAFF SIGNATURE _____  DATE 6-18-18

HEARING STAFF SIGNATURE _____  DATE

HEARING STAFF SIGNATURE _____  DATE

ADMINISTRATIVE REVIEW: ☒ AFFIRM  ☐ DISMISS  ☐ MODIFY (EXPLAIN):

DEPUTY WARDEN SIGNATURE: _____  DATE: 6-79-18

DISTRIBUTION:  ORIGINAL TO DISCIPLINARY RECORD, COPY TO OFFENDER, COPY TO BASE FILE (IF APPLICABLE)

# Wyoming Women's Center

## Resident Statement

| | | | | |
|---|---|---|---|---|
| Resident ID: | 2964 | | Run Date: | 07/02/2018 |
| Full Name: | Fowler, Bobbi Lee | | From: | 06/01/2018 |
| Housing: | WWC,9,,,,11 | | Through: | 06/30/2018 |

### Beginning Balances

| Account | Balance | Debt | Payable |
|---|---|---|---|
| Court Ordered Obligations | $0.00 | ($777.48) | $0.00 |
| Inmate Trust | $100.22 | $0.00 | $0.00 |
| Mandatory Savings | $9.44 | $0.00 | $0.00 |
| Beginning Totals | $109.66 | ($777.48) | $0.00 |

### Ending Balances

| Account | Balance | Debt | Payable |
|---|---|---|---|
| Court Ordered Obligations | $0.00 | ($777.48) | $0.00 |
| Inmate Trust | $0.79 | $0.00 | $0.00 |
| Mandatory Savings | $9.44 | $0.00 | $0.00 |
| Ending Totals | $10.23 | ($777.48) | $0.00 |

### Activity

| Task # | Date | Type | Comment | Entry # | Amount | Balance | Debt | Payable |
|---|---|---|---|---|---|---|---|---|
| 2566826 | 06/05/2018 | Sale | Commissary Sale -KB | | ($38.22) | $71.44 | ($777.48) | $0.00 |
| 2566894 | 06/05/2018 | Transfer Other Funds | Yarn Order Refund | Recreation | $38.91 | $110.35 | ($777.48) | $0.00 |
| 2571325 | 06/08/2018 | Sale | Property Sale -KB | | ($6.72) | $103.63 | ($777.48) | $0.00 |
| 2573392 | 06/12/2018 | Sale | commissary MR | | ($45.61) | $58.02 | ($777.48) | $0.00 |
| 2575255 | 06/13/2018 | Sale | Pre-Order Sale -KB | | ($28.25) | $29.77 | ($777.48) | $0.00 |
| 2579510 | 06/19/2018 | Transfer Other Funds | Disc. Fine | Fines | ($10.00) | $19.77 | ($777.48) | $0.00 |
| 2579518 | 06/19/2018 | Sale | Commissary Sale -KB | | ($10.19) | $9.58 | ($777.48) | $0.00 |
| 2582846 | 06/22/2018 | Sale | REFUND; Pre-Order -KB | | $7.15 | $16.73 | ($777.48) | $0.00 |
| 2584572 | 06/26/2018 | Sale | Commissary Sale -KB | | ($5.00) | $11.73 | ($777.48) | $0.00 |
| 2585212 | 06/27/2018 | Transfer Other Funds | Print Card -KB | Education | ($1.50) | $10.23 | ($777.48) | $0.00 |
| Ending Balances | | | | | | $10.23 | ($777.48) | $0.00 |



WWC

# Resident Activity Report

| | | |
|---|---|---|
| Resident Id: | 2183 | |
| Full Name: | Jacobsen, Julie Ann | |
| Housing: | WWC, 5, F | |

| | |
|---|---|
| Run Date: | 11/14/2018 |
| From: | 06/01/2018 |
| To: | 06/30/2018 |

### Beginning Balances

| Account | Balance | Debt | Payable |
|---|---|---|---|
| Court Ordered Obligations | $0.00 | -$390891.21 | $0.00 |
| Inmate Trust | $297.76 | $0.00 | $0.00 |
| Mandatory Savings | $561.96 | $0.00 | $0.00 |
| | $859.72 | -$390891.21 | $0.00 |

