THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

2019 JUN 13  AM 11 27

STEPHAN HARRIS, CLERK
CHEYENNE

| | |
|---|---|
| SHERYL L. ELLIS, Pro Se ) | |
| ) | |
| Plaintiff, ) | |
| vs. ) | |
| ) | |
| MR. LAMPERT, WYOMING DEPARTMENT ) | Civil No. 18-CV-~~189~~-ABJ |
| OF CORRECTIONS (WDOC) ) | 198 |
| MR. CATRON, WYOMING WOMEN'S CENTER (WWC) ) | |
| SHERIFF HARRIS, PLATTE COUNTY DETENTION ) | |
| CENTER (PCDC) ) | |
| MR. CAIN, PCDC ) | |
| MR. MCDONALD, PCDC ) | |
| MR. ANDERSON, PCDC ) | |
| MS. REYNOLDS, PCDC ) | |
| ) | |
| All defendant(s) in their individual and official capacities, ) | |
| ) | |
| Defendants. ) | |

---

## 42 USC § 1983 PETITION

---

COMES NOW, Sheryl L. Ellis, Pro Se and petitions this Court to allow her to proceed on her 42

USC § 1983 case.  Ms. Ellis humbly and respectfully request pleadings by Pro Se Plaintiff be construed

liberally Haines v. Kerner U.S. 519-20

Names and addresses of all parties.

Mr. Lampert, WDOC, 1934 Wyott Dr., Suite 100, Cheyenne, WY  82002

Mr. Catron, WWC, 1000 West Griffith Blvd., Cheyenne, WY  82225

Mr. Harris, Sheriff, PCDC, 850 Maple, Wheatland, WY  82201

Mr. Cain, Security Officer, PCDC, 850 Maple, Wheatland, WY  82201

Mr. McDonald, Security Officer, PCDC, 850 Maple, Wheatland, WY  82201

Mr. Anderson, Security Officer, PCDC, 850 Maple, Wheatland, WY  82201

Ms. Reynolds, Nurse, PCDC, 850 Maple, Wheatland, WY 82201

Ms. Sheryl L. Ellis, #2871, WWC, 1000 West Griffith Blvd., Lusk, WY 82225

Plaintiff Ms. Ellis have never filed a 42 USC § 1983 action before.

## JURISDICTION AND VENUE

Ms. Ellis states this complaint was originally filed as Preliminary and Retaliation Injunction(s). The Honorable Judge Alan B. Johnson, U.S. District Court, Cheyenne, WY rightfully construed the action under 42 U.S.C. § 1983. Ms. Ellis would like to express deep gratitude to this Court for recognizing the seriousness of the complaint, and for allowing Ms. Ellis to proceed under 42 U.S.C. § 1983. This action addresses trespasses with regard to PCDC and WDOC/WWC as the supervising agencies.

Ms. Ellis and Ms. Jacobsen will file a second (2nd) 42 U.S.C. § 1983 which addresses other trespasses listed in the original Preliminary and Retaliation Injunctions.

This Court has jurisdiction pursuant to 28 U.S.C. §§ 1343(3) and (4). Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b).

## PARTIES

1.      Plaintiffs Ms. Ellis is currently serving sentence imposed for violations of law in the State of Wyoming. Ms. Ellis has been assigned the prisoner identification number of 2871 and was placed under the care, custody, and control of the Wyoming Department of Corrections (WDOC). Due to unconstitutional overcrowding at WWC, Ms. Ellis was involuntary transferred to the Platte County Detention Center (PCDC) from approximately June 9, 2017 through approximately October 27, 2017.

2.      Defendant Mr. Lampert is a citizen and resident of Wyoming. At all times material to this action Mr. Lampert has been the Director of WDOC. As such, he is the agency official ultimately responsible under state law for the operation and administration of WDOC, ensuring Plaintiffs right to Constitutional Amendment's, Four (4th) Unlawful Search and Seizure, Eight (8th) Cruel & Unusual

Punishment, as well as among other things, ensuring, competent medical, psychological, and dental care including statuary compliance with the laws of the State of Wyoming, and the federally mandated Prison Rape Elimination Act (PREA) 42 U.S.C. § 15601, et. seq.  Mr. Lampert has a duty to ensure contractual compliance relative to enforcement of the contract between WDOC and PCDC.  Mr. Lampert has a constitutional duty to bar all retaliation against Ms. Ellis for filing grievances regarding unconstitutional conditions of confinement at PCDC.

3.      Defendant Mr. Catron is a citizen and resident of Wyoming.  At all times material to this action Mr. Catron has been the Warden of WWC.  As such, he is the agency official ultimately responsible under state law for the operation and administration of WWC, ensuring Ms. Ellis's right to Constitutional Amendment's, Four (4th) Unlawful Search and Seizure, Eight (8th) Cruel & Unusual Punishment, as well as among other things, ensuring, competent medical, psychological, and dental care including statuary compliance with the laws of the State of Wyoming and the federally mandated PREA . 42 U.S.C. § 15601, et. seq.  Mr. Catron has a duty to ensure contractual compliance relative to enforcement of the contract between WWC and PCDC.  Mr. Catron has a constitutional duty to bar all retaliation against Ms. Ellis for filing grievances regarding unconstitutional conditions of confinement at PCDC.

