## THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF WYOMING

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

2019 JUN 17  PM 1 25

STEPHAN HARRIS, CLERK
CHEYENNE

SHERYL L. ELLIS, Pro Se )
JULIE JACOBSEN, Pro Se )
)
      Plaintiffs, )
vs. )
)
MR. LAMPERT, WYOMING DEPARTMENT )
OF CORRECTION (WDOC) ) Civil No. 18-CV-189-ABJ
MR. CATRON, WYOMING WOMEN'S CENTER (WWC) ) 198
MS. MOLDEN, WWC )
MS. WHEELER, WWC )
MS. SKIBICKI, WWC )
MS. EITEL, WWC )
MR. HARPER, WWC )
MRS. BIRDIE-HARPER, WWC )
MR. QUILLEN, FORMER WWC EMPLOYEE )
MR. WILSON, WYOMING MEDIUM (MEN'S) )
CORRECTIONAL INSTITUTION (WMCI) )
MR. KIRKIKIS, WMCI (FORMER WWC CAPTAIN) )
MR. TYSON, WMCI )
MS. McCLAIN, WMCI )
MS. GIFFORD, WMCI )
MR. WAGNER, WMCI )
All defendant(s) in their individual and official capacities, )
)
      Defendants. )

---

### 42 USC § 1983 PETITION

---

COMES NOW, Sheryl L. Ellis, Pro Se, and Julie Jacobsen, Pro Se, and petitions this Court to allow them to proceed under 42 USC § 1983 action. Plaintiffs humbly and respectfully request pleadings by Pro Se Plaintiff(s) be construed liberally Haines v. Kerner U.S. 519-20

Names and addresses of all parties.

Mr. Lampert, Director, Wyoming Department of Corrections (WDOC), 1934 Wyott Dr., Suite 100, Cheyenne, WY 82002

Mr. Warden Catron, WWC, 1000 West Griffith Blvd., Lusk, WY  82225

Ms. Associate Warden (AW) Molden, WWC, 1000 West Griffith Blvd., Lusk, WY  82225

Ms. Wheeler, Security Officer, WWC, 1000 West Griffith Blvd., Lusk, WY  82225

Ms. Skibicki, Grievance Secretary, WWC, 1000 West Griffith Blvd., Lusk, WY  82225

Ms. Eitel, Security Officer, WWC, 1000 West Griffith Blvd., Lusk, WY  82225

Mr. Harper, Security Officer, WWC, 1000 West Griffith Blvd., Lusk, WY  82225

Mrs. Birdie-Harper, Security Office, WWC, 1000 West Griffith Blvd., Lusk, WY  82225

Mr. Quillen, Former WWC Employee, WWC, 1000 West Griffith Blvd., Lusk, WY  82225

Mr. Wilson, Warden, Wyoming Medium (Men's) Correctional Institution (WMCI), 7076 Road
55F, Torrington, WY  82240

Mr. Kirkikis, WMCI (Former WWC Captain), 7076 Road 55F, Torrington, WY  82240

Mr. Tyson, WMCI, Security Officer, 7076 Road 55F, Torrington, WY  82240

Ms. McClain, WMCI, Security Officer, 7076 Road 55F, Torrington, WY  82240

Ms. Gifford, WMCI, Security Officer, 7076 Road 55F, Torrington, WY  82240

Mr. Wagner, WMCI, Security Officer, 7076 Road 55F, Torrington, WY  82240

Ms. Sheryl L. Ellis, #2871, WWC, 1000 West Griffith Blvd., Lusk, WY  82225

Ms. Julie Jacobsen, #2183, WWC, 1000 West Griffith Blvd., Lusk, WY  82225

Plaintiffs Ms. Jacobsen has never filed a 42 USC § 1983 action before.  Ms. Ellis filed a 42 USC
§ 1983 action against the Platte County Detention Center on June 10, 2019.

## PRELIMINARY STATEMENT

WDOC/WWC, is so unconstitutionally overcrowded that it now has to transfer female prisoners
to other county facilities in the State of Wyoming, the State of Nebraska, and WMCI in Torrington, WY
in order to accommodate the overflow.  There are ten (6) main concerns that have led to the filing of this
42 U.S.C. § 1983 Petition.  One (1) is unconstitutional overcrowding at WDOC/WWC in Lusk, WY,

two (2) is unconstitutional HVAC at WWC, three (3) unconstitutional sanitation as a result of the severely leaky roof at WWC, four (4) Violations of Title VII of the federal Civil Rights Act of 1964 at WDOC/WMCI, six (5) Violations of the Prison Rape Elimination Act (PREA), at WDOC/WMCI, six (6) Retaliation and interference regarding access to this Court, and seizure of legal files at WDOC/WMCI/ WWC for filing a complaint with this Court.

Defendants have long knows about the deficiencies and violations but have refused to address and correct them. Ms. Ellis and Ms. Jacobsen seek punitive and monetary damages consistent with evidence presented and other such relief as the Court deems just and proper.

## JURISDICTION AND VENUE

1. Plaintiffs state the complaint(s) were originally filed as Preliminary and Retaliation Injunction(s). The Honorable Judge Alan B. Johnson, U.S. District Court, Cheyenne, WY rightfully construed the action under 42 U.S.C. § 1983. Plaintiffs would like to express deep gratitude for recognizing the seriousness of the complaint, and for allowing Plaintiffs to proceed under 42 U.S.C. § 1983. Accordingly, this Court has jurisdiction pursuant to 28 U.S.C. §§ 1343(3) and (4). Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b).

## PARTIES

2. Plaintiffs Ms. Ellis and Ms. Jacobsen are currently serving sentences imposed for violations of law in the State of Wyoming. Ms. Ellis has been assigned the prisoner identification number of 2871, and Ms. Jacobsen has been assigned the prisoner identification number of 2183. Plaintiffs were placed under the care, custody, and control of the Wyoming Department of Corrections (WDOC). Since the inception of their sentences, Plaintiffs have resided at the Wyoming Women's Center (WWC), Lusk, WY at all times with the exception of involuntary transfer(s) to the Wyoming Medium (Men's) Correctional Institution (WMCI) and relative to Ms. Ellis, involuntary transfer to the other counties in the State of Wyoming due to unconstitutional overcrowding.

3.      Defendant Mr. Lampert is a citizen and resident of Wyoming.  At all times material to Plaintiff's claim for damages, Mr. Lampert has been the Director of WDOC.  As such, he is the agency official ultimately responsible under state law for the operation and administration of WDOC, ensuring Plaintiffs right to Constitutional Amendment's First (1st) Freedom of Speech, Eighth (8th) Cruel & Unusual Punishment, & Fourteenth (14th) Due Process, as well as among other things, ensuring, competent medical, psychological, and dental care including statuary compliance with the laws of the State of Wyoming, the Wyoming Department of Correction Policies and Procedures (WDOC P&P), the Adult Correction Association (ACA), National Commission on Correctional Health Care, (NCCHC), Title VII of the federal Civil Rights Act of 1964, and the Prison Rape Elimination Act (PREA).  Mr. Lampert has a constitutional duty to bar all retaliation against Plaintiffs for contact with this Court.

4.      Defendant Mr. Catron is a citizen and resident of Wyoming.  At all times material to Plaintiff's claim for damages, Mr. Catron was the Warden at WWC.  In this capacity, he has a duty and obligation under state law to ensure, among other things, to protect Plaintiffs right to Constitutional Amendment's One (1st) Freedom of Speech, Eight (8th) Cruel & Unusual Punishment, & Fourteen (14th) Due Process, as well as among other things, ensuring competent medical, psychological, and dental care including statuary compliance with the laws of the State of Wyoming, WDOC P&P, ACA, NCCHC, Title VII of the federal Civil Rights Act of 1964, and PREA.  Mr. Catron has a constitutional duty to bar all retaliation against Plaintiffs for contact with this Court.

5.      Defendant Ms. Molden is a citizen and resident of Wyoming.  At all times material to Plaintiff's claim for damages, Ms. Molden was the Associate Warden (AW) at WWC.  In this capacity, Ms. Molden has a duty and obligation under state law to ensure, among other things, to protect Plaintiffs right to Constitutional Amendment's One (1st) Freedom of Speech, Eight (8th) Cruel & Unusual Punishment, & Fourteen (14th) Due Process, as well as among other things, ensuring competent medical, psychological, and dental care including statuary compliance with the laws of the State of Wyoming,

WDOC P&P, the ACA, NCCHC, Title VII of the federal Civil Rights Act of 1964, and PREA. Ms. Molden has a constitutional duty to bar all retaliation against Plaintiffs for contact with this Court.

6.    Defendants Ms. Wheeler, Ms. Skibicki, Ms. Eitel, Mr. Harper, Mrs. Birdie-Harper, and Mr. Quillen, are citizens and residents of the State of Wyoming. At all times material to Plaintiff's claim for damages, Defendants occupied various positions of power and authority at WWC. In this capacity, they have a duty and obligation under state law to ensure, among other things, to protect Plaintiffs right to Constitutional Amendment's One (1st) Freedom of Speech, Eight (8th) Cruel & Unusual Punishment, & Fourteen (14th) Due Process, as well as among other things, ensuring competent medical, psychological, and dental care including statuary compliance with the laws of the State of Wyoming, WDOC P&P, ACA, NCCHC, Title VII of the federal Civil Rights Act of 1964, and PREA. Defendants have a constitutional duty to bar all retaliation against Plaintiffs for contact with this Court.

7.    Defendant Mr. Wilson is a citizen and resident of Wyoming. At all times material to Plaintiff's claim for damages, Mr. Wilson was the Warden at WMCI. In this capacity, he has a duty and obligation under state law to ensure, among other things, to protect Plaintiffs right to Constitutional Amendment's One (1st) Freedom of Speech, Eight (8th) Cruel & Unusual Punishment, & Fourteen (14th) Due Process, as well as among other things, ensuring competent medical, psychological, and dental care including statuary compliance with the laws of the State of Wyoming, WDOC P&P, ACA, NCCHC, Title VII of the federal Civil Rights Act of 1964, and PREA. Mr. Wilson has a constitutional duty to bar all retaliation against Plaintiffs for contact with this Court and retaliation for reporting PREA violations.

8.    Defendant Mr. Kirkikis is a citizen and resident of the State of Wyoming. At all times material to Plaintiff's claim for damages, Mr. Kirkikis was a Captain at WWC. In this capacity, he had a duty and obligation under state law to ensure, among other things, to protect Plaintiffs right to Constitutional Amendment's One (1st) Freedom of Speech, Eight (8th) Cruel & Unusual Punishment, & Fourteen (14th) Due Process, as well as among other things, ensuring competent medical, psychological,

and dental care including statuary compliance with the laws of the State of Wyoming, WDOC P&P, ACA, NCCHC, Title VII of the federal Civil Rights Act of 1964, and PREA. Mr. Kirkikis has a constitutional duty to bar all retaliation against Plaintiffs for contact with this Court.

9.      Defendants Mr. Tyson, Ms. McClain, Ms. Gifford, and Mr. Wagner are citizens and residents of the State of Wyoming. At all times material to Plaintiff's claim for damages, Defendants occupied positions of power and authority at WMCI. In this capacity, they have a duty and obligation under state law to ensure, among other things, to protect Plaintiffs right to Constitutional Amendment's One (1st) Freedom of Speech, Eight (8th) Cruel & Unusual Punishment, & Fourteen (14th) Due Process, as well as among other things, ensuring competent medical, psychological, and dental care including statuary compliance with the laws of the State of Wyoming, WDOC P&P, ACA, NCCHC, Title VII of the federal Civil Rights Act of 1964, and PREA. Defendants have a constitutional duty to bar all retaliation against Plaintiffs for contact with this Court.

10.     All acts and omissions of the defendants set forth below were done under color of state law and were performed during the scope of the employment. All defendants are sued in their individual and official capacities.