### Ending Balances

| Account | Balance | Debt | Payable |
|---|---|---|---|
| Court Ordered Obligations | $0.00 | -$390843.99 | $0.00 |
| Inmate Trust | $237.99 | $0.00 | $0.00 |
| Mandatory Savings | $575.23 | $0.00 | $0.00 |
| | $813.22 | -$390843.99 | $0.00 |

### Activity

| Task # | Date | Type | Comment | Entry # | Amount | Balance | Debt | Payable |
|---|---|---|---|---|---|---|---|---|
| 2565657 | 06/04/2018 | Transfer Other Funds | 4.9oz package | | -$3.75 | $855.97 | -$390891.21 | $0.00 |
| 2567593 | 06/06/2018 | Sale | Commissary Sale -KB | | -$51.86 | $804.11 | -$390891.21 | $0.00 |
| 2570631 | 06/09/2018 | Resident Deposit | WWC MAY Incentive Pay | | $132.70 | $889.59 | -$390843.99 | $47.22 |
| 2573885 | 06/12/2018 | Sale | commissary MR | | -$9.72 | $879.87 | -$390843.99 | $47.22 |
| 2575883 | 06/14/2018 | Release | Automated Release | | $0.00 | $879.87 | -$390843.99 | $47.22 |
| 2578377 | 06/18/2018 | Group Withdrawal | May 2018 Court Ordered Obligations  44883 | | -$47.22 | $879.87 | -$390843.99 | $0.00 |
| 2578961 | 06/19/2018 | Intake | Automated Intake | | $0.00 | $879.87 | -$390843.99 | $0.00 |
| 2578962 | 06/19/2018 | Change Housing | Intake Housing Assignment | | $0.00 | $879.87 | -$390843.99 | $0.00 |
| 2579519 | 06/19/2018 | Transfer Other Funds | Disc. Fine | | -$10.00 | $869.87 | -$390843.99 | $0.00 |
| 2581101 | 06/21/2018 | Change Housing | Automated Housing Change | | $0.00 | $869.87 | -$390843.99 | $0.00 |
| 2581358 | 06/21/2018 | Sale | commissary KB | | -$46.13 | $823.74 | -$390843.99 | $0.00 |
| 2584599 | 06/26/2018 | Sale | Commissary Sale -KB | | -$10.52 | $813.22 | -$390843.99 | $0.00 |
| Ending Balances | | | | | | $813.22 | -$390843.99 | $0.00 |

EXH. 19.1 pg 20P1



| | | | |
|---|---|---|---|
| **Wyoming Department of Corrections** | WDOC FORM #160.1 | | Page 1 of 1 |
| | **Inmate Financial Transaction Form** | | Last Revised: 09/4/15 |

## Inmate Financial Transaction Form

Date: 6-18-18

Inmate Name: *Julee Jacobsen*      WDOC# 2183      Unit/Cell: ~~HSU2~~

HSU2

ONE transaction per form

☐ Copies _____ x _____ each      ☐ Postage      ☐ Educational Printing

☐ Phone Call _____ Minutes x _____ rate      ☐ *Check ($1 fee per Check)      ☐ Automatic Deduction (Authorization/Revocation)

☐ Funds Transfer (Trust/Savings)      ☐ Donation (within institution)      ☒ Other: *Disciplinary fine*

To: _____      Amount: $ 10.00

Address: _____      Check Fee: $ _____

_____      Total: $ 10.00

Comments: _____

**•All check request must include an addressed, stamped envelope•**

*The information I have provided on this request is true and accurate. I have sufficient funds in my account for this transaction. I understand that I may be subjected to disciplinary action if I have provided false or misleading information. If this form is incomplete or incorrect, the request may be denied.*

Inmate Signature: *Julee Jacobsen*      Date: 6-18-18

Staff Signature: *[signature] Engel*      Date: 6-18-18

Unit Supervisor Signature: _____      Date: _____

Other Staff Signature (as needed by policy): _____      Date: _____

### Business Office Use Only

_____      _____      _____
Processed By      Date      Check #

Comments: _____

*EXH. 20 PG 1 OF 3*

| WYOMING DEPARTMENT OF CORRECTIONS | WDOC Form #342 | Page 1 of 2 |
|---|---|---|
| | Inmate Disciplinary Appeal Form | Last Revised: 06/29/09 |

## INMATE DISCIPLINARY APPEAL FORM

Inmate Name: _Julie Jacobson_   WDOC #: _2183_
Institution: _WWC_   Unit/Cell: _91 ZB_
Date: _6-29-18_   Time: _16:00_

Provide a clear, straightforward statement of the grounds for appeal.