4.      Defendant Mr. Harris is a citizen and resident of the State of Wyoming.  At all times material to this action Mr. Harris was the Sheriff at PCDC.  In this capacity, he has a duty and obligation under federal and state law to ensure, among other things, Ms. Ellis's right to Constitutional Amendment's Four (4th) Unlawful Search and Seizure, and Eight (8th) Cruel & Unusual Punishment, as well as, among other things, ensuring competent medical, psychological, and dental care including statuary compliance with the laws of the State of Wyoming, and the federally mandated PREA 42 U.S.C. § 15601, et. seq.  Mr. Harris entered into a contract relative to overcrowding with the State of Wyoming and is therefore bound by the terms and conditions contained in the contract.

5.      Defendants Mr. Cain, Mr. McDonald, and Mr. Anderson are citizens and residents of the State of Wyoming. At all times material to this action, Mr. Cain, Mr. McDonald, and Mr. Anderson occupied Security Officer Positions at PCDC. In this capacity, they have a duty and obligation under federal and state law to ensure, among other things, Ms. Ellis's right to Constitutional Amendment's Four (4th) Unlawful Search and Seizure, and Eight (8th) Cruel & Unusual Punishment, as well as, among other things, ensuring competent medical, psychological, and dental care including statuary compliance with the laws of the State of Wyoming and the federally mandated PREA 42 U.S.C. § 15601, et. seq. Mr. Cain, Mr. McDonald, and Mr. Anderson had a duty and obligation to abide by the terms and conditions of the contract between the State of Wyoming and PCDC to ensure compliance.

6.      Defendant Ms. Reynolds, is a citizen and resident of the State of Wyoming. At all times material to this action, Ms. Reynolds occupied the position of medical care provider at PCDC. In this capacity, she has a duty and obligation under state law to ensure, among other things, *competent* medical care pursuant to the contract between the State of Wyoming and PCDC and to protect Ms. Ellis's right to protection under Amendment Eight (8th) Cruel & Unusual Punishment under the U.S. Constitution. Ms. Reynolds has a duty and obligation to abide by the terms and conditions of the contract between the State of Wyoming and PCDC.

7.      All acts and omissions of the defendants set forth below were done under color of state law and were performed during the scope of the employment. All defendants are sued in their individual and official capacities.

## FACTUAL ALLEGATIONS

The Wyoming Department of Corrections, Wyoming Women's Center, is so unconstitutionally overcrowded that it now has to transfer female prisoners to PCDC.

From approximately June 9, 2017 through approximately October 27, 2017 Ms. Ellis was involuntarily transferred to PCDC in Wheatland, WY.

While housed at PCDC, Ms. Ellis was denied opportunities for exercise and recreation.  As a result of Ms. Ellis's complaints both verbal and written, Sheriff Harris, Mr. Cain, and Mr. McDonald moved Ms. Ellis to the "suicide pod" (she was not suicidal) where she was forced to expose her buttocks, genitals, and breasts in terms of changing her clothing or using the commode in front of [only] male deputies in contravention to PREA, 28 C.F.R. Parts §§ 115.6 "Voyeurism by a staff member" and 115.15(d).   Ms. Ellis wrote letters and filed complaints with Sheriff Harris, Mr. Cain, and Mr. McDonald regarding these serious and damaging Amendment Eight (8th) Cruel & Unusual Punishment and violations of the federally mandated PREA.  Sheriff Harris, Mr. Cain, and Mr. McDonald were deliberately indifferent to her grievances.

Sheriff Harris's usual and customary response to prisoner complaints is to either ignore the unconstitutional circumstance(s) by losing grievances and/or ordering them destroyed or make conditions so uncivilized and inhumane that Ms. Ellis was forced into silence out of fear of severe retribution such as being housed permanently in the suicide pod where there is 24/7 video and audio surveillance.  Mr. Harris's attitude toward Amendment Eight (8th) violations and the U.S. Constitution is "I don't care" which was what he told reporter Andrew Graham, WyoFile.com when questioned about some of the allegations regarding Ms. Ellis' confinement at PCDC.

Ms. Ellis filed grievances with regard to some of the unconstitutional conditions of confinement, denial of medical care, lack of recreation and exercise equipment at PCDC, and violations of the federally mandated PREA.  Those grievances were given to Mr. Cain and Mr. McDonald who *did not* allow Ms. Ellis to keep copies of any WDOC/WWC or some PCDC grievances.  Prior to departure, Ms. Ellis requested Sgt. Oneyear produce copies of all grievances and communications from her to PCDC and from her to WDOC/WWC and PCDC.  Sgt. Oneyear was unable to do so as Mr. Cain and Mr. McDonald at Sheriff Harris's direction destroyed all paperwork.

There are five (5) groups of persons intimately familiar with the conditions outlined in this brief. Ms. Ellis who was forced live at PCDC; the staff that work there, the administrators operating the jail, Sheriff Harris who is ultimately responsible for all operations and conditions of confinement at PCDC, and, the administrators at WDOC/WWC.