## FACTUAL ALLEGATIONS

The Wyoming Department of Corrections, Wyoming Women's Center (WDOC/WWC), is so unconstitutionally overcrowded that it now has to transfer female prisoners to other county facilities in the State of Wyoming as well as to the Wyoming Men's Correction Institution (WMCI) in Torrington, WY.

On January 31, 2018 WWC's Associate Warden Molden wrote a memorandum stating the prisoner's at WWC would be transferred to other facilities due to overcrowding:

> "Be advised that some of you women will be going to the county jail for a minimum of six months due to lack of housing here. WWC is currently full so we will be housing inmates at various county jails throughout the state. This is just a courtesy to give you a heads up that it

is possible.  Do not come and ask if you are going.  We will not give you
that information.  Do not ask where you will be going, you will not get
that information.  Do not ask when you will be going, you will not get that
information.  Inmates will rotate after their six months is up and you will
receive a stipend every month that you are in the county.  Again I am
doing this as a heads up and no other information will be given.  When
you are told to pack up is when you will know you are leaving.  There is
no way around this as the facility is unable to hold the number of women
continuing to come to prison."

From approximately January 2017 through June 2017 prisoner, Ms. Ellis was incarcerated at
WDOC/WWC, in Lusk, WY.

From approximately June 2017 through October 2017 Ms. Ellis was incarcerated at PCDC in
Wheatland, WY.

From approximately October 2017 through December 2017 Ms. Ellis was incarcerated at the
Niobrara County Detention Center (NDCD) in Lusk, WY.

From approximately December 2017 through approximately August 2018, Ms. Ellis was
incarcerated at WDOC/WWC in Lusk, WY.

From approximately August 2018, through October 2018, she was incarcerated at the Wyoming
Men's Correctional Institution (WMCI) in Torrington, WY.

And from October 2018 through the date of this filing Mr. Ellis was involuntarily transferred to
the Wyoming Women's Center in Lusk, WY.

The fact is WWC is dangerously over-crowded, have known internal conflicts with regard to
WWC's employees, and there is much in the way of inconsistency in conduct amongst WWC staff.
Warden Catron, AW Molden, have made employment conditions so unbearable that WWC have
experienced a mass exodus of both security and administrative staff such that WWC is operating on a
dangerously low security officer to prisoner ratio.  Additionally, they simply do not have housing to
accommodate the number of female prisoners sent to WWC.  As a result, WDOC/WWC "borrows"
security personnel from other penal institutions in the State of Wyoming to make up for this serious

over-crowding crisis and security issue. The fact is there is no other place in the State of Wyoming that houses only female prisoners. Couple that with WWC's staff leaving their employment at an astonishing rate and there exists an atmosphere of unconstitutional conditions including but not limited to, potential prisoner violence, dangerous and unsafe conditions, violations of Constitutional Amendment's One (1st) Freedom of Speech, Eight (8th) Cruel & Unusual Punishment, & Fourteen (14th) Due Process, as well as among other things, violations of Title VII of the federal Civil Rights Act of 1964, and PREA. Defendants have a constitutional duty to bar all retaliation against Plaintiffs for contact with this Court. Defendants have failed in all aspects relative to this complaint. These trespasses cannot go unnoticed any longer.

WDOC/WWC is well aware of the shift in WWC's employee to prisoner ratio putting all prisoners at risk, as well as substandard health and safety conditions and all violations outlined in this brief. WDOC have exhibited "deliberate indifference" by turning a blind eye to all of the circumstances surrounding the complaints contained in this filing as well as the mass exodus of state employees leaving their employment at WWC.

There are four groups of persons intimately familiar with the conditions outlined in this brief. Plaintiffs who were forced live at WMCI/WWC; the staff that work there, the administrators operating the jails/institutions, and the agency WDOC who are ultimately responsible for WMCI/WWC operations.

The conditions outlined in this brief are so dangerous, hazardous, and discriminatory to Plaintiffs that their continued existence must not be tolerated any longer. One (1) is unconstitutional overcrowding at WDOC/WWC in Lusk, WY, two (2) is unconstitutional HVAC at WWC, three (3) unconstitutional sanitation as a result of the severely leaky roof at WWC, four (4) Violations of Title VII of the federal Civil Rights Act of 1964 at WDOC/WMCI, six (5) Violations of the Prison Rape

Elimination Act (PREA), at WDOC/WMCI, six (6) Retaliation and interference regarding access to this Court, and seizure of legal files at WDOC/WMCI/ WWC for filing a complaint with this Court.

Plaintiffs have attempted to addresses concerns utilizing WDOC's grievance system in order to resolve these exigent issues to no avail.  WDOC/WMCI/WWC have elected to placate Plaintiffs with minimal remedies in response to their grievances, have ignored their complaints altogether, or had WDOC/WWC's grievance secretary Ms. Skibicki summarily dismiss valid complaints regarding unconstitutional conditions of confinement thereby denying Plaintiffs right to Due Process under the Fourteenth Amendment which in and of itself is a violation of the Eighth Amendment under the Constitution of the United States.  All Defendants retaliated severely against Plaintiffs as a result of filing grievances and contact with this Court.  As it relates to WMCI, Plaintiffs who were housed there were not offered the same rehabilitative programs as the male prisoners.  Further, Plaintiffs were blocked from attending religious services equal to the services offered to the men.

As it relates to PREA at WDOC/WMCI, Ms. Ellis states that Captain Tyson condoned a "write-up" issued by Ms. McClain in retaliation for reporting PREA violation(s) which is strictly prohibited in PREA § 115.67.  Warden Wilson concurred with Captain Tyson's findings and the issuance of a twenty dollar ($20) fee for reporting valid PREA violation(s).  This finding is the reason that prisoner Ellis, will *never* file a PREA complaint again regardless of the circumstances.  This is the very essence of the "chilling effect".

WDOC/WWC attempted to place the burden back on Plaintiffs to determine how WDOC/WWC can become constitutionally compliant.  WDOC's responses are the equivalent of placing a band-aid on a long amputated limb.  Further, WDOC/WWC has retaliated against Ms. Ellis by issuing unconstitutional, base-less "write-up's" which resulted in loss of "good-time", changing custody levels from minimum to medium, placed in solitary confinement for exercising constitutional rights, and

placed in the suicide pod (Ms. Ellis was not suicidal). All retaliatory actions taken against Plaintiffs are listed in number six (6) of this brief.

Plaintiffs have attempted to exhaust all administrative remedies available to prior to filing this 42 U.S.C. § 1983 action. Accordingly, Plaintiffs have no reasonable alternative but to seek damages consistent with evidence shown and other such relief as this Court deems just and proper.

## THE EIGHTH AMENDMENT PROTECTION

The U.S. Constitution, Amendment VIII strictly prohibits the intentional infliction of "cruel and unusual punishments." This Amendment is of prime importance because it is the only thing that gives Plaintiffs at WDOC/WMCI/WWC a safety net of protection. "[I]t is now settled that the 'the treatment of a prisoner receives in prison and the conditions under which [s]he is confined are subject to scrutiny under the Eighth Amendment.'" Farmer v. Brennan, 511 U.S. 825, 832 (1994), quoting Helling v. McKinney, 509 U.S. 25, 31 (1993). Further, when prison/jail officials disregard the Eighth Amendment, "judicial intervention is *indispensable.*" Rhodes v. Chapman, 452 U.S. 337, 354 (1981). The Eighth Amendment forces prison/jail officials to "provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care and must 'take reasonable measures to guarantee the safety of the inmates.'" Farmer, 511 U.S. at 832, quoting Hudson v. Palmer, 468 U.S. 517, 526-27 (1984).

The Eighth Amendment has two test components, one objective and the other subjective. First, Plaintiffs are required to show they are "incarcerated under conditions posing a substantial risk of serious harm." Farmer, at 834. Second, Plaintiffs must show that WDOC/WMCI/WWC officials had a sufficiently culpable state of mind.

## 1.    The objective component.

Under this component Plaintiffs are alleging violations of the Eighth Amendment and are required to show, based on objective facts, that a condition of confinement creates "a substantial risk of

serious harm." Farmer, at 834.  Pursuant to this objective component, Plaintiffs are not required to show that harm has already occurred; only that it is substantially likely to occur.  Unsafe and/or unhealthy conditions that "pose an unreasonable risk of serious damage to [Plaintiffs at WDOC/WMCI/WWC] future health" satisfy the objective prong.  Helling v. McKinney, U.S. 25, 33 (1993).

Moreover, Plaintiffs are not required to wait until injury actually occurs before filing suit.  A "remedy for unsafe conditions need not await a tragic event," prison/jail administrators are simply not free to "ignore a condition of confinement that is sure or very likely to cause serious injury and needless suffering" merely because no harm has yet occurred.  Helling, 509 U.S. at 33; according Farmer, U.S. at 845.  Plaintiffs have incurred serious, irreparable injury, and harm.

Courts are permitted to consider prison/jail conditions in their entirety when determining whether any one condition constitutes violations under Amendment VIII.  Conditions that have "a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise" violate the Eighth Amendment when viewed in combination.  Wilson v. Seiter, 501 U.S. 294, 304 (1991).  Additionally, Plaintiffs request this Court consider the length of time that Plaintiffs have been subject to unsafe and/or unhealthy conditions at WDOC/WWC and human right(s) violations at WMCI.  See Hutto v. Finney, 437 U.S. 678, 686-87 (1978) (noting that unconstitutional confinement conditions may be tolerable "for a few days and intolerably cruel for weeks or months.")

## 2.    The subjective component.

In addition to proving an objective risk of serious harm, Farmer also requires Amendment VIII Plaintiffs prove that the defendant officials(s) had a culpable state of mind known as "deliberate indifference."  Deliberate indifference is referenced as a standard middle ground that lie "somewhere between the poles of negligence at one end and purpose or knowledge at the other."  Farmer, at 836. The Farmer Court likened this standard to criminal recklessness, which make prison/jail administrators liable when they "consciously disregard a substantial risk of serious harm."  Farmer, 837-38.  Proving

deliberate indifference is an issue of fact that is demonstrated in the usual ways "including inference from circumstantial evidence and a fact-finder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." Farmer, 842 (emphasis added). Such constructive knowledge can be demonstrated by showing that a dangerous or unhealthy condition(s) "was 'longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk.'"

It stands to reason that once a prison/jail administrator is "exposed to information concerning the risk," he or she may not turn a blind eye to it. On the contrary, either the risk must be abated or if the administrator is uncertain as to its depth or degree, an investigation must ensue. While Plaintiffs grievances have been somewhat overbroad and vague, WDOC/WMCI/WWC responses demonstrate that dangerous conditions, violations of Title VII of the federal Civil Rights Act of 1964, and PREA, retaliation, and likely more violations, have been known to exist throughout WMCI/WWC and those conditions should have been abated on WDOC/WMCI/WWC's own motion long ago. The fact is, unconstitutional conditions at WDOC/WMCI/WWC have existed for ten (10) years, and possibly longer; defendant-officials have known of the unconstitutional conditions of confinement, violations of Title VII of the federal Civil Rights Act of 1965, and PREA violations, and have only addressed Plaintiffs complaints, by providing the bare minimum in terms of relief or answer. An administrator "would not escape liability if the evidence showed that he merely refused to verify underlying facts that he strongly suspected to be true, or declined to confirm inferences that he strongly suspected to exist." Id., at 842.

As a matter of discussion relative to an Amendment VIII subjective component test, Plaintiffs only need show that the *risk* of injury is obvious. Plaintiffs need not show that the defendant(s) wanted Plaintiffs to be injured by the unconstitutional condition(s). "[A] prison official [may not] escape

liability for deliberate indifference by showing that, while they were aware of an obvious, substantial risk to inmate safety, he did not know that the complainant was especially likely to be" harmed.  Farmer, at 843.