*Note:* Grounds for appeal are limited to (1) whether there was substantial compliance with institutional standards and procedures in handling inmate discipline; (2) whether the charge(s) for which the inmate was found guilty was supported by the evidence; (3) whether the disciplinary hearing officer or board's decision was based on a preponderance of the evidence; or (4) whether, under the circumstances, the sanction imposed was proportionate to the rule violation.

You may provide up to two (2) additional pages if necessary.

I am appealing my disciplinary finding of "guilty" based on the grounds that there was not substantial compliance with institutional policies in handling the disciplinary process. Policy and Procedure #2.300 - Inmate Housing Areas states under IV, C:
3. Each dormitory, to include the medical infirmary unit, shall include the following:
C. Inmates shall have access to inmate (please see page 2 attachment)

Provide a clear statement of exactly what relief or remedy is expected.

I am asking that the "guilty" finding be overturned, or that a new hearing be ordered.

Inmate Signature: _Julie Jacobson_

### Administrative Use Only

| Disciplinary Appeal Number: | 18.0009 |
|---|---|

RECEIVED

*EXA. 20 PG 2OF 23*

Julie Jacobsen #2183

Page 2 attachment to Inmate Disciplinary Appeal Form #342

> toilets and hand-washing facilities twenty-four (24) hours per day. Inmates shall be able to use these facilities without staff assistance when they are confined in their cells/sleeping area or medical housing unit/infirmary area.

According to this policy, we are to have access to restrooms 24 hours a day; therefore, the housing rules violate federally mandated DOC policy. Additionally, ACA policy, on page 38 of the "Standards for Adult Correctional Institutions 4th Edition", 4-4137 clearly states:

> "Inmates have access to toilets and hand-washing facilities 24 hours per day and are able to use toilet facilities without staff assistance while they are confined in their cells/sleeping areas."

We are in dry cells and I was written up for using the restroom in Pod 9 during count. On the day in question, I had just started a new medication two days prior which caused diarrhea. When I went to the restroom, it was an emergency and I therefore could not push the intercom button and wait for staff to respond without having an accident. At my hearing on Monday, June 18, 2018, I attempted to present documentary evidence from medical stating the side effects to the medication I had just started (see Exhibit A attached hereto and made part of). The hearing officer, Sgt. Eitel, noted viewing this evidence on the Disciplinary Hearing Record Form #341; however, I was found guilty anyway (see Exhibit B attached hereto and made part of). I also showed Sgt. Eitel a copy of the above stated policy and procedure so that she was aware that policy stated we were to have 24 hour access to restrooms and she chose to find me guilty against policy and ACA standards (see "Exhibit C" attached hereto and made part of). I believe all mitigating evidence was set aside and that I did not receive a fair and impartial hearing. Sgt. Eitel stated that I should have requested permission prior to using the restroom, which was an unreasonable expectation considering the circumstances.

RECEIVED

WYOMING DEPARTMENT OF CORRECTIONS
**Policy and Procedure**
**#2.200**
Page 6 of 10 Inmate Housing Areas

## C. Dormitory Housing

1. Dormitories and other multiple-occupant housing areas, such as "squad rooms", shall house no less than two (2) and no more than fifty (50) pre-screened inmates in each dorm.