## THE EIGHTH AMENDMENT PROTECTION

The U.S. Constitution, Amendment VIII strictly prohibits the intentional infliction of "cruel and unusual punishments." This Amendment is crucial because it is the only thing that gives Ms. Ellis a safety net of protection. "[I]t is now settled that the 'the treatment of a prisoner receives in prison and the conditions under which [s]he is confined are subject to scrutiny under the Eighth Amendment." Farmer v. Brennan, 511 U.S. 825, 832 (1994), quoting Helling v. McKinney, 509 U.S. 25, 31 (1993). Further, when prison/jail officials disregard the Eighth Amendment which they have, "judicial intervention is *indispensable.*" Rhodes v. Chapman, 452 U.S. 337, 354 (1981). The Eighth Amendment forces prison/jail officials to "provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care and must 'take reasonable measures to guarantee the safety of the inmates.'" Farmer, 511 U.S. at 832, quoting Hudson v. Palmer, 468 U.S. 517, 526-27 (1984).

The Eighth Amendment has two test components, one objective and the other subjective. First, Ms. Ellis is required to show she is "incarcerated under conditions posing a substantial risk of serious harm." Farmer, at 834. Second, she must show that WDOC/WWC and PCDC officials had a sufficiently culpable state of mind.

1.     **The objective component.**

Under this component Ms. Ellis is alleging violations of the Eighth Amendment and is required to show, based on objective facts, that a condition of confinement creates "a substantial risk of serious harm." Farmer, at 834. Pursuant to this objective component, Plaintiff is not required to show that harm

has already occurred; only that it is substantially likely to occur. Unsafe and/or unhealthy conditions that "pose an unreasonable risk of serious damage to future health" satisfy the objective prong. <u>Helling v. McKinney,</u> U.S. 25, 33 (1993).

Moreover, Ms. Ellis is not required to wait until injury actually occurs before filing suit. A "remedy for unsafe conditions need not await a tragic event," prison/jail administrators are simply not free to "ignore a condition of confinement that is sure or very likely to cause serious injury and needless suffering" merely because no harm has yet occurred. <u>Helling,</u> 509 U.S. at 33; according <u>Farmer,</u> U.S. at 845.

Courts are permitted to consider prison/jail conditions in their entirety when determining whether any one condition constitutes violations under Amendment Eight (8th). Conditions that have "a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or *exercise*" violate the Eighth (8th) Amendment, Cruel and Unusual Punishment when viewed in combination. <u>Wilson v. Seiter,</u> 501 U.S. 294, 304 (1991). Additionally, Plaintiffs request this Court consider the length of time that Ms. Ellis was subject to unsafe and/or unhealthy conditions at PCDC. See <u>Hutto v. Finney,</u> 437 U.S. 678, 686-87 (1978) (noting that unconstitutional confinement conditions may be tolerable "for a few days and intolerably cruel for weeks or months.") Ms. Ellis was involuntarily housed at PCDC for approximately five (5) months.

## 2. <u>The subjective component.</u>

In addition to proving an objective risk of serious harm, <u>Farmer</u> also requires Amendment VIII Plaintiff prove that the defendant officials(s) had a culpable state of mind known as "deliberate indifference." Deliberate indifference is referenced as a standard middle ground that lays "somewhere between the poles of negligence at one end and purpose or knowledge at the other." <u>Farmer,</u> at 836. The <u>Farmer</u> Court likened this standard to criminal recklessness, which make prison/jail administrators liable when they "consciously disregard a substantial risk of serious harm." <u>Farmer,</u> 837-38. Proving

deliberate indifference is an issue of fact that is demonstrated in the usual ways "including inference from circumstantial evidence and a fact-finder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." Farmer, 842 (emphasis added). Such constructive knowledge can be demonstrated by showing that a dangerous or unhealthy condition(s) "was 'longstanding, pervasive, well-documented, or expressly noted by prison officials in the past and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk.'"

Once a prison/jail administrator is "exposed to information concerning the risk," he or she may not turn a blind eye to it. On the contrary, either the risk must be abated or if the administrator is uncertain as to its depth or degree, an investigation must ensue. PCDC's responses to valid grievances were met with deliberate indifference and retaliation. The condition of inadequate recreation and exercise should have been abated on PCDC's own motion long ago and WDOC/WWC should never have entered into a contract until this obvious unconstitutional condition of confinement was met[1]. An administrator "would not escape liability if the evidence showed that he merely refused to verify underlying facts that he strongly suspected to be true, or declined to confirm inferences that he strongly suspected to exist." Id., at 842.

As a matter of discussion relative to an Amendment Eight (8th) violation subjective component test, Ms. Ellis only need show that the *risk* of injury is obvious. Ms. Ellis need not show that the defendant(s) wanted her to be injured by the unconstitutional condition(s). "[A] prison official [may not] escape liability for deliberate indifference by showing that, while they were aware of an obvious, substantial risk to inmate safety, he did not know that the complainant was especially likely to be harmed." Farmer, at 843.

---

[1] WDOC/WWC toured PCDC prior to signing the contract and knew full well there were no recreation and/or functional exercise equipment available. Caseworkers from WWC came to PCDC only three (3) times in five (5) months, and again toured PCDC to verify Ms. Ellis's complaints.