Plaintiffs state they are not asking this Court to adopt a "totality of conditions" approach where individual conditions of confinement are *not* unconstitutional but that their combined effect is perceived as violating the Eighth Amendment.   This approach was condemned in Wright v. Rushen, 642 F.2d 1129, 1132-33 (9th Cir. 1981).   For the purposes of this brief, Plaintiffs demonstrate each of the conditions addressed in this filing-relative to WDOC/WMCI/WWC, One (1) is unconstitutional overcrowding at WDOC/WWC in Lusk, WY, two (2) is unconstitutional HVAC at WWC, three (3) unconstitutional sanitation as a result of the severely leaky roof at WWC, four (4)  Violations of Title VII of the federal Civil Rights Act of 1964 at WDOC/WMCI, six (5) Violations of the Prison Rape Elimination Act (PREA), at WDOC/WMCI, six (6) Retaliation and interference regarding access to this Court, and seizure of legal files at WDOC/WMCI/ WWC for filing a complaint with this Court independently violate the Constitution, Title VII of the federal Civil Rights Act of 1964, and PREA.  But as the Ninth Circuit explained in Wright v. Rushen, in a prison/jail "each condition of confinement does not exist in isolation," and it is fitting to consider them in totality "especially when the ill effects of particular conditions are exacerbated by other related conditions." Wright, 642 F.2d at 1133.

It is important to state that in this instance, as more fully explained below, the WDOC/WWC's inadequate HVAC system and the severe leaks in the roof have exacerbated the prison's sanitation by making it virtually impossible to prevent the growth of mold due to the resulting humid conditions (i.e. the buckets that have to be placed under vast areas where the roof leaks at WDOC/WWC).  As part of the issue at stake here, it must be stated that there is limited air flow at WDOC/WWC, if it exists at all, and those conditions have also increased the likelihood of other airborne problems.    In short, WDOC/WWC's leaky roof, and lack of proper ventilation makes it virtually impossible to prevent the

growth of mold due to the resulting humid conditions and limited or virtually non-existent air flow. This Court must take judicial notice that the fact that WDOC/WWC's roof is in such disrepair that ceiling tiles have been removed to allow the excessive flow of water and buckets must be placed throughout WWC in order to capture all of the moisture that is a direct result of this unconstitutionally punitive condition; a condition that has existed for ten (10) and possibly longer.

As it relates to violations of Title VII of the federal Civil Rights Act of 1964, gender based discrimination; Plaintiffs state there is one (1) institution that houses women prisoners, and four (4) that houses men. In addition, Plaintiffs are not offered the same rehabilitative programs as the men (their list is extensive while the women have one rehabilitative program, the fishery and that may be closing, plus the Gateway Foundations, Inc. drug/alcohol rehabilitation program). The men have the Mustang horse program, Dog program, Welding program, Leather working program, Fire Prevention, HVAC certification, Electrical certification, Plumbing certification as well as access to courses offered by the University of Wyoming to name a few. WWC offers programs in the fishery (which may well be abolished as the fishery is suffering severe loss of its commodity) and Waste Water Management (which is now only offered under independent study.)

While housed at WMCI, Plaintiffs were blocked from attending religious services equal to the men. In fact at one point, during Ms. Ellis's incarceration at WMCI, all religious services were completely discontinued (a catholic priest named Father Duncan was told he could not conduct services at the women's segregated unit at WMCI and he will testify as such) and Ms. Ellis had to file grievances for reinstatement of the religious services. It should be noted that Ms. Ellis requested to participate in the Native Sweat Lodge and Smudging religious rites and WMCI members of security and their then grievance processor, Mr. Wagner told Ms. Ellis the Tribal Elders barred women from participating in the Sweat Lodge and Smudging. A tribal elder named "Grandpa Willy" facilitates the Sweat Lodges and Smudgings at both WWC and WMCI, and he will state for the record that he has *never* barred women

from attending the Sweat Lodge or Smudging's.  In fact, WWC has its own Sweat Lodge and Smudging's rites and facilities; when Ms. Ellis requested the response to her grievance be placed in writing, WMCI's Mr. Wagner refused.

As it relates to the federal mandated PREA violations, Ms. Ellis states that she made complaints regarding possible PREA violations and the retaliation suffered as a result of making those complaints. Not only were her complaints summarily dismissed, she was retaliated against by receiving a "write-up" and as a consequence, assessed a twenty dollar ($20) fine.

## UNCONSTITUTIONAL CONDITION #1:  OVERCROWDING

1.      In Rhodes v. Chapman, 452 U.S. 337 (1981), the Supreme Court held that putting more prisoners in a cell (in this case WDOC/WWC) than it was designed to hold is not necessarily unconstitutional *per se*.  However, such overcrowding *becomes* unconstitutional when it (a) results in an increase of violence or the threat of violence, (b) results in preventing Plaintiffs from receiving necessary services such as adequate clothing, bedding, and recreation, or (c) exacerbates already unconstitutionally punitive conditions of confinements most notability the defective and deficient HVAC system as well as the severely leaky roof which has led to serious sanitation issues.  See Toussaint v. Yockey, 722 F.2d 1490, 1492 (9th Cir. 1984); Hoptowit v. Ray, 682 F.2d 1237, 1249 (9th Cir. 1982); Balla v. Board of Corrections, 656 F. Supp. 1108.

2.      WWC's Warden Catron, AW Molden, have made employment conditions so unbearable that vetted, qualified, and well respected WWC security personnel and members of the administrative staff have left state jobs (which are hard to come by in rural Wyoming) at an astonishing rate.  The fact is WWC has to "borrow" security personnel from other penal institutions in the State of Wyoming to address the dangerously low security to prisoner ratios.  WDOC has exhibited deliberate indifference to this serious problem within its own agency.  The increase in the threat of violence is exactly what the Supreme Court addressed in Rhodes and is part of the basis relative to this request for relief under 42

U.S.C. § 1983. Couple that with the fact that WDOC/WWC is overcrowded and this becomes a potentially volatile situation which puts Plaintiffs at WWC at risk relative to increasing potential for violence to erupt.

3.        The prison population at WDOC/WWC is above what is reasonably acceptable such that WDOC/WWC has adopted a permanent solution in sending female prisoners to various counties within the boundaries of the State of Wyoming and in the State of Nebraska. Plaintiffs have been involuntarily transferred to WMCI to accommodate the overcrowding issue at WWC where Title VII of the federal Civil Rights Act of 1964, and federally mandated PREA were violated. Ms. Ellis was involuntarily transferred to PCDC to handle the overcrowding at WDOC/WWC and during the approximately five (5) months that she housed there, she was exposed to the most deplorable unconstitutionally punitive conditions of confinement. While in PCDC custody, it is important to note that Ms. Ellis attempted to exhaust all administrative remedies in order to addresses these serious unconstitutional violations but her grievances were met with deliberate indifference at WDOC/WWC[1].

4.        WDOC/WWC is deliberately indifferent and will not address grievances with regard to housing transfers and/or over-crowding issue(s).

## UNCONSTITUTIONAL CONDITION #2: HVAC SYSTEM AT WWC

1.        WDOC/WWC's HVAC system has been severely deficient period for ten (10) years and perhaps longer. The entire HVAC system failed during the coldest months of the 2017/2018 calendar year. In response to this crisis, WDOC/WWC forced Plaintiffs to sleep on the floor in their day rooms in an attempt to "huddle" together in order to stay warm and/or were forced to keep their cell doors open in an attempt to receive heat; a security violation in and of itself. Ms. Ellis is a life-long rancher in the State of Wyoming and this scenario is much the same as when [her] livestock huddle together during severe inclement weather in order to stay warm. It goes beyond the scope of Plaintiffs imagination that

---

[1] Ms. Ellis filed a 42 U.S.C. § 1983 action pending against PCDC on June 10, 2019

the situation with regard to the HVAC system has deteriorated so severely as to substantiate this emergency action in response to this unconstitutional condition of confinement.

On May 26, 2018, Ms. Ellis filed her grievance regarding this issue and requested a backup emergency plan to include the use of portable heaters and portable air conditioners. She also wanted to know when the system would be one hundred percent (100%) functional. On June 7, 2018 former Captain Kirkikis told her that WDOC/WWC was in the project analysis phase and that the contract had not yet been awarded. Captain Kirkikis stated that "upon award of contract, we estimate at this time a minimum of 180 days [before implementation]."

On June 12, 2018, Warden Catron stated that short term solutions were underway and would be functional "very soon", and went on to say that "a new system is now going through engineering and contractual development. This constitutes our long range plans." but denied her request for portable heaters and portable air conditioners as a back-up emergency contingency when the system fails again. Warden Catron did not provide any time line as to when the HVAC system would be fully functional.

On July 2, 2018, WDOC's Director Robert Lampert responded the issue by stating that "Warden Catron's response detailed a two-fold plan that is consistent with protocol and policy that provides a long term and short term solution." Mr. Lampert goes on to say that he will do nothing further to address this life threatening, unconstitutional condition of confinement and considered the "grievance to be resolved." All due respect the grievance is not resolved. Ms. Ellis's request for emergency back-up portable heaters and portable air conditions is not unreasonable considering there is no other emergency back-up plan in existence including emergency generators to keep the HVAC system operable during power outages. While Ms. Ellis is pleased to know that this issue will be addressed, it is unfortunately too little too late.

On or about May 2018, WDOC/WWC instituted a new policy which prohibits covering oneself up with a blanket during the day in order to stay warm and have refused to issue additional blankets

during the night to stay warm.  On June 5, 2018, Ms. Ellis filed a grievance stating that the HVAC system was faulty and not allowing her and other prisoners to cover up with a blanket when she [they] were cold was unconstitutionally punitive and violated a minimum measure of civility; an Eighth Amendment right violation.  WDOC/WWC's policy goes on to prohibit covering up with a blanket(s) "unless medical staff members specifically indicated that the inmate must rest under the sheets and blankets." It is Plaintiffs position that WDOC/WWC medical provider Corizon Foundation, Inc., is not qualified to determine when Plaintiffs are either too hot or too cold.  When Ms. Ellis's grievance reached WDOC Director Lampert it was his position that "the use of blankets to cover oneself during the day will not be allowed due to security concerns" and goes on to suggest "wear long johns and additional clothing to address your feeling cold."   In a follow-up letter issued on April 20, 2016, (Ms. Ellis assumes the date was a typo) WDOC Director Lampert states pertaining to using a blanket to cover up when she is cold, "WWC has a legitimate penological interest and will continue." All due respect, this response is disingenuous and Director Lampert knows it.  The fact is WDOC/WWC does not want Plaintiffs to be warm enough to sleep during the day.  WDOC/WWC has been, and continues to be, criminally recklessly deliberately indifferent to the severely deficient HVAC system and will not acknowledge harm that its failure has already caused.

2.      During this HVAC crisis, all hot water boilers failed and as a result Plaintiffs could not bath/shower, or wash dishes in hot soapy water.  Again due to the mass exodus of state employee's leaving their employment at WDOC/WWC, there were no maintenance workers available to fix this dire emergency situation and Lt. Coon was charged with addressing this unconstitutional condition of confinement assuming job duties of which he were not qualified.  Once again, it was necessary to "borrow" maintenance workers from other institutions in the State of Wyoming to address this life threatening issue.

3.      "Inadequate ventilation and air flow violates the Eighth Amendment if it undermines the health of inmates and the sanitation of the penitentiary. Hoptowit v. Spellman, 753 F.2d 779, 784 (9th Cir. 1985)." Keenan v. Hall, 83 F.3d 1083, 1090 (9th Cir. 1996).  The WDOC/WWC's ventilation system is virtually non-existent which is evidenced by the fact that the system cannot move enough air through the prison to promote and sustain healthy environments for all prisoners and staff at WWC.  As a result, the likelihood of mold and other airborne problems are a serious concern.  Plaintiffs have suffered allergic reactions to mold and other airborne problems such as colds, flu, and sinus issues. WDOC will likely argue that the HVAC system at WWC is fully functional however; they have not fully investigated *all* of WWC's living areas i.e. Pods 8-10, the Education, Supply, and Sewing Departments as requested in Ms. Ellis's grievance.