2. At least thirty-five (35) square feet of unencumbered floor space shall be available per inmate;

3. Each dormitory, to include the medical infirmary unit, shall include the following:

    i.    Inmates shall have access to inmate toilets and hand-washing facilities twenty-four (24) hours per day. Inmates shall be able to use these facilities without staff assistance when they are confined in their cells/sleeping area or medical housing unit/infirmary area. There shall be at least one (1) operable toilet for every twelve (12) inmates in male facilities and at least one (1) operable toilet for every eight (8) inmates in female facilities. Urinals may be substituted for up to one-half of the toilets in a male facility; however, all housing units with three (3) or more inmates shall have at least (2) two toilets. These ratios shall apply unless state or local building or health codes specify a different ratio. (ACA 4-4137; 4-4419

*Exh 21 PG 1 OF 3*

| WYOMING DEPARTMENT OF CORRECTIONS | WDOC Form #342 | Page 1 of 2 |
|---|---|---|
| | Inmate Disciplinary Appeal Form | Last Revised: 06/29/09 |

## INMATE DISCIPLINARY APPEAL FORM

Inmate Name: Bobbi Fowler          WDOC #: 2964
Institution: WWC                   Unit/Cell: 81M
Date: 6/18/18          Time: 1650

**Provide a clear, straightforward statement of the grounds for appeal.**

*Note:* Grounds for appeal are limited to (1) whether there was substantial compliance with institutional standards and procedures in handling inmate discipline; (2) whether the charge(s) for which the inmate was found guilty was supported by the evidence; (3) whether the disciplinary hearing officer or board's decision was based on a preponderance of the evidence; or (4) whether, under the circumstances, the sanction imposed was proportionate to the rule violation.

**You may provide up to two (2) additional pages if necessary.**

On June 13th 2018, I received a CVR for a 6N9 - Failure to follow rules. The write-up states that I was out of my cell during count time without permission. The write up states the incident occurred on June 12th 2018, during the 11:00am count. Sgt Eitel informed me, that the incident actually occurred on June 13th 2018, which was the day I was served the write-up. Both dates, time, and location are incorrect on the CVR, however, it couldn't have possibly been on the 13th because that is the day the write up was served in the same time frame. I did, in fact, use the restroom during the 11:00am count, with permission from Ofc. Collins, which can clearly be identified.

**Provide a clear statement of exactly what relief or remedy is expected.**

That this entire affair be expunged from my file, as I am not in violation. The policy should be followed, unless it is formally revised, as it clearly states that we are allowed the use of restroom and sink any time we are confined to our cells. That those women who must use the restroom because of emergency, not be retaliated against by having to move to the halls, which has been threatened already. Nature happens.

Inmate Signature: *[signature]*          $410.00 be reimbursed

| Administrative Use Only | |
|---|---|
| Disciplinary Appeal Number: | |



| WYOMING DEPARTMENT OF CORRECTIONS | WDOC Form #342 | Page 2 of 2 |
| --- | --- | --- |
| | Inmate Disciplinary Appeal Form | Last Revised: 06/29/09 |

## INSTRUCTIONS FOR INMATE DISCIPLINARY APPEAL FORM

- An inmate has fifteen (15) calendar days after notice of a final decision to submit an appeal to the Warden. The Warden will rend a decision on the appeal within thirty (30) calendar days of receipt from the inmate.

- Grounds for appeal are limited to (1) whether there was substantial compliance with institutional standards and procedures in handling inmate discipline; (2) whether the charge(s) for which the inmate was found guilty was supported by the evidence; (3) whether the disciplinary hearing officer or board's decision was based on a preponderance of the evidence; or (4) whether, under the circumstances, the sanction imposed was proportionate to the rule violation.

- The following cannot be appealed: a plea of guilty to a conduct violation charge; a waiver by an inmate, including the consequences thereof; classification decisions; withholding/removal of good time.

- A disciplinary appeal shall be directed to the Warden of the correctional facility where the disciplinary hearing took place. The inmate's appeal must be received in the Warden's office within the required time frame.

- Disciplinary appeals will not be accepted or processed if they are not on the approved WDOC Form #342, or if they exceed the space authorized by the form.

- The disciplinary appeal should include all currently known facts and information regarding the issue(s) under appeal, including pertinent dates, times, references to the rule book, documents and other information which will fully explain the problem. HOWEVER, additional evidence or information not included in the initial inmate appeal will NOT be considered, unless such evidence or information was unavailable or unknown at the time of the initial hearing.