Ms. Ellis states she is not asking this Court to adopt a "totality of conditions" approach where individual conditions of confinement are *not* unconstitutional but that their combined effect is perceived as violating Amendment Eight (8th).   This approach was condemned in <u>Wright v. Rushen,</u> 642 F.2d 1129, 1132-33 (9th Cir. 1981).   For the purposes of this brief, Ms. Ellis demonstrates each of the conditions addressed in this brief-unconstitutional denial of recreation and/or exercise equipment at PCDC, violations of the Prison Rape Elimination Act (PREA), and other violations listed below independently violation Amendment Eight (8th).   But as the Ninth Circuit explained in <u>Wright v. Rushen,</u> in a prison/jail "each condition of confinement does not exist in isolation," and it is fitting to consider them in totality "especially when the ill effects of particular conditions are exacerbated by other related conditions." <u>Wright,</u> 642 F.2d at 1133.

## UNCONSTITUTIONAL CONDITION: INADEQUATE RECREATION RELATIVE TO PCDC

1.      "Exercise is one of the basic human necessities protected by the Eighth Amendment." Moreover, the Fourteenth Amendment requires that pre-trial detainees not be denied adequate opportunities for exercise without legitimate governmental objective.   It is also the only avenue by which to engage in Due Process such that complaints can be fully investigated.   <u>Pierce v. County of Orange,</u> 526 F.3d 1190, 1211-12 (9th Cir. 2008), citing <u>LeMaire v. Maass,</u> 12 F.3d 1444, 1457 (9th Cir. 1993).   Ms. Ellis was held for approximately five (5) months and as such must have been offered a reasonable opportunity for both indoor *and* outdoor recreation.   PCDC did not allow Ms. Ellis outside at any time while in their custody, a violation of American Correctional Association (ACA) 4-4270, and while housed in the suicide pod (Ms. Ellis was not suicidal) she was not allowed access to natural light a violation of ACA 4-4147, which implicates protection under Amendment Eight (8th).   See <u>Pierce,</u> 526 F.3d at 1212.

2.      It is well settled that "some opportunity for exercise must be afforded to prisoners" unless there is serious reasons as to why this does not happen.   See <u>Anderson v. Coughlin,</u> 757 F.2d 33, 35 (2d

Cir. 1985).  See also <u>Pierce,</u> 526 F.3d at 1212; <u>Spain v. Procunier,</u> 600 F.2d 189, 199 (9th Cir. 1979)

and, <u>Bailey v. Shillinger,</u> 828 F.2d 651, 653 (10th Cir. 1987).

3.     The only indoor "exercise" is a room with a basketball hoop and some sort of steel

structure that posed major safety issues as it was missing structural screws too numerous to count.  The

<u>Farmer</u> Court likened this standard to criminal recklessness, which makes persons liable when they

"consciously disregard a substantial risk of serious harm."  As was the case in <u>Farmer,</u> the Court likened

this standard to criminal reckless deliberate indifference.

4.     PCDC Defendants did not allow Ms. Ellis access to outdoor recreation (in fact she was

not allowed outside at all) thus Ms. Ellis was in the equivalent of solitary confinement/segregation for

approximately five (5) months.  See <u>Allen v. Sakai,</u> 48 F.3d 1083, 1087-88 (9th Cir. 1994), cert. denied

514 U.S. 1065 (1995) (holding that segregation for six weeks without access to outdoor recreation states

a constitutional claim); <u>Martino v. Carey,</u> 563 F. Supp. at 1001 ("expert witnesses testified that the

denial of all outdoor exercise endangered the physical and mental health of prisoners and led to physical

and mental deterioration.  I agree with this testimony.")

5.     Ms. Ellis was denied both indoor *and* outdoor recreation, and PCDC does not have any

functional and safe exercise equipment.  This total denial of recreation clearly violates Amendment

Eight (8th).  See <u>Pierce,</u> 526 F.3d at 1212.  "It is generally recognized that a total or near-total

deprivation of exercise or recreational opportunity, without penological justification, violates Eighth

Amendment guarantees."

### VIOLATIONS OF THE PRISON RAPE ELMINATION ACT

6.     Ms. Ellis filed numerous complaints as it relates to unconstitutional conditions of

confinement discussed in this brief.  In approximately July of 2017, Ms. Ellis, Ms. Guy, former

prisoners Ms. Ricket, and Ms. Jones were forced move to the Suicide Pod (they were not suicidal).

When Ms. Ellis asked why they were housed in the Suicide Pod, Mr. Cain, and Mr. McDonald stated

that in anticipation of the Solar Eclipse that occurred in approximately July 2017, PCDC speculated there would be an increase of criminal activity such that more housing was needed for potential criminals.  Mr. Cain and Mr. McDonald repeatedly *assured* Ms. Ellis that the live feed cameras in each cell were disabled/broken and no one would be able to see Ms. Ellis robe, disrobe, or use the commode in front of only male deputies (during this time frame there were no female guards).  Ms. Ellis did not believe them, so she made a non-damaging live feed camera lens cover out of commode paper and water and placed it over the live feed camera lens.  Within approximately two (2) minutes after the live feed camera lens was covered with non-damaging commode paper, the guard on duty demanded over the public announcement system, that Ms. Ellis was to remove the non-damaging commode paper from the lens as he could not see all activities in the cell and if she did not comply she would be placed in solitary confinement.  Mr. Cain and Mr. McDonald told Ms. Ellis a blatant bald faced lie such that all male deputies were able to continue to engage in voyeurism which is strictly prohibited in the federally mandated PREA rules.  Ms. Ellis and the other WWC prisoners were transferred out of the suicide pod on the following Tuesday and placed in a different pod as there was no influx of criminals during the Solar Eclipse.