4.      The Supreme Court has made it clear that Plaintiffs at WDOC/WWC complaining about unhealthy conditions, including but not limited to those previously stated, need not demonstrate a current infirmity from the offensive conditions.  Plaintiffs need only show that these inadequate conditions create a significant risk to health and safety.  See Helling v. McKinney, 509 U.S. 25 (1993) (holding that prisoners subjected to second-hand cigarette smoke do not need to show current illness to obtain relief under the Eighth Amendment).  This principle applies to claims of inadequate ventilation as a direct result of the deficient and defunct HVAC system as well as mold as a direct result of the severe leaks in WWC's roof as Helling illustrates.

Inadequate ventilation exposes Plaintiffs to communicable diseases and identifiable health threats thus implicates constitutional guarantees. Wilson v. Lynaugh, 878 F.2d 846, 849 (5th Cir. 1989). See also Toussaint v. McCarthy, 597 F. Supp. 1388, 1396, 1409 (N.D. Cal. 1984), reversed on other grounds, 801 F.2d 1080 (9th Cir. 1986) (noting that inadequate air flow "fosters the spread of communicable disease among the inmates").  Poor ventilation also exacerbates other sanitation

deficiencies which raises additional constitutional concerns.  See <u>Hoptowit v. Spellman,</u> 753 F.2d at 784; <u>Ramos v. Lamm,</u> 639 F.2d 559, 569 (10th Cir. 1980), 450 U.S. 1041 (1981).

In all places frequented by Plaintiffs WDOC/WWC's build-up of stale and foul air which increases the risk of spreading airborne diseases, and it stands to reason that it exacerbates the problem the mold (the occurrence of which is a direct result of the severely leaky roof).  The unhealthy ventilation at WDOC/WWC violates the Eighth Amendment.  See <u>Toussaint v. McCarthy,</u> 597 F. Supp. at 1396 (finding unconstitutional ventilation deficiencies similar to those here); <u>Hoptowit v. Spellman,</u> 753 F.2d at 784; <u>Keenan v. Hall,</u> 83 F.3d at 1090; <u>Martino v. Carey,</u> 563 F. Supp. 984, 999 (D. Ore. 1983).  WDOC/WWC has long been aware of the HVAC problems but has made no effort to correct them.  Further, the entire roof at WWC has leaked for at least ten (10) years, perhaps longer, and WDOC/WWC have done nothing to correct the problem(s).  Long term WDOC/WWC employee Ms. Smith will testify the roof in the Education addition has leaked for ten (10) years and longer, and that she suffered severe allergic reactions as a result of the mold growth.  WDOC/WWC was criminally, recklessly, deliberately indifferent to Ms. Smith's complaints as well.  WDOC/WWC repeatedly uses the unconstitutional excuse of budget constraints as the reason for their criminally reckless deliberate indifference.

During the summer of 2018, WDOC/WWC HVAC system again failed and it became necessary to open doors to all sleeping quarters within WDOC/WWC to promote cooler air flow-a security risk in and of itself.  It was necessary to utilize industrial sized fans (which far exceeded the 70 dBA A scale as far as noise level is concerned-this policy also dictates "Measurement shall be conducted annually by a qualified source with at least one measurement taking place during night time and one measurement taking place during day time."  This was never done and is a violation of ACA 4-4150) in an attempt to cool down the cells but when Ms. Ellis filed a grievance requesting relief in terms of portable air

coolers, she was denied relief and advised to purchase a desk top fan.  Plaintiffs resided in Pods 8 & 9 during this time frame of the complaints.

## UNCONSTITUTIONAL CONDITION #3: SANITATION AS A RESULT OF A SEVERE LEAKS IN THE ROOF AT WWC

1.    Sanitation is one of the "[t]he discrete basic human needs that prison officials must satisfy." Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986).  See also Hoptowit v. Spellman, 753 F.2d 779, 784 (9th Cir. 1985); Ramos v. Lamm, 639 F.2d at 568-70; Carty v. Farrelly, 957 F. Supp. 727, 736 ("Generally, sanitation is one of the most basic human needs.")

2.    Courts have enforced the Eighth Amendment guarantee of a sanitary environment in many different contexts relevant to this case.  For example Courts have held that (1) jails/prisons must provide adequate cleaning supplies to Plaintiffs on a daily basis and supervise [prisoners] to ensure cleanliness of living and high traffic areas.  See Hoptowit v. Spellman, 753 F.2d 779, 784 (9th Cir. 1985); Ramos v. Lamm, 639 F.2d at 569-70; Dawson v. Kendrick, 527 F.Supp. 1252, 1264, 1289; (2) jails/prisons must act aggressively to eliminate mold in housing and high traffic areas and ensure that adequate ventilation preventing the buildup of mold is in place.  See Benjamin v. Fraser, 161 F.Supp.2d 151, 180), affirmed in part and vacated in part, remanded on other grounds 343, F.3d 35 (2d Cir. 2003).

3.    The only action that WDOC/WWC has taken to remediate these issues is to provide cleaning supplies which indirectly places blame on Plaintiffs for failing to keep the areas clean where there are severe leaks.  They provide buckets and carts in all areas where there are leaks and mops when the buckets and carts overflow.

On June 10, 2018, Ms. Ellis filed a grievance stating mold was likely growing anywhere there are water leaks (which is throughout the entire institution particularly the Education addition).  She wanted to know what type of mold it was and when it would be remediated.  On June 27, 2018, Lt. Coon acting on behalf of then Captain Kirkikis stated that "You were unable to point out the [exact] location of any mold throughout the facility as claimed.  Since there has been no mold found, then no testing will

occur." Again, all due respect this response was disingenuous and Lt. Coon knows it. That is the same as stating that Wyoming wind does not damage anything because you cannot see it. The leaks at WDOC/WWC have existed for ten (10) years and likely longer and it stands to reason that mold is growing behind walls and in places not plainly visible. Prisoner Destiny Pyke will testify that while she was employed in the industries sewing department, an entire wall crumbled and there was excessive amounts of mold found growing behind the wall.

On July 2, 2018, Warden Catron addressed this issue and stated "There is no indication of any mold(s) that possess a safety concern in the facility." At that time, Ms. Ellis resided on Hall 6 which was tested and the report stated mold was found, however the report was not evaluated by a licensed toxicologist who is qualified to make an assessment as to whether the mold found was harmful. Additionally, WDOC/WWC did not fully investigate Ms. Ellis's grievance in that they did not test *all* areas where there were roof leaks.

WDOC/WWC's Ms. Carpenter brought a maintenance worker who took pictures of an area of concern which represents approximately two percent (2%) of the entire facility as an example of the concern. On July 27, 2018, WDOC Director Lampert stated they "hired a contractor that specializes in mold testing and abatement to come to the facility. The location was tested and it was found that no significant health risk was present. As a precaution, personal protective equipment (PPE) was used when cleaning up the area." Again, Ms. Ellis's grievance requested testing for mold anywhere there were leaks throughout *all* of WWC. This was not done. Plaintiffs frequent the Kitchen/Cafeteria, Education & Supply Department(s), Pod 10 classroom, Pods 8, 9, and 10 and the hallways that lead to those locations often. Ms. Ellis poses this question: If there was no mold found and no significant health risk, why was it necessary to utilize personal protective equipment (PPE)? Plaintiffs have been exposed to this condition of confinement for approximately ten (10) years combined and were never issued PPE suits as a precaution especially when utilizing the showers or bathroom facilities or

anywhere else at WWC. This scenario is the very bane of criminally reckless deliberate indifference and should not be tolerated any longer.

On May 10, 2018, Ms. Ellis filed a grievance outlining concern relative to all of the structural leaks throughout WWC and communicated the fact that she had already slipped and fallen twice causing debilitating, irreparable, and permanent physical damage to her left shoulder and knee. WDOC/WWC then assigned Ms. Ellis a "top" bunk when they knew she had previously fallen, and she fell off the top bunk furthering injuring her left knee, shoulder, wrist, and hand. Regional West Medical Center in Scottsbluff, NE, Surgeon Dr. Jeffrey MacMillian will testify that Ms. Ellis must have her entire left knee replaced, and her entire left shoulder replaced. Dr. MacMillian advised Ms. Ellis that she should not have her shoulder repaired until she was seventy (70) years of age, due to the fact that shoulder repairs only last a few years. Dr. MacMillian also stated that WDOC would not allow him to prescribe the pain medication Ms. Ellis would need relative to any surgery, and stated that he did not perform surgery on shoulder replacements. As for the damage to Ms. Ellis's left wrist and hand, Ms. Ellis will be required to see a surgeon specializing in wrist and hand repairs to determine the extent of the damage and the corrective surgery needed. Ms. Ellis will be required to wait until she is released to gather second opinions relative to all injuries suffered at WDOC/WWC's hands for this Courts consideration. (As of the date of this filing, Ms. Ellis is eligible for release to an Adult Community Corrections (ACC) and if released, she will pursue the proper medical care and second opinions as evidence needed for this Court.) It is likely that Ms. Ellis will need to use the court's subpoena authority relative to medical reports, depositions and possible direct testimony of medical personnel at trial.

On May 14, 2018, Captain Kirkikis responded to the complaint by stating "When leaks are discovered there are wet floor signs placed in the area as well as either buckets or laundry carts to collect the water from the leaks. We ensure that the area is mopped up to keep from slips and falls occurring." He goes on to say, "If you could be more specific with the areas you are concerned about would be

helpful in establishing if the leaks are unknown to staff." This unjustly places the burden back on Ms. Ellis in terms of constitutional compliance because WDOC/WWC have known about these leaks for ten (10) years and perhaps longer and have been criminally, recklessly deliberately indifferent to them. On June 7, 2018, WWC's Warden Catron denied Ms. Ellis's request that the leaks be repaired immediately. On July 10, 2018, WDOC's Director Lampert responded to Ms. Ellis's complaint and once again placed the burden of constitutional compliance back to Ms. Ellis in terms of identifying exactly where the leaks were located. He states "WWC is aware of a couple areas in the facility near the industries/education area where the roof may leak during inclement weather. While it is only speculation on the 'areas' of facility you may be referring too, this is perhaps the area in questionDirector Lampert acknowledges Ms. Ellis slipped and fell and advises she remain vigilant during inclement weather such that she does not slip and fall again. He goes on to state that "Once the leaks were identified, a major maintenance request was formulated to remediate such leaks from occurring." Again, all due respect, the response is disingenuous and Director Lampert knows it. The fact is, the leaks have existed for ten (10) years and perhaps longer and WDOC/WWC has shown criminally reckless deliberate indifference in terms of remediating the problem. As of the date of this complaint, WDOC/WWC has not repaired the roof as they stated they would. Ms. Ellis has been physically, irreparably, permanently damaged as a result of WDOC/WWC's criminally reckless deliberate indifference and will not be able to engage in the lifestyle in all aspects (ranching) that she was accustomed to prior to her incarceration.

4.     WDOC/WWC needs more than just cosmetic and routine cleaning. It needs to be completely deep cleaned/sanitized which should include power washing and painting the entire facility. (In response to Ms. Ellis's grievance, WDOC/WWC deep cleaned, sanitized, and painted only one small area (Hall 6 bathroom and shower) in order to placate Ms. Ellis's complaint.) WDOC/WWC did not fully investigate Ms. Ellis's complaint regarding the HVAC system i.e. no other areas were tested for mold except the residential Halls 4-7. Until the WDOC/WWC's ventilation system in all places that

Plaintiffs occupy is operating like it should be, no amount of deep cleaning, sanitizing, and painting will remedy these unconstitutional conditions of confinement.   It is relevant to note that the chemicals that must be used to this end are toxic and create airborne contaminants which would necessitate WDOC/WWC female prisoners be housed in other facilities.   Intrinsic here is the fact that the cleanliness of the prison must be the basic responsibility of WDOC/WWC administrator's not the Plaintiffs.