- The disciplinary appeal form must be placed in a sealed envelope addressed to the Warden. The envelope should be clearly marked "INMATE DISCIPLINARY APPEAL" and "CONFIDENTIAL" on the outside. The envelope may be placed into the secure designated receptacle in the correctional facility for pickup and processing or given to the control center or other appropriate staff person for delivery to the Warden.

- A written decision by the Warden will be given to the inmate within thirty (30) calendar days after receipt of the disciplinary appeal, unless an extension has been agreed to by the inmate or unless the inmate has been notified in writing of an extension of time for response.

EXH 2 PG 2 OF 3

on camera. Both myself and inmates Brumme and Green permission at the same time, and used the rest room at the same time. The camera will validate that I held up my toilet paper between cell 81I and 81K, pointed to it and asked to use the bathroom. At no time before my hearing was June 13th, 2018, even brought up. I believe that Sgt Eitel reviewed the cameras because Ofc. Peterson spoke with her about June 12th, 2018, so she went back to find that I did not leave my cell on the date indicated on the CVB. Had June 13th really been the date, inmate Brumme and Green would have also recieved a CVB.

I asked Sgt Eitel to review camera footage to verify that I did not leave room on June 12th, 11:00am count, and she told me that she didn't need too, because the AW put it in her staff report. I asked her if the AW could have made a mistake, which is clearly the case, and she told me no, she (AW) saw me on camera. I believe that Sgt Eitel did verify that I was not out on my cell during count on June 12th, so reviewed camera footage until she did find me out of cell during count, but it didn't happen without first getting permission from Ofc. Collins.

Policy and Procedure #2.200 Revised 1/18
    3. i  States
A seperate toilet fixture and sink are available for use without staff assistance twenty four (24) hours a day. Inmates shall be able to use these facilities without staff assistance when they are confined in their cells/ sleeping are or medical housing unit/infirmary area

EXH 2D        pg. 3 OF 3

Are we not confined during count, therefore allowing us to use the restroom during that time?

When I read the policy to Sgt Eitel, she told me that there have been Pod meetings where we have been told not to use the rest room during count. I have never attended a meeting that was discussed, nor I have I seen a memo to Supercede the current policy.

The following facts should be considered.
1. Incident date on CVR is after the date charges were written.
2. Time of incident is incorrect on CVR
3. Sgt Eitel states that the incident happened on on June 13th 2018, which is not even mentioned on the CVR
4. I didn't leave my cell during count on June 12, 2018.
5. I am not in violation of policy even if I had not asked for permission to use the rest room on June 13, 2018
6. I was forced to sign an FTF for a 10.00 fine when I clearly told Sgt Eitel I did not have those funds in my account, which is in itself grounds for a write up.

EXH, 22    THE STATE OF WYOMING  PG, 1 OF 2  10LL

MATTHEW H. MEAD
GOVERNOR

ROBERT O. LAMPERT
DIRECTOR

RICK CATRON
WARDEN

NEICOLE MOLDEN
ASSOCIATE WARDEN

# DEPARTMENT OF CORRECTIONS
## Wyoming Women's Center

P. O. Box 300
LUSK, WYOMING 82225
Telephone (307) 334-3693
FAX: (307) 334-2254

(307) 334-3693
FAX: (307) 334-2254

**DATE:**     July 3, 2019

**TO:**       Julie Jacobsen #2183

**FROM:**     Warden Catron

**SUBJECT:**  Appeal of Disciplinary Action

In response to your appeal, I have reviewed your submitted statement regarding the disciplinary finding of guilty *"based on the grounds that there was not substantial compliance with institutional policies in handling the disciplinary process"*. Your disciplinary was due to you leaving your cell, without requesting permission, during count.

You request that the "guilty" finding be overturned, or that a new hearing be ordered.

Policy states that all inmate movement will cease while a formal count is being conducted.