7.      Ms. Ellis filed the urgent complaints regarding this invasion of privacy which allowed all male deputies who viewed the live feed cameras in the suicide pod to engage in voyeurism.  In retaliation of Ms. Ellis's complaints, Mr. Harris, Mr. Cain, Mr. McDonald and according to Mr. Cain, the county's attorney transferred her and the other prisoners to the "suicide pod" (she was not suicidal) where again she was forced to remove her clothing, expose her buttocks, genitals, and breasts on the live feed camera in front of only male deputies.  Additionally, she was forced to use the commode in her cell to perform bodily functions in front of only male deputies.  Voyeurism by a staff member(s) is an invasion of privacy and strictly prohibited by PREA, 28 C.F.R. Part §§ 115.6 and 115.15(d).  Ms. Ellis

wrote to WWC's Warden Catron and/or his designee's to report these violations of PREA and was met with criminal reckless deliberate indifference.

**8.** PCDC did not have any PREA contact information available (a violation of their contract with WDOC/WWC) in any of the cells or day rooms Ms. Ellis occupied while in custody. Even if there was contact information, their telephone system would not allow "800" numbers and if Ms. Ellis were to call a long distance number she would have been charged in excess of $0.75/minute a violation of ACA 4-4497-1. All telephone calls are recorded-no exceptions-and there was no way to ensure confidentially. PCDC will likely argue that Ms. Ellis could have called using an office phone in their "law library" but the fact of the matter there is an intercom in the "law library" which PDCD Mr. Harris, Mr. Cain, Mr. McDonald could and did use to listen in on all telephone conversations and meetings where Ms. Ellis was concerned.

9. Ms. Ellis states that all of PCDC's male officers failed to announce their gender upon entry to the female pod as required by PREA 28 C.F.R. § 115.15(d). This is a violation of the federally mandated PREA and the contract between WDOC/WWC.

## OTHER AMENDMENT FOUR AND EIGHT VIOLATIONS

The following alleged incidents took place at PCDC in Wheatland, WY. Ms. Ellis alleges that she was singled out and injured by Defendant's conduct in the following ways. Ms. Ellis will identify each violation separately and will identify which constitutional amendment has been violated.

10. Ms. Ellis states that during her incarceration at PCDC, three case workers employed at WDOC/WWC met with Ms. Ellis twice during the month of July 2017, and once during the month of August 2017. Ms. Ellis filed numerous violations of her constitutional rights including and especially no recreation and exercise, and no way to go outside while in PCDC custody pursuant to ACA 4-4270 but no action was taken by her supervising agency, WDOC/WWC. Some of the case workers toured the jail to verify Ms. Ellis's complaints. Former prisoners Angela Jones, Daniel Ricket, and current prisoner

Cindi Guy will testify in the affirmative as they were also in custody at PCDC at the same time as Ms. Ellis.

11.     Ms. Ellis states that Mrs. Zerbe, a WDOC/WWC caseworker, acknowledged her complaints regarding constitutional violations as well as incompetent medical care and Mrs. Zerbe assured her during one of those meetings that she would be allowed to participate in due process by way of being able to file grievances with WDOC/WWC (utilizing WDOC's grievance forms #320, #321, and #322). Mrs. Zerbe guaranteed the time frames relative to WDOC/WWC were the same as. This was not the case. When WDOC/WWC caseworkers left PCDC, Ms. Ellis requested the forms from Mr. Cain and Mr. McDonald. Those requests were denied.

12.     Ms. Ellis requested a copy of the contract between WDOC/WWC and PCDC pursuant to public records act Wyo. Stat. § 16-4-202. Mr. Harris, Mr. Cain, and Mr. McDonald denied the request.

13.     Ms. Ellis states that Mr. Cain became verbally abusive and said that PCDC was "my jail", and therefore she would live by "my rules". Mr. Cain further said Ms. Ellis has been "…nothing but a problem since day one." Mr. Cain told her if she refused to stop filing complaints, he would lock her down in a cell with only a Turkish bathroom (a hole in the ground) and where there was 24/7 video and audio surveillance. Protar v. Harman L57 F.3d 867  This is an Amendment Eight (8th) violation.

14.     Ms. Ellis states that she requested an audience with Capitan Russell to discuss the abuses of power visited on her by Mr. Cain. The request was met with criminal reckless deliberate indifference by Platte County Sheriff Harris, Mr. Russell (Captain at PCDC), and Mr. Cain. All of whom directed Mr. McDonald to respond. Protar v. Harman L57 F3d 867. This is an Amendment Eight (8th) violation.