5.       WWC has allocated Pod's 8, 9, and 10 as "dry" cells which means that sleeping quarters and the commode/shower facilities are located in separate areas.  Warden Catron and AW Molden have denied the normal use of commodes and failed to allow Plaintiffs to promptly dispose of their wastes, a life or death physical necessity, which is a violation of the Eighth Amendment.  See Young v. Quinlan, 960 F.2d 351, 364-65 (3d Cir. 1992)

6.       On June 7, 2018 AW Molden issued Ms. Jacobsen Conduct Violation Report (CVR)-GN-9 Failure to Follow Rules-for leaving her sleeping quarters in order to promptly dispose of their wastes. Ms. Jacobsen was found guilty by the hearing office Sgt. Eitel who assessed a ten ($10) dollar fine.  Ms. Jacobsen appealed the finding with WWC's Warden Catron and stated for the record WDOC/WWC P&P that states prisoners shall have access to prisoner toilets twenty-four (24) hours per day.  Warden Catron affirmed and upheld the CVR and stated for the record Ms. Jacobsen violated WDOC/WWC P&P #3.000-Inmate Count.   However, the referenced WWC P&P is unpublished, unwritten, and unknown to all prisoners at WWC.  It bears mentioning the trier of fact was Sgt. Eitel and it is necessary for the court to be advised that AW Molden outranks Sgt. Eitel and as such Ms. Jacobsen's right to a fair and impartial hearing has been violated.

Inherent here is the fact that WWC's Warden Catron and AW Molden have adopted the position that it is a privilege to use the commode and using it without permission is punishable with both a base-

less disciplinary "write-up", but also punitive monetary fines.   Ms. Jacobsen was issued monetary fines, ten dollars ($10) to use the commode.

It is necessary to state that disciplinary appeals stop at WWC's Warden Catron level; there is no level of appeal with WDOC's Director Lampert.  For the record, the issuance of any CVR's could result in loss of "good-time" which means, in this case, Ms. Jacobsen could be subject to further incarceration based solely on the fact that they had to use the commode to promptly dispose of their wastes-a life threatening physical need and violates the Eighth Amendment.

Retaliation is persistent, pervasive, and severe.  Ms. Jacobsen states for the record some of the retaliation she suffered as a result of objecting to the unconstitutional condition of confinement relative to WWC's issuance of CVR for using the commode.

As it relates to WDOC/WWC P&P #3.000-Inmate; in May 2018, Ms. Ellis discovered this WWC P&P, among many others, were administratively removed from the "I" [Inmate] drive.  Ms. Ellis exhausted all administrative remedies in requesting reinstatement of all WDOC/WWC P&P's that were removed citing the public record(s) statute, Wyo. Stat. § 16-4-201(a) as the basis for the request. In a letter to Ms. Ellis, Warden Catron concedes the policies are considered public record(s) but stated that "there were some policies that you do not need to see" he went on to state that not only would Ms. Ellis be required to pay for WDOC/WWC P&P that directly affected Plaintiffs, he would have to redact 75% of the public records as they were not to be viewed by Plaintiffs.  Ms. Jacobsen was held hostage to the very policies that were administratively removed in May of 2018.  Plaintiffs ask this Court how they can be held accountable for WWC P&P's that are purposefully hidden from them.

7.    The conditions described in this complaint exceed the bounds of human decency and constitutes cruel and unusual punishment in violation of the Eighth Amendment.  See Toussaint v. McCarthy, 801 F.2d at 1107; Hoptowit v. Ray, 682 F.2d at 568-70; Balla, 656 F. Supp. at 1118-19; Dawson v. Kendrick, 527 F. Supp. at 1287; Jones v. City and County of San Francisco, 976 F. Supp. at

910; Tillery v. Owens, 719 F. Supp. at 1271; Inmates of Occoquan v. Barry, 717 F. Supp. at 866-67;

Martino v. Carey, 563 F. Supp. at 991-92, 1000.

## UNCONSTITUTIONAL CONDITION #4:  VIOLATIONS OF TITLE VII OF THE FEDERAL CIVIL RIGHTS ACT OF 1964

1.      WDOC/WWC is so overcrowded that it now has to send its prisoners to the Wyoming

Medium (Men's) Correctional Institution (WMCI) in Torrington, WY.  As this Court is aware, there is

only one (1) prison that houses female prisoners WWC, while male prisoners in the State of Wyoming

have four (4) prisons.   Those are, the Wyoming Medium Correctional Institution, at Torrington,

Wyoming; the Wyoming Honor Farm, at Riverton, Wyoming; the Wyoming Honor Conservation Camp

and Boot Camp, at Newcastle, Wyoming; and the Wyoming State Penitentiary, at Rawlins, Wyoming.

2.      As such, WDOC is able to separate the male prisoners by classification such that high,

medium, and minimum custody prisoners are not all housed together in one location until their

classification suggests otherwise.  That is not the case relative to the female prisoners.  All female prison

custody levels are housed together in the same institution.   Couple that with unconstitutional

overcrowding and the violence associated and there exists an even more volatile situation which places

Plaintiffs in danger for their lives.  This is evidenced by the number of physical assaults that occur at

WWC.  WDOC/WWC's solution to this high risk situation is to send prisoners to various counties both

in state and out of state, which have become a dark form of unconstitutional punishment as they know

full well of the unconstitutional conditions of confinement at each facility.

3.      Rehabilitative efforts are at the heart of all prisoners relative to incarceration.

WDOC/WMCI offers a host of rehabilitative programs for the male prisoners but has not offered the

same programs to the female prisoners in the State of Wyoming.  Programs such as the Mustang horse

program, Dog program, Welding program, Leather working program, Fire Prevention, HVAC

certification, Electrical certification, Plumbing certification as well as access to courses offered by the

University of Wyoming to name a few.  WWC offers programs in the fishery (which may well be

abolished as the fishery is suffering severe loss of its commodity) and Waste Water Management (which is now only offered under independent study.)  The women are not offered participation in the "Boot Camp" program which is further gender based discrimination (see Civil Action No. 17-CV-124-S).

4.      In point of fact, WMCI discontinued all religious services to Ms. Ellis during her incarceration and justified this discriminatory practice by stating members of the clergy refused to come to the segregated female housing unit.  This is a prevarication of the truth; WMCI/WWC's catholic priest Father Duncan was told by WMCI staff he was no longer welcome to conduct services at WMCI relative to female prisoners-a fact that he will testify under oath.

5.      Ms. Ellis requested to receive the same Native American, utilization of the "sweat lodge" the same as the men and was told that the Tribal Elders strictly prohibited women from attending the "sweat lodge".   Ms. Ellis requested Mr. Wagner, WMCI's former grievance secretary, place this information in writing and Mr. Wagner summarily refused.   The Native American Tribal Member "Grandpa Willy" will testify that that is a bald faced lie.  He has never prohibited women from attending a "sweat lodge" rite and WWC has its own "sweat lodge" as proof of this fact.  Grandpa Willy will also testify that women at WWC are allowed to participate in Native American Smudging as well.

## UNCONSTITUTIONAL CONDITION #5:  VIOLATIONS OF
## THE PRISON RAPE ELIMINATION ACT

1.      On December 27, 2018, Ms. Ellis was arrested and placed in WDOC/WWC's suicide pod (she was not suicidal) where she was forced to remove her clothing, expose her buttocks, genitals, and breasts on camera as well as use the commode.  WDOC/WWC's suicide pod records all activities such that any member of WDOC/WWC's administration and all other authorized personnel can rewind the tapes and view anything of interest.  This is a violation under federally mandated PREA, 28 C.F.R. Part §§ 115.6 which states "Voyeurism by a staff member, contractor, or volunteer means an invasion of privacy of an inmate, detainee, or resident by staff for reasons unrelated to official duties…"  Ms. Ellis

wrote to this Court and WDOC/WWC transferred Ms. Ellis to solitary confinement that did not have a camera recording all activities in the cell.

2.　　While in WMCI custody, Ms. Ellis observed Ms. McLain engaging in voyeurism in contravention of PREA, 28 C.F.R. Part § 115.6 which states "Voyeurism by a staff member, contractor, or volunteer means an invasion of privacy of an inmate, detainee, or resident by staff for reasons unrelated to official duties..." On or about October 2018 WWC Ms. Ellis was transported back to WWC. Accordingly, Ms. McLain ordered Ms. Ellis to remove her clothing in order to be strip searched prior to transport. Ms. Ellis stated she thought Ms. McLain was a voyeur as Ms. Ellis caught Ms. McLain viewing her while she used the shower. Ms. Ellis requested another female officer conduct the strip search. Ms. McClain refused and became verbally abusive, disrespectful, and harassing in contravention of WDOC P&P #1.006.IV.B, C, D; #3.100.IV.C.5; #3.403.IV.A.2.iii and #3.403.IV.A.5which states; and ACA 4-4281 which is a mandatory policy.

Ms. McClain retaliated against Ms. Ellis by issuing a CVR stating she slowed down the transport process based solely on the fact that Ms. Ellis was uncomfortable with Ms. McLain conducting the strip search for reasons mentioned above. WDOC/WWC will likely argue Ms. Ellis's version of events relative to this serious PREA violation were fully investigated (the session was recorded) and were summarily dismissed. Essentially, WDOC/WMCI/WWC has labeled Ms. Ellis a liar which is libelous. Ms. Ellis would state for the record WDOC findings and dismissal do not take into consideration Ms. Ellis's visceral and subjective interpretations relative to any PREA violation. Again, like Wyoming wind, even though Ms. Ellis's visceral and subjective interpretations cannot be seen, it certainly does not mean they do not exist. WDOC/WMCI/WWC is not qualified to determine what constitutes visceral and subjective interpretations where PREA violation(s) are concerned in Ms. Ellis's psychology. Ms. McClain's CVR was clear retaliation and is thus strictly prohibit in the PREA § 115.61(a) which specifically states; "*retaliation against inmates or staff who reported such an incident*".

## CONDITION #6:  RETALIATION AS A RESULT OF
## CONTACT WITH THIS COURT
## AND ILLEGAL SEIZURE OF LEGAL FILES

1.     Due to overcrowding, Mr. Ellis was transferred to WMCI on or about August 9, 2018.
On Friday, October 26, 2018, WMCI supply clerk's Ms. Gifford and Mr. Wagner ordered her to "pack-up" which included all seizing *all* of Ms. Ellis's confidential and proprietary legal files.  Ms. Ellis complied with the order out of fear.  Ms. Gifford and Mr. Wagner refused to return the illegally seized confidential and proprietary legal files, all clothing, and all hygiene items for approximately four (4) days.  When Ms. Ellis's items were finally returned, there were several legal files, motion's, and exhibits missing.

2.     WDOC/WWC Defendants were put on notice relative to the original filing on November 7, 2018, when Education Manager, Mr. Quillen questioned Ms. Ellis's involvement relative to authoring the complaint.  Mr. Bleming was witness to this meeting.

3.     The Motion for Preliminary Injunction (Motion) was officially filed and received on November 27, 2018 with U.S. District Court, in Cheyenne, WY, Honorable Judge Alan Johnson presiding.

4.     Ms. Jacobsen was summarily dismissed on November 27, 2018 regarding the aforementioned Motion without legitimate cause from her position in the library.  Because AW Molden and Mr. Quillen observed her speaking to co-plaintiffs regarding the Motion.  Ms. Ellis respectfully request this Court order WDOC/WWC, Warden Catron and AW Molden pay Ms. Jacobsen for wages earned during the month of November 2018, and for lost wages relative to December 2018, January, February, March, April, May, June 2019 or until WDOC/WWC reinstates Ms. Jacobsen to the only job she is medically able to occupy, which is that of a Clerk in the Resource Center.  Plaintiffs request this Court order her reinstatement post haste, and at her former hourly rate.  Plaintiffs pray this Court enjoins all further economic damage against Ms. Jacobsen, and requests any other such relief as this Court

deems just and proper.  Ms. Jacobsen has suffered serious economic damage as a result of the illegal retaliation.