### Policy and Procedure #3.000 – Inmate Count:

B. (6):  **All inmate movement will cease while a formal count is being conducted. A count will be announced by intercom or by the staff person assigned to count the specific area.**

You have not identified or provided documentation substantiating the disciplinary process was done incorrectly. Your disciplinary hearing was done fairly and equitably, enforcing all departmental and institutional rules and applying discipline in a impartial and consistent manner.

Your disciplinary appeal is denied.

Original: Julie Jacobsen #2183
cc:  Julie Jacobsen #2183, Master File

---

Grounds for appeal are limited to (1) whether there was substantial compliance with institutional standards and procedures in handling inmate discipline; (2) whether the charge(s) for which the inmate was found guilty was supported by the evidence; (3) whether the disciplinary hearing officer or board's decision was based on a preponderance of the evidence; or (4) whether, under the circumstances, the sanction imposed was proportionate to the rule violation.

*EXH 11 PG. 2 OF 2*   *81 M*

THE STATE OF WYOMING

MATTHEW H. MEAD
GOVERNOR

ROBERT O. LAMPERT
DIRECTOR

# DEPARTMENT OF CORRECTIONS
## Wyoming Women's Center
P. O. Box 300
LUSK, WYOMING 82225
Telephone (307) 334-3693
FAX: (307) 334-2254

RICK CATRON
WARDEN

NEICOLE MOLDEN
ASSOCIATE WARDEN

(307) 334-3693
FAX: (307) 334-2254

**DATE:**       June 19, 2018

**TO:**         Bobbie Fowler #2964

**FROM:**       Warden Catron

**SUBJECT:**    Appeal of Disciplinary Action

In response to your appeal, I have reviewed your submitted statement regarding the CVR/GN9 you received for failure to follow rules. This CVR was regarding you leaving your assigned cell during count to go to the bathroom. You state that *"you did, in fact, use the restroom during the 11:00 a.m. count, with permission from Ofc. Collins, which can clearly be identified on camera"*.

You request the entire CVR be expunged from your file, stating you were not in violation of policy. In addition, you request the return of the $10.00 fine.

**Policy and Procedure #3.000 – Inmate Count:**

**B. (6):**  All inmate movement will cease while a formal count is being conducted. A count will be announced by intercom or by the staff person assigned to count the specific area.

You have not identified or provided documentation substantiating the disciplinary process was done incorrectly. Your disciplinary hearing was done fairly and equitably, enforcing all departmental and institutional rules and applying discipline in a impartial and consistent manner.

Your disciplinary appeal is denied.

Original:
cc:

---

i

Grounds for appeal are limited to (1) whether there was substantial compliance with institutional standards and procedures in handling inmate discipline; (2) whether the charge(s) for which the inmate was found guilty was supported by the evidence; (3) whether the disciplinary hearing officer or board's decision was based on a preponderance of the evidence; or (4) whether, under the circumstances, the sanction imposed was proportionate to the rule violation.

*EXH. 23*

This administration is notorious for retaliation.   After I sent a letter to the ACA (American Correctional Association) about AW Molden writing me up for using the toilet my housing assignment was changed to a room that has toilets in them and is in a very old part of the prison and they are much smaller than the room I was in.   After she moved me AW Molden called me into the office and told me she was sick of hearing my name and that if I didn't stop running my big mouth I would find myself some where I didn't want to be. I asked her what she meant by that and why she was threatening me and she told me I knew the answer to that question and told me to get the hell back to my room and stay off her radar or I would be at the top of the list of people to go to a county facility.   She ended the meeting with "If you don't believe me why don't you just try me!"

I have been at WWC (Wyoming Women's Center) for 8 years and I have had major medical issues.   Soon after arriving here I was diagnosed with a stage 4 cancer and survived it with minimal follow up treatment. In June of this year I suffered a major heart attack and had to be air lifted to the hospital in Casper.   From the cancer surgery and treatment and the heart attack I suffer from many side effects.   I fear that their retaliation could make my already difficult challenges and circumstances even worse.   I fear their abuse of power, verbal abuse, and their threats.   I am already past my minimum parole eligibility date and I have not been scheduled for a parole hearing.   I just started the grievance process on this matter and I fully expect that they will retaliate in some way.

Julie Jacobsen
#2183