15.     Ms. Ellis states that Mr. Harris, Mr. Cain, and Mr. McDonald unlawfully and in retaliation place her in the "suicide" pod (she was not suicidal), where there is 24/7 monitoring via video and audio surveillance equipment which enabled the male officers to engage in voyeurism. This conduct by PCDC's all male officer's was an invasion of Ms. Ellis's privacy for reasons unrelated to

official duties, such as peering at her using the commode in her cell to perform bodily functions. Ms. Ellis was forced to expose her buttocks, genitals, and breasts to change clothing for each day and each night. This was a blatant violation of PREA 28 C.F.R. Part § 115(d). Ms. Ellis states that this solitary confinement action was taken against her by Mr. Harris, Mr. Cain, and Mr. McDonald because she attempted to complained to Captain Russell regarding violations of PREA, and other Amendment Four (4th) and Eight (8th) visited on her by Mr. Cain, Mr. McDonald, and Mr. Anderson. This was also a violation of ACA 4-4281. Protar v. Harman L57 F.3d 867  Section 16 of Wyoming Revised Statues states: "No person arrested and confined in jail shall be treated with unnecessary rigor. The erection of safe and comfortable prisons, and inspection of prisons, and the humane treatment of prisoners shall be provided for." Niodemuo v. States 2017 WY 34  This is an Amendment Eight (8th) violation.

16.     Ms. Ellis should have been placed in the "least restrictive" environment and there is no justification for placing her in the "suicide" pod. The acts taken by PCDC were entirely retaliatory in nature because Ms. Ellis was filing grievances objecting to the unconstitutional conditions of confinement. This is an Amendment Eight (8th) violation.

17.     Ms. Ellis states that she was placed in solitary confinement as a result of complaining that PCDC's kitchen did not place two (2) hard boiled eggs on one of the trays when all other trays received the eggs. Niodemuo v. States 2017 and WY 34 Protar v. Harman L57 F.3d 867  This is an Amendment Eight (8th) violation.

18.     Ms. Ellis states that Mr. Anderson placed her solitary confinement, because she did not share information regarding another officer's assistance in correcting a PDCD commissary issue. Niodemuo v. States 2017 WY 34; Protar v. Harman L57 F.3d 867 This was an Amendment Eight (8th) violation.

19.     Ms. Ellis was in pain and needed Tylenol. Ms. Ellis asked PCDC Ms. Reynolds for Tylenol and Ms. Reynolds told her she was a liar and refused to give her the medication. Former

prisoner Daniel Ricket will testify to this fact.  Ms. Ellis was treated with criminal reckless deliberate indifference by PDCD.  Fernandez v. U.S. 941 F.2d 1488  This is an Amendment Eight (8th) violation.

20.    Ms. Ellis was over-medicated and received unknown medication with no explanation as to who prescribed it and what it was for.  Ms. Ellis was treated with criminal reckless deliberate indifference by Ms. Reynolds a nurse at PDCD and when Ms. Ellis inquired about the medication she was told to "mind her own business" and "take it".  Fernandez v. U.S. 941 F.2d 1488  This is an Amendment Eight (8th) violation.

21.    Ms. Ellis observed many unknown pills spilled on PCDC's "med cart" and when Ms. Ellis asked what the medication was and if it was for her, she was told to "mind her own business" by Ms. Reynolds a nurse at PCDC.  Fernandez v. U.S. 941 F.2d 1488  This is an Amendment Eight (8th) violation.

22.    Ms. Ellis was forced to purchase over the counter medication (OTC) at PCDC which was a violation of the contract between WDOC/WWC and PCDC-all OTC's were supposed to be covered under the contract.  In addition, the medication sold by Ms. Reynolds was expired.  This was criminal reckless deliberate indifference.  Fernandez v. U.S. 941 F.2d 1488  This is an Amendment Eight (8th) violation.

23.    Ms. Ellis requested feminine sanitary napkins, was given approximately 20 sanitary pads by Mr.Oneyear, during his day time shift.  Mr. Anderson assumed the night shift.  He commenced to search Ms. Ellis' cell, and removed all the sanitary pads refusing to give her any.  Penrod v. Zavaras 94F3 1399 Section 16 of Wyoming Revised Statues states: "No person arrested and confined in jail shall be treated with unnecessary rigor.  The erection of safe and comfortable prisons, and inspection of prisons, and the humane treatment of prisoners shall be provided for." This was Amendment Four (4th) Illegal Search and Seizure, and Eight (8th) violations.  Niodemuo v. States 2017 WY 34

24.    Ms. Ellis states that Ms. Reynolds a Nurse at PCDC, failed to provide adequate competent medical care because she did not follow-up with WDOC/WWC with regard to medical procedures and/or blood tests that were necessary for Ms. Ellis' good health. Ms. Ellis was concerned about the medical findings; Ms. Reynolds stated she did not have to follow-up with any medical procedure and/or blood test with WDOC/WWC. Ms. Ellis was treated with criminal reckless deliberate indifference. Fernandez v. U.S. 941 F.2d 1488 This was an Amendment Eight (8th) violation.

25.    Ms. Ellis states that there was a romantic, sexual relationship between two inmates, Angela Jones and Daniel Rickert, for a period of 71 days while in PCDC custody. Mr. Harris, Mr. Cain and Mr. McDonald knew of the relationship and did nothing to stop it. Sgt. Oneyear caught the lovers and turned in a complaint with WDOC/WWC. Ms. Ellis was not given an avenue to report sexual assaults by guards and sexual assaults by inmates a violation of PREA § 115.53(a-c). This is a violation of the federally mandated PREA 42 U.S.C. § 15601, et. seq.