5.      WDOC/WWC Defendants were notified on December 27, 2018, in writing, by receiving a copy of a letter from Plaintiffs' to the Court advising of some of the retaliation that has occurred post November 7, 2018 when Defendants were advised the Motion would be filed.

6.      Defendants were again notified on December 28, 2018, in writing, by receiving a copy of Ms. Ellis's handwritten letter outlining more premeditated, retaliatory actions taken against Plaintiffs for filing the Motion.

7.      During the month of November 2018, WDOC/WWC's Education Manager Mr. Quillen went through all of Ms. Jacobsen's personal property clearly marked "legal" and illegally seized confidential legal files and exhibits for an extended period of time refusing to return them.  .

8.      Ms. Ellis explained to Mr. Quillen that she was engaging in a scheduled telephone conference with Ms. Macrina Jarabek, Attorney at Law, and he stood over Ms. Ellis and ordered her to "hang-up" on counsel thereby violating her right to protected, privileged attorney/client communication, as well as access to the courts.

9.      On 12/11/18 Stg. Eitel issued a premeditated, retaliatory General Conduct Violation (GCV) because Ms. Ellis delivered a stamped copy of the Motion to Ms. Fowler a Co-Plaintiff and party to the action.[2]  Ms. Ellis has attempted to communicate with co-plaintiff Ms. Jacobsen regarding the filing, but Ms. Eitel refused said communication repeatedly stating "not on my shift" when she knew the communication was with regard to a legal matter pending before this Court.

10.     On 12/18/18 Sgt. Baron conducted a hearing and found Ms. Ellis guilty in spite of Ms. Ellis's reason for the delivery of the urgent paperwork citing trivial rule violations as a basis for the finding.  At one point Mr. Baron turned off the tape recording and told Ms. Ellis that he was concerned about the rise of excessive violence precipitated by the unconstitutional overcrowding crisis.  Officer

---

[2] Ms. Fowler is no longer a Plaintiff in the action.

Birch was witness to the hearing. As a result of the GCV Ms. Ellis lost two (2) weeks of commissary. Warden Catron and AW Molden affirmed and upheld Ms. Eitel's actions.

11.     On 12/21/18 Relative to the GCV issued by Ms. Eitel, Ms. Ellis filed an Inmate Disciplinary Appeal with Warden Catron outlining the reason for delivering a stamped copy of the Motion and presenting arguments as to why there was no compliance with institutional standards and procedures when handling Ms. Ellis's inmate discipline and delivering paperwork filed by Plaintiffs relative to a lawful federal action should have taken precedence. Warden Catron acknowledges the fact that Ms. Ellis was delivering a stamped copy of the Motion and cites trivial rule violations given as an excuse for the retaliatory GCV for filing the Motion.

12.     IT Manager Ms. Clayton gave Ms. Ellis a direct order to place a note under the IT Corridor door requesting assistance relative to vital computer access to legal files surrounding the Motion. The computer issue(s) blocked Ms. Ellis from access to this Court. Should Ms. Ellis have disobeyed the direct order, she would have been issued a GCV 8 "Failure to Obey a Direct Order". Should this proceed to trial, Ms. Melanie Sorensen and many other prisoners will testify as to the fact that Ms. Clayton's order was a usual and customary business practice and there was never any retaliation suffered against any other prisoner for carrying out Ms. Clayton's order.

13.     On 12/19/18 Lt. Wheeler issued a premeditated, retaliatory GCV because Ms. Ellis placed a handwritten note under IT Manager Ms. Julie Clayton door requesting assistance relative to on-going sign-on issues that blocked Ms. Ellis from legal files surrounding litigation thereby prohibiting Ms. Ellis's access to this Court. When Ms. Ellis asked Ms. Wheeler if Ms. Clayton was constructively discharged from her employment Ms. Wheeler became verbally abusive. These actions were retaliation as a result of filing the Motion.

14.     During this verbally abusive confrontation, Ms. Wheeler, as shift command, refused to provide assistance to Ms. Ellis regarding vital print problems with regard to the Motion knowing full

well this was a legal matter pending against WWC with regard to unconstitutional conditions of confinement. Ms. Wheeler told Ms. Ellis that Ms. Clayton was no longer employed at WWC and when Ms. Ellis asked if Ms. Clayton was constructively discharged as a result of providing assistance to Ms. Ellis, Ms. Wheeler became verbally abusive, told Ms. Ellis to "mind your business" and "know your place". Ms. Wheeler then ordered Ms. Ellis back to quarters as if she were an errant animal. Mr. Hofer, and Mr. Fink were witnesses to this confrontation, and verbally abusive behavior and Ms. Wheeler's refusal to provide critical assistance relative to computer sign-on and print issues revolving around both the Preliminary and Retaliatory Injunction(s). This incident was also caught on camera in WWC's cafeteria. On 1/11/19 Ms. Ellis filed an Inmate Grievance Appeal with Warden Catron as to this premeditated, retaliatory verbal abuse and deliberate obstruction of Ms. Ellis's access to this Court as well as fact finding regarding the constructive discharge of IT Manager Julie Clayton all retaliatory actions as a direct result of filing the Motion; grievance secretary Ms. Skibicki summarily dismissed the complaint(s) citing they were "frivolous" and exceeded the weekly allowance relative to the filing of grievances. On 1/16/19 Warden Catron who affirmed and upheld this violation of the Ms. Ellis's Constitutional rights and Ms. Skibicki's summarily dismissal of valid grievances. This was active retaliation for filing the Motion and a denial of Ms. Ellis' constitutional right to Due Process.

15.     On 12/19/18, Unit Manager (U.M.) Syrovatka, as ordered by Warden Catron and AW Molden issued premeditated, retaliatory Major Conduct Violation (MJ), "Accumulation" for the issuance of three (3) GCV's.

16.     On 12/27/18 early in the day, Ms. Ellis wrote a letter to U.S. District Judge Johnson assigned to the Motion outlining the aforementioned premeditated, retaliatory actions taken against Plaintiff's for filing the Motion. The communication was met with even more retaliation in a direct attempt to quash such communication and access to this Court.

17.     On 12/27/18 in the middle of the night, Sgt. Eitel woke Ms. Ellis up and conducted hearing(s) relative to the GCV issued by Lt. Wheeler, and MJ issued by U.M. Syrovatka.  Ms. Ellis requested a continuance relative to the GCV issued by Lt. Wheeler stating she had written Judge Johnson and asked for judicial intervention.  Ms. Eitel granted Ms. Ellis's request and allowed U.S. District Court Federal Judge Johnson a seven (7) day continuance.  In the interim, Ms. Eitel found Ms. Ellis guilty of the MJ violation and sentenced Ms. Ellis to thirty (30) days of solitary confinement.  This premeditated, retaliatory action was affirmed and upheld by Warden Catron and AW Molden.  It is important to note that Warden Catron, AW Molden, UM Syrovatka, and Lt. Wheeler outrank Sgt. Eitel therefore Ms. Ellis's right to an impartial hearing was violated.  (See WDOC's Policy & Procedure #3.101.II.B)

18.     Ms. Ellis was arrested on 12/27/18 in the middle of the night and taken to the suicide pod (she was not suicidal) where she was recorded on camera robing, disrobing, and using the commode. Some of Ms. Ellis's hygiene items were seized as a punitive measure relative to being placed in solitary confinement.  On 12/28/18 Ms. Ellis sent a handwritten letter to Judge Johnson outlining said events and approximately four (4) days later Ms. Ellis was moved non-recorded solitary confinement cell to serve the rest of the premeditated, retaliatory solitary confinement sentence issued by Ms. Eitel relative to the filing of the Motion.  This was a clear violation of PREA and will be discuss with more detail later in this brief.

19.     On 1/4/19, Sgt. Eitel conducted the hearing relative to the GCV issued by Lt. Wheeler, and once again, Ms. Ellis pointed out during the recorded hearing Ms. Eitel was in no position to overturn a GCV issued by a senior ranking officer, and the actions taken by Ms. Wheeler were premeditated and retaliatory as a result of filing the Motion.  Ms. Eitel found Ms. Ellis guilty and sentenced her to another thirty (30) days of solitary confinement consecutive with the first thirty (30) day solitary confinement.  These actions were affirmed and upheld by Warden Catron and AW Molden.

20.     As a direct result of the issuance of the MJ, Ms. Ellis lost forty-five (45) days of "good time" which means longer incarceration, her custody level changed from minimum to medium, and her acceptance to an Adult Community Correction (ACC) was blocked for a period of six (6) months.  In addition, being placed in solitary confinement blocked Ms. Ellis's access to legal files deliberately obstructing her access to this Court.  This was in retaliation for filing the Motion.

21.     On 1/10/19, Ms. Ellis requested confidential and propriety communication (inmate-to-inmate) with co-plaintiff, Ms. Jacobsen to discuss critical legal aspects relative to the Motion, and her request was denied by Warden Catron citing the communication would not be considered legal communication.   All said communications were scanned and read by Warden Catron and AW Molden in violation of Plaintiffs right to confidential communication(s) relative to the Motion.

22.     On 2/5/19, Lt. Wheeler, as shift command, again blocked Ms. Ellis' access to co-plaintiff Ms. Jacobsen to discuss the Retaliation Injunction.  Ms. Ellis made it clear her intent dealt directly confidential and proprietary legal matters and time sensitive court filings revolving around the Motion, and the Retaliation Injunction.  Ms. Wheeler's premeditated, retaliatory actions blocked and obstructed Ms. Ellis's access to this Court.

23.     On 2/12/19 Ms. Ellis spoke to investigative reported Mr. Andrew Graham of WyoFile.com and the Casper Star Tribune.

24.     On 2/13/19 at 7:10am Ms. Ellis asked Mr. Harper for assistance with regard to accessing my computer legal files relative to the Motion.  He refused to provide assistance by way of contacting the IT Department via a simple telephone call, stating that my access to the courts did not constitute an 'emergency' in his opinion, and therefore Ms. Ellis was intentionally blocked relative to accessing legal computer files pertaining to the Preliminary and Retaliation Injunction(s).  Ms. Ellis explained there was a deadline relative to the filing of a Motion.  Mr. Harper was deliberately indifferent and summarily

dismissed Ms. Ellis telling her to 'get out of the hall'. This is direct retaliation for filing the Motion(s) and speaking to the press.

25. During the weeks of approximately February 24 to March 10, 2019 the prison required Ms. Ellis to change housing from Hall 6 to Hall 7. The previous prisoner(s) did not turn in their key(s) to the cell and as a result Ms. Ellis did not have access to a commode. Ms. Ellis paged the person in the central command, Mr. Harper, and politely requested he unlock the cell door 7K such that Ms. Ellis could promptly dispose of wastes. He refused. Ms. Ellis explained that she needed to use the commode, and he again refused the request. This is in direct retaliation of filing the Motion and speaking to the press and a violation of Amendment Eight (8th).

26. On March 7, 2019 between the hours of 8:00am and 9:00am, WDOC/WWC deliberately interfered Ms. Ellis attempt to access this Retaliation Injunction. Ms. Ellis was notified by WWC's automated computer administrator that the Injunction was in use by another user and Ms. Ellis would only be allowed 'read-only' rights. This means that WDOC/WWC has illegally accessed files marked "Legal Confidential & Proprietary" on Ms. Ellis's partitioned portion of WWC's mainframe computer server. Ms. Ellis was blocked from editing and printing the Retaliation Injunction as it was illegally being viewed by an unauthorized administrative user. Ms. Ellis has not granted proxy rights as it relates to legal files marked "Legal Confidential & Proprietary". This is in direct retaliation to filing the Motion as well as speaking to Mr. Graham who represents the press.