26.    WDOC/WWC incurred medical expenses for Ms. Ellis while in PCDC custody, which should have been paid by WDOC/WWC. PDCD did not submit the bills to WDOC/WWC but instead sent them to her home address. Ms. Ellis did not know about the bills and was turned over to a collection agency for non-payment. Ms. Ellis' credit history is damaged. This was reported to WDOC/WWC who assured Ms. Ellis that the credit companies would be notified of the error and would correct her credit report with all reporting agencies. This was not done and Ms. Ellis's credit has been damaged. Niodemus v. States 2017 WY 34

27.    Ms. Ellis states that Platte County Sheriff Harris, Mr. Cain, and Mr. McDonald forced her to wear used and stained undergarments while in PCDC custody. She complained to WDOC/WWC's Mrs. Zerbe during the month of July 2017 about this violation. Mrs. Zerbe was criminally recklessly deliberately indifferent and ignored this complaint. This is an Amendment Eight (8th) violation.

28.     Ms. Ellis states that Platte County Sheriff Harris, Mr. Cain, and Mr. McDonald did not allow her to go out of doors during her entire stay at PCDC.  Under the Prison Accountability Act and the ACA Adult Local Detention Facility Standards ACA 4-4481, Ms. Ellis is supposed to be allowed to one (1) hour exercise outdoors per day.  This never happened.  This is an Amendment Eight (8th) violation.

29.     Ms. Ellis asserts there was an ant and beetle infestation at PCDC, both in the shower and in the beds/cells.  She reported this to Mr. Cain and Mr. McDonald.  This is in violation of ACA 4-4332. An exterminator sprayed only one time in five (5) months.  The exterminator should have sprayed at least once a month.  This did not happen.  Section 16 of Wyoming Revised Statues states: "No person arrested and confined in jail shall be treated with unnecessary rigor.  The erection of safe and comfortable prisons, and inspection of prisons, and the humane treatment of prisoners shall be provided for."  Niodemuo v. States 2017 WY 34  This is an Amendment Eight (8th) violation.

30.     Ms. Ellis wrote letters to WDOC/WWC's Warden Catron and/or his designee's, no less than three (3) times during the month of July 2017, no less than three (3) times, during the month of August 2017, and no less than three (3) times during the month of September 2017, all with no response. Warden Catron and/or his designee's treated the communications with criminal reckless deliberate indifference.  This is an Amendment Eight (8th) violation.

31.     Ms. Ellis states PCDC did not have hot or cold running water a violation of ACA 4-4138-1.  This is an Amendment Eight (8th) violation.

32.     Ms. Ellis states that she was experiencing severe and debilitating periods of depression as it relates to Bi-Polar Disorder by way of periods of extreme high(s) and extreme low(s) necessitating an adjustment of medication.  She started having night terrors and wanted medical attention to address these serious medical issues.  Mr. Cain, Mr. McDonald and PCDC's nurse Ms. Reynolds denied Ms.

Ellis' request(s) for medical care.    This is a denial of medical care, and is an Amendment Eight (8th) violation.

33.    Ms. Ellis states that Ms. Reynolds a nurse at PCDC did not make daily rounds or visits every day of the week in violation of the contract between PCDC and WDOC/WWC which was criminal reckless deliberate indifference.    When she was absent for any reason, non-medical persons were in charge of dispensing all medications and providing medical care, specifically Mr. McDonald and other deputies.    This was a Health Insurance Portability and Insurance Act (HIPPA) violation, a violation of the contract between PCDC, and WDOC/WWC, and an Amendment Eight (8th) violation.

34.    Ms. Ellis states that Mr. Cain abused, belittled, and harassed her by calling her "ignorant" over the Public Announcement system.    <u>Protar v. Harman</u> L57 F.3d 867  This is an Amendment Eight (8th) violation.

35.    Ms. Ellis states that Mr. Cain told her that he would not hear her grievances.    He instructed Mr. McDonald as to the same.    These were Amendment Fourteen (14th) and Eight (8th) violations.

36.    Ms. Ellis states that she was not allowed to sleep, a basic human necessity, because various deputies had no regard for the level of sound they made i.e. shouting, slamming door, etc.; they were deliberately loud.    She was awakened constantly by deputies at PCDC because they were yelling at other inmates from across the pod.    Ms. Ellis states that she was kept from sleeping until all hours of the night and early morning because PDCD allowed WDOC/WWC prisoners to stay up all night "partying" thereby depriving Ms. Ellis of sleep, a basic human need.    This is a violation of 4-4150.    <u>Section 16 of Wyoming Revised Statues states:</u>    "No person arrested and confined in jail shall be treated with unnecessary rigor.    The erection of safe and comfortable prisons, and inspection of prisons, and the humane treatment of prisoners shall be provided for."    <u>Niodemuo v. States</u> 2017 WY 34  This is an Amendment Eight (8th) violation.