27. On March 14, 2019 Lusk, WY experienced severe inclement weather and as such WWC operated on a skeleton crew. Due to a faulty lock, Ms. Ellis could not access her cell to promptly dispose of her wastes. Ms. Ellis paged Mr. Harper who was central command. Mr. Harper responded by asking if the contact was an 'emergency'. Ms. Ellis stated it was but Mr. Harper refused to open cell door 7K. Sgt. Copsey was "shift command" and when Ms. Ellis requested to speak with Mr. Copsey, Mr. Harper refused the request. Further, Mr. Harper, as the operator in central command, refused to

answer emergent requests when Ms. Ellis used the paging system for the remainder of March 14, 2019. This is in direct retaliation of filing the Motion and speaking to the press and filing the Motion(s).

28.     On or about April 8, 2019, WDOC/WWC blocked Ms. Ellis's access to legal files on WDOC/WWC's database.  On or about April 15, 2019, Ms. Ellis asked Mr. Harper to contact the IT Department for critical IT assistance, Ms. Ellis had a time-sensitive filing to do for this Court; Mr. Harper refused to provide assistance and thought it was funny Ms. Ellis's legal files were blocked.  Ms. Ellis complained to Lt. Wheeler of Mr. Harper's refusal to provide critical IT assistance by way of merely contacting (by telephone) the IT Department and requesting assistance.  Lt. Wheeler stated she would not address the unprofessional behavior Mr. Harper exhibited, and stated that it was not their job to provide IT assistance by way of calling the IT Department.

29.     On or about April 13, 2019 Mrs. Birdie-Harper issued a CVR accusing Ms. Ellis of a GN-16, "unwanted personal interaction not amounting to harassment or threats".  Mrs. Birdie-Harper and her husband Mr. Harper are expecting a child.  Ms. Ellis told Mrs. Birdie-Harper that she looked "fluffy" and that she was "beautiful" as a result of her impending delivery.  As previously mentioned in this brief, her husband Mr. Harper has repeatedly violated Ms. Ellis' constitutional rights.   This husband/wife tag teamed Ms. Ellis; Mr. Harper was annoyed with Ms. Ellis for filing the civil rights law suit, so Mrs. Birdie-Harper viewed the WCIS notes and issued a CVR based on notes that both she and her husband posted to Ms. Ellis's record.

30.     On April 18, 2019, Ms. Ellis had a hearing regarding the CVR issued by Mrs. Birdie-Harper.  Ms. Eitel found Ms. Ellis guilty of the offense, and engaged in even more retaliation by sentencing Ms. Ellis to thirty (30) days of "room restriction" which blocked Ms. Ellis' access to her legal files and interfered with Ms. Ellis's access to this Court.   Warden Catron and AW Molden recognized this was an extremely harsh sentence so they shortened it to three (3) days.  Ms. Eitel has clearly engaged in severe retaliation against Ms. Ellis's person for filing the litigation against WWC.  In

Ms. Ellis's appeal she requested Ms. Eitel not be a disciplinary hearing officer assigned to hear allegations against Ms. Ellis. Warden Catron denied the request.

31.     Ms. Ellis states that AW Molden and Captain Kirkikis denied her the right to utilize the law library. AW Molden sent out an e-mail to all WWC staff members advising that Ms. Ellis (she singled Ms. Ellis out by name) would not be allowed to go to the law library while on 21/3 disciplinary lock-down segregation. This is a violation of WDOC/WWC P&P #3.101.IV.D.2.iii.b and ACA 4-4276 and it is a violation of the Ms. Ellis's right to access the courts. Ms. Ellis filed a complaint with Mr. Lampert and he upheld AW Molden's position stating that Ms. Ellis's physical person does not have a guaranteed right to go to the law library to conduct legal research even though Ms. Ellis pointed out there were hard backed books that Ms. Ellis needed to use for legal research and those books were, under no circumstances, to be removed from the law library. This deliberately blocked Ms. Ellis's access to this Court.

## #6-RETALITATION ARGUMENT AND/OR PROPOSED CONCLUSIONS OF LAW PROPOSED REMEDY

Ms. Ellis and Ms. Jacobsen state they are prisoners by their own hand; they blame no one but themselves for their transgressions. They broke the law, and sentencing to WDOC/WWC was just and fair. Plaintiffs also understand that while they are prisoners their constitutional rights are somewhat suspended. However, there are some rights Plaintiffs argue still in place. Most notably, is the protection under Amendment VIII which ensures Plaintiffs be treated with a minimal measure of civility in today's prison environment. Clearly, WDOC/WMCI/WWC has lost their sense of humanity; have judged Plaintiffs and rendered even more punitive measures than the sentencing court intended, and have premeditatedly retaliated against Plaintiffs for objecting to unconstitutional conditions of confinement and deliberately interfered with access to this Court.

1.     WDOC/WMCI/WWC has an obligation to refrain from deliberately interfering with Plaintiffs' access to the Courts.

2.     Warden Catron, AW Molden, violates Plaintiffs' constitutional rights because they have subjected Plaintiffs to unwarranted punishments, and threaten them with such punishments.  As outlined in this brief, Defendant's premeditated retaliatory actions do not advance legitimate goals of WDOC/WMCI/WWC and is not tailored narrowly enough to achieve such goals.

3.     Plaintiffs allege that Warden Catron and AW Molden have falsely accused Plaintiffs of violating prison(s) rules in retaliation for exercising constitutional rights.  Warden Catron and AW Molden's accusation(s) is not entitled to deferential "some evidence" standard of review that is afforded disciplinary administrative decisions.

4.     A finding that Warden Catron and AW Molden took disciplinary actions against Plaintiffs' with illegal retaliatory motives may be based on circumstantial evidence as presented in this brief.

5.     The "chilling effect" retaliatory actions have on the exercise by Plaintiffs' of their constitutional rights is sufficient injury, without more, to warrant relief, without any showing that the retaliation frustrated or hindered the Plaintiffs' litigation efforts; and the injury suffered need not constitute an atypical or significant hardship.

6.     Accordingly, when WDOC/WMCI/WWC act with retaliatory motives rather than advancing legitimate penological objects by subjecting Ms. Jacobsen to loss of employment, both past and future wages, changes in housing, restriction and punishment for using the commode, placing Ms. Ellis in solitary confinement repeatedly, issuing unwarranted, base-less write-up's which resulted in the loss of "good-time" in the amount of forty-five (45) days, changes in custody levels, deliberate blocking of legal files on Ms. Ellis inmate drive, prolonged retention and/or destruction of Plaintiffs legal

materials, and deprivations of employment they violate Plaintiffs constitutional rights, even though Plaintiffs stipulate they have no constitutionally protected liberty interest in avoiding these deprivations.

7.      When WDOC/WWC's Warden Catron and AW Molden restrict the exercise of Plaintiffs' First Amendment rights, they act illegally unless WDOC/WWC's interest asserted in support of the restriction is legitimate and neutral, and there is a rational connection between the restrictive practice and the goals asserted by WDOC/WMCI/WWC Officials. As such, a practice cannot be sustained where the logical connection between the practice and the asserted goal is so remote as to render the policy arbitrary, capricious, or irrational. WDOC/WMCI/WWC's governmental objective must be a legitimate and neutral one. Gehl Group v. Koby, 63 F.3d 1528, 1534-35 (10th Cir. 1995) (citations omitted). "Government actors cannot intentionally suppress constitutionally protected expression because of its content and avoid First Amendment scrutiny simply by claiming that they were acting pursuant to an otherwise valid criminal law." Id., at 1534, quoting DeLoach v. Bevers, "[a]n act taken in retaliation for the exercise of a constitutionally protected right is actionable under 42 U.S.C. § 1983 even if the act, when taken for a different reason, would have been proper." 922 F.2d 618, 620 (10th Cir. 1990), quoting in turn Matzker v. Herr, 748 F.2d 1142. 1150 (7th Cir. 1984), cert. denied, 502 U.S. 814 (1991).

8.      WDOC/WMCI/WWC's Policy & Procedure(s) is "neutral" if and only if it further[s] an important or substantial WDOC/WMCI/WWC interest unrelated to the suppression of free expression via the rights afforded by the First Amendment. Furthermore, WDOC/WMCI/WWC, Director Lampert, Warden Wilson, Warden Catron and AW Molden cannot rely on general or conclusory assertions to support WDOC P&P. Rather, they must first identify the specific penological interests involved and then demonstrate both that those specific interests are the actual bases for WDOC P&P to start with and are reasonably related to the furtherance of penological identified interest. Plaintiffs respectfully request this Court order an evidentiary showing as to each point.

9.     In order to justify a practice or regulation that "chills" the exercise of the Plaintiffs' constitutional rights, WDOC/WMCI/WWC must provide evidence that the interest proffered is the reason why the regulation was adopted or enforced.

10.     Defendants have cited trivial rule violations as a basis for issuing premeditated, retaliatory, base-less, and unwarranted Conduct Violations. They selectively enforced these trivial rules to the detriment of Plaintiffs. This is what the court considers active retaliation and should not be tolerated for any reason. Hyland v. Wonder, 117 F.3d 405, 412 (9th Cir. 1997), citing Sanchez v. City of Santa Ana, 936 F.2d 1027, 1039 (9th Cir. 1990).

11.     The general conduct of Defendants have produced a "chilling effect" relative to Plaintiffs because they have been used as example(s) to show what will happen to other prisoners who file litigation contesting conditions of confinement and/or other unconstitutional violations. Dombrowski v. Pfister, 380 U.S. 479, 485 (1965) ("the chilling effect upon the exercise of First Amendment rights may derive from the fact of the prosecution, unaffected by the prospect of its success or failure."); United States v. PHE, Inc., 965 F.2d 848, 853 (10th Cir. 1992) ("a prosecution motivated by a desire to discourage expression protected by the First Amendment is barred and must be enjoined or dismissed, irrespective of whether the challenged action could possibly be found to be unlawful.")

THEREFORE, Ms. Ellis is requesting His Honor order, WDOC/WWC pay Ms. Jacobsen for wages earned in November 2018 in the amount of two-hundred dollar ($200), and $200 for each month Ms. Jacobsen WDOC/WWC has deliberately and in retaliation refused to employ her. WDOC/WWC has refused to employee Ms. Jacobsen for the months of DEC. 2018 January, February, March, April, May, and June 2019. If His Honor agrees, the total due for the months Ms. Jacobsen was denied employment in retaliation for filing this action would be twelve hundred dollars ($1,200 1400). Ms. Jacobsen also humbly and respectfully requests this Court order Ms. Jacobsen's immediate reinstatement of employment as the Resource Center Clerk at her previous hourly rate. [This is the only medically approved position Ms.

Jacobsen can safely occupy that should not cause another life threatening heart attack (which she has suffered at WWC hands-that matter will be addressed in a subsequent filing.)]   Additionally, Ms. Jacobsen should be awarded punitive and monetary damages for WWC's prolonged retention and/or destruction of Plaintiffs legal materials in the amount of five hundred ($500).   If this Court finds this is not an appropriate compensatory, punitive and monetary remedy, Ms. Jacobsen humbly and respectfully defers to this Court's judgment for remedy consistent with evidence presented and other such relief as this Court deems just and proper.   Ms. Jacobsen would request this Court enter an order enjoining all future retaliation taken against her for asserting her constitutionally protected right to be treated with a minimum measure of civility.

Relative to the retaliation suffered by Ms. Ellis; Ms. Ellis humbly and respectfully requests all retaliatory premeditated "write-up's" be reversed and rescinded [to be removed from all official and un-official records/files] post November 7, 2018 which would mean the reinstatement of forty-five (45) days of "good-time".   As for compensatory, punitive, and monetary damages relative to being placed in solitary confinement repeatedly, prolonged retention and/or destruction of legal materials, being blocked from her legal files located on WWC's inmate drive, not being allowed immediate access to a commode, Ms. Ellis would defer to this Court's judgment as to what would be fair and just, compensatory, punitive, and monetary damages.   Ms. Ellis states, and prays this Court agrees, there must be a compensatory, punitive, and monetary consequence for deliberately, and premeditatedly blocking Ms. Ellis's access to this Court and premeditated interference with regard to challenging conditions of confinement as stated in this brief.   WDOC/WWC's actions have caused a "chilling effect" relative to other prisoners at WWC who are considering litigation against WDOC/WWC for similar violations. This organizational behavior cannot go unnoticed any longer.   Ms. Ellis paid the three-hundred and fifty dollar filing fee as order by His Honor, and she respectfully requests the state reimburse.