2:18-cv-00198-ABJ   Document 23   Filed 06/13/19   Page 19 of 21

37.    Ms. Ellis states that deputies at PDCD played songs and/or music over the loud speaker at lockdown which was midnight, one o'clock, two o'clock and three o'clock in the morning, depriving her of sleep, a basic human need.  Niodemuo v. States 2017 WY 34  This is an Amendment Eight (8th) violation.

38.    WDOC Mr. Carl Voigtsberger and Mr. Scott Abbott finally responded to Ms. Ellis's pleas for help.   Ms. Ellis states that WDOC/WWC had a new contract with the Niobrara County Detention Center (NCDC) signed effective on or about the middle of August 2017, but she was not transferred from PCDC to NCDC until late October 2017.   This is criminal reckless deliberate indifference by WDOC/WWC and is an Amendment Eight (8th) violation.

39.    Ms. Ellis asserts that PCDC by way of Mr. Cain violated their own rules by stating that they would only be changing bed sheets and blankets once per month which put her health and safety in jeopardy.   As a result PCDC not allowing the changing of sheets and blankets once a week, there was an infestation of bed bugs and Ms. Ellis's back was full of bug bites-a fact known to WDOC/WWC when she was stripped searched by WWC's Officer Peterson prior to transport to NCDC. This is an Amendment Eight (8th) violation.

## CONCLUSION AND REMEDY

WHEREFORE, Ms. Ellis states she had no access to help, and was denied help when she sought to exercise her right to due process, no sanitary napkins, forced to stay up all night, lived with an ant, beetle, and bed bug infestation, was forced to wear used under garments, was not allowed outside for one (1) hour each day, was placed in disciplinary segregation via the suicide pod (she was not suicidal) for no reason, had no hot and cold running water, was belittled, degraded, and harassed by Mr. Cain. Ms. Ellis did not have any opportunity for recreation and exercise. PCDC deliberately denied communication with WDOC/WWC her supervising agency.  WDOC/WWC by way of Warden Catron

and/or his designee's ignored documented pleas for help. As the supervising agency, WDOC/WWC did not monitor the contract between it and PCDC for compliance to Ms. Ellis's detriment.

Ms. Ellis seeks punitive and monetary damages in the amount of ten-thousand dollars ($10,000) for WDOC/WWC's criminal reckless deliberate indifference (especially for entering into a contract that was criminal recklessly deliberately indifferent by way of ignoring the fact there was no recreation and exercise and no contact or reporting information relative to PREA, and for failing to monitor PCDC for contractual compliance).

Ms. Ellis seeks punitive and monetary damages in the amount of ten-thousand dollars ($10,000) for PCDC's Amendments Four (4th), Eight (8th), and Fourteen (14th) violations listed in this brief and for placing her in the suicide pod (she was not suicidal) to satisfy Mr. Harris, Mr. Cain, and Mr. McDonald's lewd and lascivious proclivities and other such relief as the Court deems just and proper. As a prisoner, Ms. Ellis has a right to be treated with a minimum measure of civility in today's correctional world which includes her right to be protected from non-warranted invasions of privacy by way of being on full display while robing, disrobing, and using a commode on a real-time camera.

Ms. Ellis respectfully requests WDOC and PCDC repair her credit will all credit reporting agencies.

WHEREFORE, WDOC/WWC threw Ms. Ellis to the wolves at PCDC and PRAYS this Court orders the relief requested such that no other WDOC prisoner has to endure the criminal reckless deliberate indifference and abuses Ms. Ellis suffered while in WDOC/WWC/PCDC custody.

Humbly and Respectfully Submitted,
Dated this 10th day of June, 2019.

_____
SHERYL L. ELLIS, PLAINTIFF

# CERTIFICATE OF SERVICE

I, Sheryl L. Ellis, do hereby certify that I sent a true and correct copy, postage paid, of this PCDC 42 U.S.C. § 1983 to:

Dated this 10th day of June, 2019

Sheryl L. Ellis, Plaintiff

| | |
|---|---|
| Office of the Clerk of Court<br>United States District Court of Wyoming<br>2120 Capitol Avenue, Room 2131<br>Cheyenne, WY 82001 | Wyoming Department of Corrections<br>Attention: Robert O. Lampert, Director<br>1934 Wyott Dr., Suite 100<br>Cheyenne, WY 82002 |
| Attorney General<br>Attention: Dan White, Asst. A.G.<br>Kendrick Building<br>2320 Capitol Avenue<br>Cheyenne, WY 82001 | Wyoming Women's Center<br>Attention: Mr. Catron<br>1000 West Griffith Blvd.<br>P.O. Box 300<br>Lusk, WY 82225 |
| Platte County Sheriff Harris<br>850 Maple<br>Wheatland, WY 82201 | Platte County Detention Center<br>Attention: Mr. Cain<br>850 Maple<br>Wheatland, WY 82201 |
| Platte County Detention Center<br>Attention: Mr. McDonald<br>850 Maple<br>Wheatland, WY 82201 | Platte County Detention Center<br>Attention: Mr. Anderson<br>850 Maple<br>Wheatland, WY 82201 |
| Platte County Detention Center<br>Attention: Ms. Reynolds, Nurse<br>850 Maple<br>Wheatland, WY 82201 | Platte County District Attorney<br>P.O. Box 877<br>Wheatland, WY 82201 |