Ms. Ellis was denied parole on May 9, 2019 and part of the parole hearing revolved around the baseless, retaliatory, unwarranted "write-up's" received during Ms. Ellis's entire incarceration (the majority of the "write-up's" occurred post November 7, 2018 and were retaliatory). Ms. Ellis would like to ask for this Court's subpoena ability to obtain a transcript of the closed door Parole Board deliberations such that she will know the full unofficial reason for the denial. At that, point Ms. Ellis can make a decision as to whether the Board's decision is arguable based on the information that WDOC/WWC provided prior to the hearing.

Ms. Ellis states as a result of the premeditated, retaliatory write-up's received post November 7, 2018, Ms. Ellis was barred from applying to an Adult Community Correction (ACC) for a period of six (6) months. Ms. Ellis would have been qualified to apply in January 2019. As it stands, Ms. Ellis was qualified to apply in June 2019. Again, Ms. Ellis would defer to this Court's judgment as to what would be fair and just, compensatory, punitive, and monetary damages, if His Honor believe there should be a consequence for the illegal actions taken against her.

Plaintiffs PRAY that this Court will rule on the retaliation suffered by Ms. Jacobsen and Ms. Ellis at His Honor's earliest convenience. Ms. Jacobsen's economic suffering should have never been allowed and WDOC/WWC has premeditatedly, deliberately quashed Ms. Ellis's freedom by delaying her release to an Adult Community Correction facility located in Cheyenne, WY, or possibly being denied parole.

As it relates to the other trespasses listed in this brief:

## CONCLUSION REMEDY RELATIVE TO UNCONSTITUTIONAL CONDITION OF CONFINEMENT #1-OVERCROWDING

1.     The State of Wyoming contracted with the Platte County Detention Center (PCDC) knowing full well it was not constitutionally compliant ensuring Ms. Ellis constitutionally guaranteed rights as listed in the contract between the two entities. PCDC failed in its application of the terms and

conditions of the contract, and the State of Wyoming failed in overseeing PCDC for contractual compliance to Ms. Ellis's detriment.   WDOC/WWC was deliberately indifferent to overseeing contractual compliance and Ms. Ellis filed a 42 U.S.C. 1983 action relative only to these trespasses.   The action was filed on June 10, 2019 and only in Ms. Ellis's name.   As it relates to unconstitutional condition of confinement, Plaintiffs humbly and respectfully defer to this Court's judgment for remedy consistent with evidence presented and other such relief as this Court deems just and proper.

## CONCLUSION AND REMEDY RELATIVE TO UNCONSTITUTIONAL CONDITION OF CONFINEMENT #2-UNCONSTITUTIONAL HVAC AT WWC

1.        During the 2017/2018 winter Plaintiffs were forced to sleep in all of their clothing, in their day rooms, and/or in their cells with the doors wide open in an effort to stay warm.   In addition, Plaintiffs went without hot water and were unable to shower and wash dishes or clothing for a period of time.   WDOC/WWC's HVAC system has been in disrepair for a number of years and no efforts have been made to correct this critical condition of confinement.   Through no fault of their own, Plaintiffs were denied heat.   In addition, the HVAC system has failed with regard to cooling as well which again necessitated leaving all cell doors open to facilitate cool air flow, and the use of industrial fans to promote air flow.   WDOC/WWC has been deliberately indifferent in terms of correcting these exigent issues.   When Ms. Ellis filed grievances and pointed out possible remedies including back-up heaters and air coolers/conditions, WDOC/WWC denied the requests.   This implicates Amendment VIII protections.   Plaintiffs would like the systems to be repaired as soon as possible.   Plaintiffs would also like WDOC/WWC's P&P regarding not being able to cover one's self up with a blanket during the day or night if they are cold to be reversed and rescinded.   In addition, Plaintiffs would request this Court order WDOC/WWC to provide extra blankets when inclement weather occurs regardless of whether the HVAC system is fully functional.   No prisoner should go cold or be forced to endure excessive heat.

2.      As it relates to punitive and monetary damages regarding this unconstitutional condition of confinement, Plaintiffs humbly and respectfully defer to this Court's judgment for remedy consistent with evidence presented and other such relief as this Court deems just and proper.

### CONCLUSION AND REMEDY RELATIVE TO UNCONSTITUTIONAL CONDITION OF CONFINEMENT #3-UNCONSTITUTIONAL SANITATION AS A RESULT OF THE SEVERELY LEAKY ROOF AT WDOC/WCC

1.      Ms. Ellis has been permanently, irrevocably, physically damaged due to WDOC/WWC's deliberate indifference with regard to the leaks in the roof and the mold that has occurred as a result. Ms. Ellis has slipped and fallen twice thereby permanently damaging the entire left side of her body. Right now, it is apparent that Ms. Ellis will have to her entire left knee replaced, and her entire left shoulder replaced. Additionally, Dr. MacMillen the attending surgeon, stated that Ms. Ellis should wait to have her shoulder replaced until she was seventy (70) yrs. old because this sort of surgery does not last more than two to three (2-3) years. Ms. Ellis has also damaged her left hand, and wrist and will need further medical care to correct these serious injuries. Therefore, Ms. Ellis is PRAYING this Court order WDOC/WWC pay for all surgeries relative to all injuries suffered at WDOC/WWC's hands due to their deliberate indifference for the rest of her life. Further, Ms. Ellis respectfully requests to be able to choose her own surgeon and all expenses paid necessary to travel to and from wherever surgery must occur, all hospital expenses and recovery time. These expenses would include all travel arrangements, food, housing, and incidentals (i.e. taxies etc), as well as all expenses paid for her husband Mr. Daryl D. Stone to accompany her to surgery site. In addition, Ms. Ellis is asking for punitative monetary damages in the amount of one-hundred and fifty thousand dollars ($150,000). WDOC/WWC has a liability to release Ms. Ellis in the same condition she entered WWC. Ms. Ellis is a life-long rancher in the State of Wyoming and she will never be able to function at her and her husband's ranch as she had prior to

becoming incarcerated. Receiving the injuries that Ms. Ellis's has suffered and will suffer for the rest of her life, is not part of the lower court's punishment relative to her incarceration.

2.      Ms. Jacobsen would respectfully request this Court order WDOC/WWC to reverse and rescind the write-up she received for using the commode. Ms. Jacobsen requests punitive and monetary damages in the amount of five-thousand dollars ($5,000).

### CONCLUSION AND REMEDY RELATIVE TO #4-VIOLATIONS OF TITLE VII OF THE FEDERAL CIVIL RIGHTS ACT OF 1964

1.      Plaintiffs state while in custody at WMCI, they were not afforded the same rehabilitative programs as the men enjoyed. They were also not allowed to attend the same religious services. Therefore, Plaintiffs respectfully request this Court order WDOC/WMCI to make available the same rehabilitative programming courses available to women prisoners at WWC, and they request to be able to attend the same religious services at as the men receive while in WMCI custody.

### ARGUMENT AND REMEDY RELATIVE TO #5 VIOLATIONS OF THE PRISON RAPE ELEMINATION ACT (PREA)

1.      Ms. Ellis respectfully requests this Court order removal of the write-up issued by Ms. McClain from both official and unofficial files. Further, Ms. McClain WDOC/WMCI should be assessed punitive damages in the amount of one-thousand dollars ($1,000) for issuing a retaliatory write-up for making a PREA complaint. WDOC/WMCI Mr. Tyson should be assessed punitive damages in the amount of one-thousand dollars ($1,000) for finding Ms. Ellis "guilty" and assessing a twenty dollar ($20) fine. As it relates to prolonged retention and/or destruction of Plaintiffs legal materials, by Ms. Gifford, and Mr. Wagner, WDOC/WMCI should be assessed a fine of one-thousand dollars ($1,000) per person. WDOC/WMCI simply does not have the right to seize legal files for any length of time nor does it have the right to take legal files and lose or destroy the files.

WHEREFORE, Plaintiffs request this Court order the State of Wyoming to pay all taxes on all any and all compensatory, punitive and monetary damages.  Plaintiffs are at WDOC/WMCI/WWC mercy in all aspects to the conditions of confinement.  WDOC/WMCI/WWC has abused their positions of power and authority to Plaintiffs detriment and therefore should have a consequence just as Plaintiffs did for breaking the law.  Plaintiffs PRAY for the relief requested and all other such relief as this Court deems appropriate and fitting.

**Humbly and Respectively Submitted**,
Dated this 11th day of June, 2019.

Ms. Sheryl L. Ellis, Plaintiff
Wyoming Women's Center
1000 West Griffith
P.O. Box 300
Lusk, WY  82225

Ms. Julie Jacobsen, Plaintiff
Wyoming Women's Center
1000 West Griffith
P.O. Box 300
Lusk, WY  82225

## CERTIFICATE OF SERVICE

I, Sheryl L. Ellis, and Julie Jacobsen, do hereby certify that we sent a true and correct copy, postage paid, of this 42 U.S.C. § 1983 action to:

Dated this 11th day of June, 2019.

Sheryl L. Ellis, Plaintiff

| | |
|---|---|
| Office of the Clerk of Court<br>United States District Court of Wyoming<br>2120 Capitol Avenue, Room 2131<br>Cheyenne, WY 82001 | Office of the Attorney General<br>Attention: Dan E. White, Assist. A.G.<br>Kendrick Building<br>2320 Capitol Avenue<br>Cheyenne, WY 82001 |
| Wyoming Department of Corrections<br>Attention: Robert O. Lampert, Director<br>1934 Wyott Dr., Suite 100<br>Cheyenne, WY 82002 | Wyoming Women's Center<br>Attention: Mr. Catron<br>1000 West Griffith Blvd.<br>P.O. Box 300<br>Lusk, WY 82225 |
| Wyoming Women's Center<br>Attention: Ms. Molden<br>1000 West Griffith Blvd.<br>P.O. Box 300<br>Lusk, WY 82225 | Wyoming Women's Center<br>Attention: Ms. Wheeler<br>1000 West Griffith Blvd.<br>P.O. Box 300<br>Lusk, WY 82225 |
| Wyoming Women's Center<br>Attention: Ms. Skibicki<br>1000 West Griffith Blvd.<br>P.O. Box 300<br>Lusk, WY 82225 | Wyoming Women's Center<br>Attention: Ms. Eitel<br>1000 West Griffith Blvd.<br>P.O. Box 300<br>Lusk, WY 82225 |
| Wyoming Women's Center<br>Attention: Mr. Harper<br>1000 West Griffith Blvd.<br>P.O. Box 300<br>Lusk, WY 82225 | Wyoming Women's Center<br>Attention: Mrs. Birdie-Harper<br>1000 West Griffith Blvd.<br>P.O. Box 300<br>Lusk, WY 82225 |
| Former WWC Employee<br>Mr. Quillen<br>Address Unknown to Plaintiffs | Wyoming Medium Correctional Institution<br>Attention: Mr. Wilson<br>7076 Road 55F<br>Torrington, WY 82240 |

| | |
|---|---|
| Wyoming Medium Correctional Institution<br>Attention:  Mr. Kirkikis (Former Capt. WWC)<br>7076 Road 55F<br>Torrington, WY  82240 | Wyoming Medium Correctional Institution<br>Attention:  Mr. Tyson<br>7076 Road 55F<br>Torrington, WY  82240 |
| Wyoming Medium Correctional Institution<br>Attention:  Ms. McClain<br>7076 Road 55F<br>Torrington, WY  82240 | Wyoming Medium Correctional Institution<br>Attention:  Ms. Gifford<br>7076 Road 55F<br>Torrington, WY  82240 |
| Wyoming Medium Correctional Institution<br>Attention:  Mr. Wagner<br>7076 Road 55F<br>Torrington, WY  82240 | |